1  DONALD M. de CAMARA, SBN 69703
   E-mail: decamlaw@sbcglobal.net
2  LAW OFFICES OF DONALD M. de CAMARA
   1241 Carlsbad Village Drive, Ste. E
3  Carlsbad, CA 92008
   Tel: (760) 730-7404
4  Fax: (760) 730-7409

5  DANIEL E. WILCOXEN, SBN 054805
   E-mail: dwilcoxen@wilcoxenlaw.com
6  WILCOXEN CALLAHAM, LLP
   2114 K Street
7  Sacramento, California 95816
   Telephone:      (916) 442-2777
8  Facsimile:  (916) 442-4118

9  Attorneys for Plaintiffs Lenai Mull, Danielle Mull, Norman Mull and Carson Mull
   and Counter Defendants Lenai Mull and Norman Mull

10

11                        **UNITED STATES DISTRICT COURT**

12                        **CENTRAL DISTRICT OF CALIFORNIA**

13

14

15  DANIELLE MULL, NORMAN MULL,      ) Case No.: CV12-6693VBF (MANx)
    CARSON MULL                      )
16              Plaintiffs,          ) Assigned to:
                                     ) Hon. Valerie Baker Fairbank
17         vs.                       )
                                     ) **PLAINTIFFS' NOTICE OF MOTION**
18  MOTION PICTURE INDUSTRY          ) **AND MOTION FOR SUMMARY**
    HEALTH PLAN; BOARD OF            ) **JUDGMENT (FRCP 56)**
19  DIRECTORS OF MOTION PICTURE      )
    INDUSTRY HEALTH PLAN             )
20                                   ) Date:  None set, per Court's order
                Defendants           ) Ctrm:  9
21  _____)
                                     )
22  BOARD OF DIRECTORS OF            )
     MOTION PICTURE INDUSTRY         )
23  HEALTH PLAN                      )
                                     )
24              Counterclaimants     )
                                     )
25  vs.                              )
                                     )
26  LENAI MULL, NORMAN MULL          )
                                     )
27              Counterdefendants    )
    _____)
28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that plaintiffs Danielle Mull, Norman Mull and Carson Mull hereby move for summary judgment in their favor on their First Amended Complaint ("FAC") in the above entitled action.  The motion will be based upon this Notice, the attached Memorandum of Points and Authorities, the Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Danielle Mull, the Declaration of Plaintiffs' Counsel, the Notice of Lodgment and Exhibits 1-7, and oral argument to be presented at the hearing of the motion.  The motion will based upon the fact that there are no genuine issues of material fact in dispute and said plaintiffs are entitled to judgment as a matter of law under FRCivP 56.

Specifically, the motion will be based upon the premise that defendants' credit scheme cannot as a matter of law be asserted against covered family members who are not in possession or control of Lenai Mull's personal injury recovery.  ERISA does not allow plans to impose personal liability on plan members, as opposed to seeking equitable relief against an identifiable fund in the possession and control of the plan member.  The Mull family's future medical expenses are not an "identifiable fund" against which equitable or legal relief can be sought.  Defendants' extra-judicial credit provision exceeds the scope of ERISA's exclusive civil enforcement scheme and is therefore unlawful. Additionally, defendants' formal plan document does not provide for any right of reimbursement or credit.

This motion is brought pursuant to the Court's Order of February 26, 2014.  See Doc. 53.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: April 18, 2014

*/s/Donald M. de Camara*
Donald M. de Camara
Daniel E. Wilcoxen
Attorneys for Plaintiffs

DONALD M. de CAMARA, SBN 69703
E-mail:  decamlaw@sbcglobal.net
LAW OFFICES OF DONALD M. de CAMARA
1241 Carlsbad Village Drive, Ste. E
Carlsbad, CA 92008
Tel: (760) 730-7404
Fax: (760) 730-7409

DANIEL E. WILCOXEN, SBN 054805
E-mail:  dwilcoxen@wilcoxenlaw.com
WILCOXEN CALLAHAM, LLP
2114 K Street
Sacramento, California 95816
Telephone:        (916) 442-2777
Facsimile:  (916) 442-4118

Attorneys for Plaintiffs Lenai Mull, Danielle Mull, Norman Mull and Carson Mull

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE MULL, NORMAN MULL, CARSON MULL<br><br>Plaintiffs,<br><br>vs.<br><br>MOTION PICTURE INDUSTRY HEALTH PLAN; BOARD OF DIRECTORS OF MOTION PICTURE INDUSTRY HEALTH PLAN<br><br>Defendants | Case No.: CV12-6693VBF (MANx)<br><br>Assigned to:<br>Hon. Valerie Baker Fairbank<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (FRCP 56)**<br><br>Date:  November 4, 2013<br>Time: 1:30 p.m.<br>Ctrm:  9 |

# Table of Contents

Table of Contents                                                    ii

Table of Authorities                                                 iv


INTRODUCTION                                                         1

UNDISPUTED FACTS                                                    2

SUMMARY OF ARGUMENT                                             4


LAW                                                                 5

I  THE COURT SHALL GRANT SUMMARY JUDGMENT IF THE
MOVANTS  SHOW THAT THERE IS NO GENUINE ISSUE AS TO
ANY MATERIAL FACT AND THAT MOVANTS ARE ENTITLED
TO JUDGMENT AS A MATTER OF LAW                                 5

II  ERISA'S CIVIL ENFORCEMENT PROVISIONS ARE
EXCLUSIVE AND DO NOT AUTHORIZE EXTRA-JUDICIAL
REMEDIES BY ERISA PLANS                                         6

III  TO BE ENFORCEABLE, REIMBURSEMENT PROVISIONS
MUST SEEK RECOVERY UNDER AN EQUITABLE THEORY
FROM A SPECIFIC IDENTIFIABLE FUND IN THE PLAN
MEMBER'S POSSESSSION AND CONTROL AND MAY NOT SEEK
TO IMPOSE PERSONAL LIABILITY ON THE PLAN MEMBER            7

IV  THE RECENT SUPREME COURT DECISION IN *US AIRWAYS
v. McCUTCHEN* DOES NOT CHANGE THE REQUIREMENTS
FOR ENFORCING A REIMBURSEMENT PROVISION                     9

V  THE MPI SPD'S REIMBURSEMENT PROVISION PURPORTS
TO IMPOSE PERSONAL LIABILITY ON THE PARTICIPANT AND
ALL OF HIS DEPENDENTS COVERED UNDER THE PLAN
REGARDLESS OF WHETHER THEY HAVE ANY INTEREST
OR CONTROL OVER THE PERSONAL INJURY RECOVERY             10

VI  THE MPI REIMBURSEMENT PROVISION FAILS TO
SPECIFICALLY IDENTIFY A PARTICULAR FUND FROM
WHICH THE ERISA PLAN IS TO BE REIMBURSED                          13

VII  THERE ARE SIGNIFICANT INCONSISTENCIES IN THE MPI
REIMBURSEMENT PROVISION AS TO WHO IS LIABLE FOR
APPLICATION OF THE CREDIT                                        14

VIII  A FEDERAL COURT DOES NOT DEFER TO AN ERISA
PLAN ON ISSUES OF LAW                                            15

IX  MPI'S EXTRA-JUDICIAL ENFORCEMENT SCHEME AS
APPLIED TO THE REMAINING PLAINTIFFS SHOULD BE
ENJOINED AS VIOLATIVE OF ERISA                                   16

X  THE REMAINING MULL PLAINTIFFS SHOULD BE
REIMBURSED FOR THE COST OF THEIR LOST HEALTH
INSURANCE BENEFITS BY THE PLAN                                   18

XI  THE MPI FORMAL PLAN DOCUMENT CONTAINS NO
REIMBURSEMENT PROVISION AND CONTROLS OVER
THE SPD                                                          19

CONCLUSION                                                       22

1

2

# Table of Authorities

3

## STATUTES AND REGULATIONS

4

5

29 USC §1102                                                    5,20,21

6

29 USC §1132(a)                                          5,7,16,18,19

7

CA Civil Code §1550                                              16

8

CA Civil Code §1599                                              17

9

10

CA Civil Code §1667                                              16

11

FRCivP 56(a)                                                       5

12

13

14

## CASES

15

16

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
683 F.3d 1083, 1092-1093 (9th Cir. 2012); cert. denied
2013 U.S. Lexis 1094 (2013)                               8,12-15,22

17

18

*CGI v. Rose*, 683 F.3d 1113 (2012)                               9

19

*CIGNA v. Amara*                                           5,18,19,22

20

*Coffin v. Bowater, Inc.*, 385 F.Supp.2d 38, 49 (DC Maine 2008)    15

21

22

*Courson v. Bert Bell NFL Player Retirement Plan*, 214 F.3d
 136 (3d. Cir. 2000)                                              15

23

24

*Great West Life & Annuity Ins. Co. v. Knudson*,
534 US 204 (2002)                                           7,12,15,22

25

26

*Papowski v. Parrot* (461 F.3d 1367 (11th Cir. 2006)       12,15,22

27

*Pilot Life v. Dedeaux*, 481 U.S. 41, 54 (1987)                6,15

28

*Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)          6,15

*Sereboff v. Mid-Atlantic Medical Services, Inc.*, 547 U.S. 356
(2006)                                                                8,12,15,22

*US Airways, Inc. v. McCutchen*, 569 U.S. __, 133 S.Ct.
1537 (2013)                                                           9-12,15,22

*Varity v. Howe*, 516 U.S. 489, 513 (1996)                            19


**TREATISES**

California Pleading and Practice Guide, §140.24(3)                     17

# INTRODUCTION

This is an action under ERISA arising out of the Motion Picture Industry Health Plan's ("MPI") to assert an extra-judicial credit provision against the entire Mull family to recoup medical expenses paid by it on behalf of 18 year old Lenai Mull.  After the lawsuit was filed, MPI filed a FRCP 12(b)(6) motion to dismiss.  On December 21, 2012, this Court granted the motion on the drafting issues and denied the motion on the equitable defense issues under the Ninth Circuit decision in *CGI v. Rose*.  (Document 20).  In that order, the Court granted plaintiffs leave to amend.  The amended complaint was filed and answered by defendants.  No compulsory counterclaim for affirmative relief was filed with defendants' answer.

On April 16, 2013, the Supreme Court overruled *CGI v. Rose* in *US Airways v. McCutchen*.  Following that decision, plaintiff Lenai Mull, for herself alone, moved to dismiss her case with prejudice. Concurrently, MPI moved to file an affirmative counterclaim against Lenai Mull and Norman Mull. On February 4, 2014, the Court denied Lenai Mull's motion to dismiss and granted MPI leave to file its counterclaim. See Doc. 49.  On February 21, 2014, plaintiff Lenai Mull filed for protection in federal bankruptcy court.  See Doc. 51.  On February 26, 2014, this Court stayed the action as to Lenai Mull and set the briefing schedule for Norman Mull's FRCP 12(b)(6) motion and the instant motions for summary judgment.  Doc. 53. See also Docs. 49, 51, 53; Declaration of Plaintiff's Counsel, ¶4.

Plaintiffs Danielle Mull, Norman Mull and Carson Mull now bring the instant motion for summary judgment on the grounds that:

1.  The ERISA civil enforcement scheme is exclusive and does not include the right to extra-judicial contractual remedies such as MPI's credit scheme;

2.   ERISA limits an ERISA fiduciary's claims for reimbursement to claims against a specifically identifiable fund in the possession and control of the participant (or beneficiary);

3.   ERISA reimbursement claims cannot attempt to impose personal liability on plan members.

4.   The remaining Mull plaintiffs have no legal interest, possession or control over Lenai Mull's personal injury recovery and therefore are being held personally liable without possession and control of any identifiable fund.

5.   There is no reimbursement or credit provision in the MPI formal plan.

## UNDISPUTED FACTS

Plaintiffs Danielle Mull, Norman Mull, Carson Mull and Lenai Mull are all participants in an employee welfare benefit plan known as the Motion Picture Industry Health Plan, which is subject to the federal law of ERISA.   See Statement of Uncontroverted Facts ("SUF") ¶1.   The MPI Plan is governed by Defendant Board of Directors of the MPI Health Plan as the Plan Administrator.   SUF ¶2.   The MPI Health Plan was established pursuant to an Agreement and Declaration of Trust.   SUF ¶3.   The MPI Agreement and Declaration of Trust contains no reimbursement or credit provisions and is attached as Exhibit 2.   SUF ¶4.   The Summary Plan Description ("SPD") for the MPI Plan dated 2007 is circulated to all participants and provides details of the coverage and is attached as Exhibit 1.   SUF ¶5.

The Mull family is entitled to coverage under the MPI plan because Norman Mull has worked as a wrangler for the motion picture industry for the past 18 years.   Wranglers and drivers are required to join the Teamsters Union in order to get this coverage.   The Mulls have had the MPI coverage for the last 15 years.   They pay $600 per year directly to the MPI Plan for the

coverage and $1,032 in union dues.  This is the only coverage available to plaintiffs Danielle, Norman and Carson Mull.  SUF ¶6.

On February 3, 2010, 18 year old Lenai Mull was severely injured in a car accident, at the time she was covered under the MPI plan.  She suffered many severe fractures requiring multiple surgeries and hospitalization, a collapsed lung and closed head injury with altered mental state, and other injuries.  SUF ¶7.  The MPI Plan paid about $148,000 of Lenai Mull's total medical bills of approximately $190,000 in connection with treatment for her accident related injuries.  SUF ¶8.

The driver of the car responsible for Lenai Mull's above accident had only a $100,000 liability policy and she settled with the insurance company for that amount without the need to retain counsel.  The proceeds of this settlement were paid directly to Lenai Mull, as an adult, and placed in her bank account.  SUF ¶9.

The Mulls were unaware of the reimbursement provision in the MPI SPD until after Lenai's accident.  Said reimbursement provision purports to provide that all family members covered by the MPI Plan are personally responsible for reimbursing MPI whether or not they received any personal injury settlement and allows MPI to credit any future covered medical care of the entire family against the alleged overpayment.  SUF ¶10.  Norman, Danielle and Carson Mull have no legal interest or right to control Lenai Mull's personal injury settlement that Lenai received as an adult.  SUF ¶11.  MPI has recently and truthfully alleged that Lenai Mull is in possession of the unexpended portion of her personal injury recovery and the Court expressly relied upon this fact in denying Lenai Mull's motion to dismiss.  SUF ¶11.

When the Mull family now receives medical care, the MPI Health Plan normally declines to pay its covered share and instead sends the Mulls an Explanation of Benefit ("EOB") indicating that MPI's share of covered

expenses has been applied to the Mulls' alleged obligation to reimburse the plan for Lenai's medical expenses, which is described as their "overpayment." To date, the MPI Plan has credited $1,362 of Norman's and Danielle's covered medical expenses to this overpayment.  An accurate summary sheet of these credits is attached hereto as Exhibit 5 with copies of the EOB's from MPI showing the covered amount of medical expense being applied to the overpayment.   For those EOB's that show the balance of the alleged overpayment to Lenai Mull, the balance is listed between $107,000-- $145,000, even though Lenai only recovered $100,000.  SUF ¶12.

Because MPI is even refusing to pay for preventive care like physicals, pap smears, etc., the Mulls have foregone some of these screenings that they would normally get, which has caused them great concern.   They are also very concerned that their entire family is effectively without health insurance coverage unless this issue is resolved in their favor.  Their financial well being and their peace of mind that comes from having actual health insurance coverage has been severely compromised through MPI's application of its contractual credit rights against the entire family.  SUF ¶13.

Because Mr. and Mrs. Mull have no right to Lenai Mull's settlement funds and do not have somewhere between $107,000--$145,000 to repay the MPI Health Plan that MPI alleges is their payment responsibility, the Mulls have no way to restore their health insurance coverage except through the instant action.  SUF ¶15.

## SUMMARY OF ARGUMENT

There do not appear to be any genuine issues of material fact in the instant case precluding summary adjudication.   ERISA's civil enforcement scheme was intended to be exclusive and does not include any right to extra-judicial self-help in the form of credits against future covered medical care. Where reimbursement is properly sought by a plan under ERISA, it must be

against an identifiable fund in the possession and control of the plan member against whom it is sought.  It must not seek to impose personal liability on the plan member(s).  The MPI SPD openly purports to create personal liability against the entire covered family of the person obtaining the personal injury recovery.  This is clearly not allowed.  Likewise, the possibility or probability of the Mulls incurring future medical expenses covered by the MPI plan does not constitute the "identifiable fund" required to pass the Supreme Court test for appropriate equitable relief available to a plan.

Moreover, the MPI plan was created pursuant to an Agreement and Declaration of Trust ("ADT").  See Exhibit 2.  The ADT contains no reimbursement or credit provisions.  The MPI SPD does not qualify as the formal plan document because it does not contain all of the required elements of a plan document pursuant to 29 USC §1102.  In *CIGNA v. Amara*, the Supreme Court has held that it is the formal plan document, and not the SPD, that is enforceable.  Consequently, MPI has no enforceable reimbursement provision.  Based upon the above flaws in the MPI plan documents, MPI should be enjoined from applying the credit provision in the SPD to eliminate coverage under its health plan for Danielle, Norman and Carson Mull.  Since the credit provision violates the controlling principles of ERISA, MPI has been unjustly enriched at the expense of Mr. and Mrs. Mull, and should pay equitable restitution to them in the amount of $1,362 to reimburse them for the improperly denied medical expenses.

## LAW

### I

### THE COURT SHALL GRANT SUMMARY JUDGMENT IF THE MOVANTS SHOW THAT THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT AND THAT MOVANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

FRCivP 56(a).

## II
## ERISA'S CIVIL ENFORCEMENT PROVISIONS ARE EXCLUSIVE AND DO NOT AUTHORIZE EXTRA-JUDICIAL REMEDIES BY ERISA PLANS

When ERISA was passed in 1974, Congress included a detailed enforcement mechanism in 29 USC §1132.  Early on in *Pilot Life v. Dedeaux, 481 U.S. 41 (1987)* and *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) the Supreme Court held that:

> "The six carefully integrated civil enforcement provisions found in §502(a) of the statute as finally enacted...provide **strong evidence that Congress did not intend to authorize other remedies** that it simply forgot to incorporate expressly.  *Russell, supra* at 146."

> The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that **ERISA's civil enforcement remedies were intended to be exclusive**.  Pilot Life, 481 U.S. 41 at 54 (emphasis supplied)

Notably, Congress did not authorize extra-judicial remedies for enforcement of ERISA plans' terms.  In the drafting of its plan, MPI has attempted to circumvent the **exclusive** civil enforcement mechanism in ERISA by providing for extra-judicial self-enforcement of its reimbursement provision against participants and beneficiaries who have no ownership interest in the personal injury recovery in question.  Undoubtedly, this is why MPI argued to the Court in its 12(b)(6) motion that it was not suing the Mulls and therefore was not subject to the limits imposed by 29 USC §1132(a) and also why MPI chose not to file a compulsory counterclaim against the Mulls when it answered the first amended complaint.

**III**

**TO BE ENFORCEABLE, REIMBURSEMENT PROVISIONS MUST SEEK RECOVERY UNDER AN EQUITABLE THEORY FROM A SPECIFIC IDENTIFIABLE FUND IN THE PLAN MEMBER'S POSSESSSION AND MAY NOT SEEK TO IMPOSE PERSONAL LIABILITY ON THE PLAN MEMBER**

The Supreme Court cases interpreting allowable civil enforcement remedies for ERISA plans have imposed very precise requirements on those remedies. Specifically, the plans cannot seek to impose personal liability on plan members. Pursuant to 29 USC §1132(a), plans must also seek recovery under an equitable theory from a specific identifiable fund in the plan member's possession. In *Great West Life & Annuity Ins. Co. v. Knudson*, 534 US 204 (2002), the Court held as follows:

Here, petitioners **seek, in essence, to impose personal liability on respondents  for a contractual obligation to pay money -- relief that was not typically available in equity**. "A claim for money due and owing under a contract is 'quintessentially an action at law." Id at 210.

In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the **plaintiff could clearly be traced to particular funds or property in the defendant's possession**. Id at 213.

Thus, for restitution to lie in equity, the **action generally must seek  not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession**.  Id at 213-214. (emphasis supplied)

Four years after *Knudson*, in 2006, the Supreme Court in *Sereboff v. Mid-Atlantic Medical Services, Inc.* 547 U.S. 356 (2006) further clarified that an enforcement claim could not seek to impose personal liability.

> As the Fourth Circuit explained below, in this case Mid Atlantic sought "specifically identifiable" funds that were "within the possession and control of the Sereboffs"--that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan, set aside and "preserved [in the Sereboffs'] investment accounts." <u>407 F.3d, at 218</u>. **Unlike Great-West, Mid Atlantic did not simply seek "to impose personal liability . . . for a contractual obligation to pay money**." <u>*Knudson*, 534 U.S., at 210, 122 S. Ct. 708, 151 L. Ed. 2d 635</u>. It alleged breach of contract and sought money, to be sure, but it **sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboffs' assets generally**, as would be the case with a contract action at law. ... This Court in *Knudson* did not reject Great-West's suit out of hand because it alleged a breach of contract and sought money, but because Great-West did not seek to recover a particular fund from the defendant. Mid Atlantic does. Id at 362-363. (emphasis supplied)

Likewise, the Ninth Circuit has recently confirmed that these elements are mandatory to enforcement of an ERISA reimbursement provision.  In *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1092-1093 (9th Cir. 2012); cert. denied 2013 U.S. Lexis 1094 (2013), the Ninth Circuit summarized the requirements for enforcement as follows:

> As relevant here, we read <u>*Sereboff*</u> as establishing at least three criteria for securing an equitable lien by agreement in an ERISA action. *First*, there must be a promise by the

beneficiary to reimburse the fiduciary for benefits paid under the plan in the event of a recovery from a third party. **Second, the reimbursement agreement must "specifically identif[y] a particular fund, distinct from the [beneficiary's] general assets," from which the fiduciary will be reimbursed.** _Id._ at 364. **_Third_, the funds specifically identified by the fiduciary must be "within the possession and control of the [beneficiary]."** _Id._ at 363. (bold emphasis supplied)

**IV**

**THE RECENT SUPREME COURT DECISION IN _US AIRWAYS v. McCUTCHEN_ DOES NOT CHANGE THE REQUIREMENTS FOR ENFORCING A REIMBURSEMENT PROVISION**

In April, 2013, the Supreme Court decided _US Airways, Inc. v. McCutchen_, 569 U.S.___, 133 S.Ct. 1537. This case overruled the underlying Third Circuit decision and the Ninth Circuit decision in _CGI v. Rose_, 683 F.3d 1113 (2012) that followed the Third Circuit. Consequently, the various equitable defenses that Lenai Mull was asserting against enforcement of the reimbursement provision (make whole, equitable apportionment) are no longer available. In recognition of that legal reality, plaintiff Lenai Mull previously moved to dismiss her instant case with prejudice.

However, it is clear from reviewing the _US Airways_ decision that it does not change the underlying equitable requirements for enforcing a reimbursement provision. In fact, the Court in _US Airways_ restated the same

///

///

///

equitable requirements that it had set forth in *Sereboff* and *Barnes*, as follows:

> We held that Mid Atlantic's action sought "equitable relief," as §502(a)(3) requires. See 547 U. S., at 369. The "nature of the recovery" requested was equitable because Mid Atlantic claimed "specifically identifiable funds" within the Sereboffs' control—that is, a portion of the settlement they had gotten. Id., at 362–363 (internal quotation marks omitted). And the "basis for [the] claim" was equitable too, because Mid Atlantic relied on "'the familiar rul[e] of equity that a contract to convey a specific object'" not yet acquired "'create[s] a lien'" on that object as soon as "'the contractor . . . gets a title to the thing.'" Id., at 363–364 (quoting Barnes v. Alexander, 232 U.S. 117, 121 (1914). (emphasis supplied) Id at 1544-1544.

Therefore, the requirements of a specifically identifiable fund in the possession and control of the plan member subject to the reimbursement claim are retained.

**V**

**THE MPI SPD'S REIMBURSEMENT PROVISION PURPORTS TO IMPOSE PERSONAL LIABILITY ON THE PARTICIPANT AND ALL OF HIS DEPENDENTS COVERED UNDER THE PLAN REGARDLESS OF WHETHER THEY HAVE ANY INTEREST OR CONTROL OVER THE PERSONAL INJURY RECOVERY**

A cursory review of the MPI SPD's reimbursement provision reveals that it purports to impose contractual personal liability on the participant and

any dependent of the participant regardless of whether they have any interest or control over the personal injury recovery, as follows:

Reimbursement of benefits paid by the Plan for an injury or illness for which either you or your dependent has received any Recovery **is the liability of the participant.**  MPI SPD Ex. 1, p. 57.

The **participant (and eligible dependent, if applicable) shall pay to the MPI Health Plan from the Recovery an amount equal to the benefits actually paid** by the Plan... id at 57.

...the **Participant (and eligible dependent, if applicable) shall continue to owe to  the Plan** such unpaid amount, up to the full amount of the Recovery.  Id at 57.

The **participant shall be obligated to pay interest** to the MPI Health Plan on any amounts owed to the Plan in connection with the Recovery... id at 58.

The interest shall commence running on the 11th day after the Recovery is obtained and shall be paid from the Recovery. Id at 58.

The **participant is responsible for refunding the overpaid amount**. Id at 52.  (emphasis supplied)

It is apparent from comparing MPI's provision to the above holdings that it very clearly seeks to impose personal liability on plan members that have no interest or control over the personal injury recovery.  This violates the clear

intent of the holdings in *Knudson*, *Sereboff, US Airways* and *Bilyeu, supra,* as well as the exclusive civil enforcement mechanism provided by Congress when it passed ERISA (*Pilot Life, supra*).  Therefore, for this reason alone, the assertion of the self-enforcement credit by MPI against the past and future covered medical expenses of the remaining Mull plaintiffs must fail. Norman Mull, Danielle Mull and 15 year old Carson Mull have no legal interest or control over Lenai Mull's personal injury recovery, which she obtained as an adult.

In addition, there is no law in California that imposes any duty to support a child who has reached the age of 18.  See Family Code §3901. Likewise, none of the other members of the Mull family have any legal interest or control over Lenai Mull's personal injury recovery that she obtained at age 18.  Federal courts should not start tampering in states' property rights issues just for the benefit of ERISA plans.

Moreover, the clear intent of the above Supreme Court cases is that the identifiable fund be in the possession or control of the person from whom recovery is sought.  That requirement is also circumvented by seeking to recoup the payment from future medical care needed by the beneficiary's entire family.  There is nothing in the Supreme Court holdings or the terms of the statute that would suggest that this would be allowed.  Where the plan does not seek recovery from the identifiable fund, recovery should be denied. See *Knudson, Sereboff, US Airways, Bilyeu, supra, and Papowski v. Parrot* (461 F.3d 1367 (11th Cir. 2006).

## VI
## THE MPI REIMBURSEMENT PROVISION FAILS TO SPECIFICALLY IDENTIFY A PARTICULAR FUND FROM WHICH THE ERISA PLAN IS TO BE REIMBURSED

Although Lenai Mull's personal injury recovery would be an identifiable fund had MPI sought recovery of that, MPI has not done so.  In fact, MPI expressly and repeatedly represented to this Court in its FRCP 12(b)(6) motion (MPI P&A, p. 20) that it intentionally was not doing so.  This fact was rendered even clearer when MPI did not file a compulsory counterclaim against any of the plaintiffs when it answered the first amended complaint.

Instead of seeking its recovery from the identifiable fund of Lenai Mull's personal injury recovery, MPI sought to recover through applying a self-help credit against otherwise covered medical expenses incurred by all four Mull family members.  This does not qualify as a "specifically identified fund" as required by the above authorities.  Future medical care may or may not be needed by the Mull family.  If medical care is required, there is no certainty as to when it would be rendered or the amount or cost of such care.  This is far too uncertain to constitute a "fund."   The MPI scheme is similar to the "overpaid long-term disability benefits" addressed by the Ninth Circuit in *Bilyeu, supra,* that failed to meet this "specific fund" requirement.  The *Bilyeu* court discussed this failing as follows:

> In Unum's view, once Bilyeu received her social security disability benefits, the specifically identified fund — the overpaid long-term disability benefits — came into existence, and Unum was allowed to impose a lien against that fund. This argument is plausible, but problematic. **Unlike the third party tort recovery in Sereboff and the contingency fee in Barnes, the overpaid disability benefits are not a particular fund, but a specific amount of money encompassed within a particular fund — the long-term disability benefits Unum paid to Bilyeu. As an amount of money, the overpayment is specific. As property or as a fund, however, the** overpayment is lacking in

**specificity because it is an undifferentiated component of a larger fund. The overpayment has never existed as a distinct object or fund.** See 53 C.J.S. Liens § 19 (2012) ("In order that an equitable lien may arise by contract, the agreement of the parties must deal with some specific property, and it is also essential that the property or fund intended to be appropriated or charged should be identified or described with a reasonable degree of certainty." id at 1093 (emphasis supplied)

In fact, MPI uses the same "overpayment" scheme as did the UNUM plan in *Bilyeu* (MPI SPD, Ex. 1, p. 52), and then seeks to recover the overpayment through the self-help credit against the non-existent fund of the Mull family's future covered medical expenses.  This is clearly not allowed under ERISA.

## VII
## THERE ARE SIGNIFICANT INCONSISTENCIES IN THE MPI REIMBURSEMENT PROVISION AS TO WHO IS LIABLE FOR APPLICATION OF THE CREDIT

There are numerous inconsistencies in the MPI SPD's reimbursement provision that should also serve to defeat enforcement of its extra-judicial remedy.  See quoted excerpts in Point IV above.  At several locations therein, it indicates that repayment is the liability of the participant.  At other locations, it is imposed on "the participant and eligible dependent, if applicable."  Yet in the credit provision, it seeks to impose the right to credits against an entire family covered under the plan.   This is far too uncertain to be enforced.  Likewise, the term "Recovery" as used in the SPD is not defined to include interest. Id at 57.  Yet, on the very next page, the SPD provides that interest **shall be paid from the Recovery**.   Obviously, that limits the maximum exposure of the injured plan member to the total actual recovery.

## VIII

# A FEDERAL COURT DOES NOT DEFER TO AN ERISA PLAN ON ISSUES OF LAW

As in the Plan's 12(b)(6) motion, it is expected that the Plan will seek an abuse of discretion standard of review as opposed to a de novo review. However, it clearly appears that resolution of this case hinges on the pure issues of law addressed above.  As this Court correctly ruled on the 12(b)(6) motion, "...the Court is called upon...to decide pure matters of law, and under no circumstances does a court defer to a plan administrator's position on a matter of law."  Additionally, the Court ruled that, "...the court does not defer to the plan's reading of the law on key legal issues presented by this case..." See Court's Order on Motion to Dismiss, Doc. 20, p. 14.   Among other authorities, the Court cited *Courson v. Bert Bell NFL Player Retirement Plan*, 214 F.3d 136 (3d. Cir. 2000) and *Coffin v. Bowater, Inc.*, 385 F.Supp.2d 38, 49 (DC Maine 2008) for this proposition.

Clearly, the issue of whether the MPI Plan can circumvent ERISA's **exclusive** civil enforcement scheme through extra-judicial measures, thereby avoiding the clear case law limiting plans' reimbursement rights to equitable claims against a specifically identified fund in the possession and control of the plan members against whom the claim is asserted, is purely an issue of law.  Plaintiffs submit that the Supreme Court rulings in *Pilot Life, Russell, Knudson, Sereboff* and *U.S. Airways, supra*, and the Ninth Circuit decision in *Bilyeu, supra*, are controlling *stare decisis* on this dispositive issue.

## IX
## MPI'S EXTRA-JUDICIAL ENFORCEMENT SCHEME AS APPLIED TO THE REMAINING PLAINTIFFS SHOULD BE ENJOINED AS VIOLATIVE OF ERISA

As noted above, the Supreme Court and the Ninth Circuit have repeatedly held that reimbursement claims under ERISA may only be asserted against an identifiable fund being held by a participant or beneficiary.  All attempts to impose personal liability have been stricken as contractual in nature and therefore not authorized by ERISA.  29 USC §1132(a)(3) expressly authorizes civil enforcement "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title..."  Plans cannot be allowed to circumvent ERISA's exclusive civil enforcement scheme by providing for extra-judicial contractual relief.  To do so would make a mockery of the distinct limitations imposed on ERISA plans' reimbursement claims both by the statute and the above cited cases.  Plaintiffs have sought injunctive relief under 29 USC §1132(a)(3) and such relief should be granted to remedy the MPI Plan's non-compliance with ERISA and to cure the irreparable harm posed to the remaining plaintiffs by losing their health insurance benefits under the plan.

To be enforceable, contracts must have a legal object.  Contract law is well summarized in the CA Civil Code.  Civil Code §1550 provides in pertinent part that, "It is essential to the existence of a contract that there should be (3) A lawful object."  Civil Code §1667 provides, "That is not lawful which is: 1) Contrary to an express provision of law; 2) Contrary to the policy of express law, though not expressly prohibited."  Clearly, the extra-judicial enforcement credits in the MPI Plan's SPD violate both the exclusive civil enforcement scheme in ERISA and the Supreme Court's interpretation of "appropriate equitable relief" in 29 USC 1132(a)(3) as limited to seeking recovery only from an identifiable fund in the possession and control of the plan member and precluding personal liability.  As such, MPI's credit provisions are illegal and should be enjoined.  In recognition of this type of

eventuality, MPI included a severability provision in their ADT at p. 58 (Ex. 2, p. 258), which provides in part:

> Should any provision in this Trust Agreement or in the Plan of Benefits...be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provisions herein and therein contained...

Consequently, the balance of the plan documents can be enforced even though the credit provision as applied to plan members not in receipt of any personal injury recovery be ruled unlawful or invalid under ERISA. Invalidating such an application of the MPI SPD's credit provision would align the plan with the controlling Supreme Court and Ninth Circuit precedent cited above and prevent the Plan's abusive self-help tactics.  The common law of severability of contracts is codified in Californa at Civil Code §1599:

> Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest.

This principle of severability is discussed in the 2013 *California Pleading and Practice Guide*, §140.24(3), as follows:

> If the contract has several distinct objects, at least one of which is lawful, the contract is valid and enforceable as to the lawful object, provided the lawful object is clearly severable from the rest.   Civil Code §1599 authorizes, but does not require, a court to sever the illegal object of a contract from the legal object.   **The decision whether to sever the illegal object of a contract is informed by equitable considerations**. (emphasis supplied, citations omitted).

Since severability is an equitable doctrine, such relief would be available under 29 USC §1132(a)(3) as well as the Supreme Court's discussion in

17

*CIGNA v. Amara*, 131 S. Ct. 1866, 1877 (2011) in which the Court applied a flexible approach in devising appropriate equitable remedies for plan participants.

The Court's attention is invited to the fact that Congress drafted §1132(a)(3) relief in a distinctly different fashion than (a)(1) relief. §1132(a)(1) relief on its face is limited to enforcing a participant's or beneficiary's rights under the "terms of the plan" while §1132(a)(3) sets forth the right to seek injunctive or other appropriate equitable relief to enforce the provisions of ERISA.

**X**

**THE REMAINING MULL PLAINTIFFS SHOULD BE REIMBURSED FOR THE COST OF THEIR LOST HEALTH INSURANCE BENEFITS BY THE PLAN**

If the Court agrees that the Plan's extra-judicial self-enforcement measures in its reimbursement provision are inconsistent with ERISA's exclusive civil enforcement procedures, then the Court can clearly enjoin the Plan from employing those measures against the remaining Mull plaintiffs under 29 USC §1132(a)(3).  However, this does not in any way compensate the remaining Mull plaintiffs for past covered medical expenses that were wrongfully denied through the unilateral exercise of MPI's credit provision. Attached as Exhibit 5 is a list of all of the covered medical expenses that were denied by the MPI Plan and paid by the Mulls, totaling $1,362.  See also supporting declaration of Danielle Mull, ¶ 9.  This amount does not include any amounts MPI credited for Lenai Mull's covered expenses.   To fully compensate the Mulls who were not entitled to any portion of Lenai Mull's personal injury settlement, $1,362 should be awarded to the Mulls under 29 USC §1132(a)(1) or as equitable restitution under §1132(a)(3).  If such an award is not made, the MPI plan would be unjustly enriched at the expense of Mr. and Mrs. Mull.

18

It should be emphasized that the Supreme Court has taken a liberal view of making relief available under equity to plan participants.  In *Varity v. Howe*, 516 U.S. 489, 513 (1996), the Court noted that:

> ERISA's basic purposes favor a reading of the third subsection
> (29 USC 1132(a)(3)) that provides the plaintiffs with a remedy.
> The statute itself says that it seeks
> "to protect...the interests of participants...and...
> beneficiaries...by establishing standards of conduct,
> responsibility, and obligation for fiduciaries...and...providing for
> appropriate remedies...and ready access to the Federal courts"
> ERISA §2(b).

More recently, in *CIGNA v. Amara*, 131 S. Ct. 1866, 1877 (2011), the Court found that the legal relief sought by the plan members under 29 USC §1132(a)(1) was not available and opined that equitable remedies of reformation and surcharge under §1132(a)(3) would be available to protect the interests of the plan participants.

## XI
## THE MPI FORMAL PLAN DOCUMENT CONTAINS NO REIMBURSEMENT PROVISION AND CONTROLS OVER THE SPD

In *CIGNA v. Amara*, 131 S. Ct. 1866, 1877 (2011), the Court held that it is the formal plan document itself rather than the SPD that controls the terms of an employee benefit plan.

> Even if the District Court had viewed the summaries as plan
> "terms" (which it did not, see  supra, at ___ - ___, 179 L. Ed. 2d,
> at 853), however, we cannot agree that the terms of statutorily
> required plan summaries (or summaries of plan modifications)

necessarily may be enforced (under § 502(a)(1)(B)) as the terms of the plan itself. (blank in original)

The *Amara* Court further held:

> For these reasons taken together we conclude that **the summary documents**, important as they are, provide communication with beneficiaries about the plan, but that their statements **do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)**. 131 S. Ct. 1878  (emphasis supplied)

This changed the law in the Ninth Circuit and many other circuits.  In the instant case, the MPI SPD contains a reimbursement provision purporting to waive all equitable defenses.  See Ex. 1, SPD, p. 58.  However, the MPI formal plan document, entitled "Agreement and Declaration of Trust" clearly does not.  This complete document is attached hereto as Exhibit 2.  Attached as Exhibit 3 is a letter from plaintiff's counsel to defense counsel dated March 28, 2012 requesting the formal plan document.  Attached as Exhibit 4 is the April 17, 2012 letter from defense counsel enclosing the Agreement and Declaration of Trust ("ADT").

MPI takes the position that the SPD is part of the formal plan document because there is a single entry at page 124 of the SPD indicating that, "This book constitutes both the Plan document and the Summary Plan Description for the Motion Picture Industry Health Plan." (Ex. 1, p. 132)  However, this self-serving statement cannot overcome the controlling provisions of ERISA. Formal ERISA plan documents are mandated by 29 USC §1102, requiring named fiduciaries to control the operation and administration of the plan (§1102(a)) and also requiring four "requisite features" of the plan in §1102(b). These include providing a procedure for establishing a funding policy, a procedure for allocation of responsibilities for the operation and

administration of the plan, providing a procedure for amending the plan and identifying the persons having such authority and specifying the basis on which payments are made to and from the plan.  In the instant case, there is no question that all of these requisite elements are contained in the ADT attached as Exhibit 2.   While it appears that the SPD complies with §1102(b)(2) re responsibilities for operation and administration of the plan, it does not appear to contain any of the other three "requisite features."  As such, it is not the formal plan document and is not enforceable.  Rather, the ADT appears to be the only enforceable plan document and it notably contains no reimbursement or credit provision.  Therefore, under the authority of Amara, defendant MPI has no enforceable credit rights against the remaining Mull plaintiffs based upon

language in its SPD.

Finally, even the terms of the MPI SPD appear to provide that the formal plan documents control over the SPD, as set forth on the un-paginated fifth page of the MPI SPD (Exhibit 1), as follows:

> The Plan is operated under the provisions of an Agreement and Declaration of Trust, and all benefits provided are subject to the terms of the Trust, this Plan of Benefits and the Group Master Contracts issued by: the Union Labor Life Insurance Company covering life insurance; Blue Shield of California; Health Net; Kaiser Permanente; Oxford Health Plans; Delta Dental PPO Plan; DeltaCare USA; Medco (prescription drugs); and Vision Service Plan. The contracts have been issued to the Executive Administrator on behalf of the Directors. **The terms of these documents will prevail in the interpretation of questions concerning any subject matter covered in this SPD.** (emphasis supplied) (Ex. 1, p. 5)

21

## CONCLUSION

MPI's extra-judicial and unilaterally imposed credit provision is not authorized by ERISA's civil enforcement scheme.  Consequently, it is not a valid exercise of power by an ERISA fiduciary.  Even where reimbursement claims have been found proper, they must meet a very precise test to qualify as the "appropriate equitable relief" available to a fiduciary against a plan member under ERISA.  Such claims must be placed against a specifically identifiable fund in the possession and control of the plan member.  In the instant case, the only identifiable fund is Lenai Mull's personal injury recovery that she received as an adult.  Per the Ninth Circuit's decision in *Bilyeu, supra*, the possibility of some future fund is insufficient to qualify.  The Mulls will likely incur covered medical expenses in the future, but neither the amount, extent or timing of those can be identified.  More importantly, the personal injury recovery is not in their possession and control and they have no legal interest or right thereto.  Rather, it belongs exclusively to Lenai Mull.  The MPI SPD clearly attempts to impose personal liability on entire families, regardless of who owns and controls the personal injury recovery.  This is expressly prohibited by the Supreme Court decisions in *Knudson, Sereboff* and *US Airways*, supra, as well as the *Bilyeu* and *Papowski* cases, *supra*.

The credit provision in MPI's SPD is a transparent attempt to contract around ERISA.  Approval of MPI's extra-judicial credit being applied to entire families, despite the clear fact that entire families do not share in the personal injury recovery of one member, will encourage ERISA plans to install ever more abusive self-help schemes.

Finally, the *Amara* Court expressly held that it is only the formal plan document and not the SPD that is enforceable under ERISA.  MPI's formal plan document is the ADT which meets all of the requisite tests for a plan document under 29 USC §1102.  The ADT contains no reimbursement or

credit provisions and therefore MPI's attempts to enforce its SPD are fruitless. Although MPI's SPD has included a self-serving statement on page 124 of the SPD that it is part of the formal plan, the SPD is not the plan and clearly fails to meet 3 of the four requirements for a formal plan under §1102. (Ex. 1, p. 132)  Consequently, the SPD and its reimbursement and credit provisions are unenforceable.

For all of the above reasons, enforcement of the MPI credit and reimbursement provisions against plaintiffs Danielle, Norman and Carson Mull should be enjoined and the Mulls should be repaid the $1,362 in covered medical expenses that were wrongfully denied by the plan.

Respectfully submitted,

Dated: April 18, 2014                    /s/Donald M. de Camara
                                         Donald M. de Camara
                                         Daniel E. Wilcoxen
                                         Attorneys for Plaintiffs