

MOTION
PICTURE
INDUSTRY
PENSION & HEALTH PLANS
HEALTH PLAN

# MOTION PICTURE INDUSTRY HEALTH PLAN

## Agreement and Declaration of Trust

### Contains Amendments I through CVI
### And Exhibit A(29)

## Updated as of January 2010

Exhibit 2 - Page 196

# MOTION PICTURE INDUSTRY HEALTH PLAN

Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

## Table of Contents

**ARTICLE I - DEFINITIONS**
| | | |
|---|---|---|
| Section 1. | Employer | 5 |
| Section 2. | Employee | 7 |
| Section 3. | Unions | 16 |
| Section 4. | Directors | 17 |
| Section 5. | Agreement and Declaration of Trust | 17 |
| Section 6. | Plan of Benefits | 17 |
| Section 7. | Plan | 17 |
| Section 8. | Contributions | 17 |
| Section 9. | Benefits | 17 |
| Section 10. | Collective Bargaining Agreement | 18 |
| Section 11. | Effective Date | 18 |

**ARTICLE II** - Section 1.   Establishment of Plan .......................... 19

**ARTICLE III - DIRECTORS**
| | | |
|---|---|---|
| Section 1. | Board of Directors | 21 |
| Section 2. | Number of Directors | 21 |
| Section 3. | Term of Directors | 22 |
| Section 4. | Resignation | 22 |
| Section 5. | Certification | 22 |
| Section 6. | Succession | 22 |

**ARTICLE IV - POWERS, DUTIES AND OBLIGATIONS OF DIRECTORS**
| | | |
|---|---|---|
| Section 1. | Construction of Agreement | 23 |
| Section 2. | General Powers | 23 |
| Section 3. | Compensation | 26 |
| Section 4. | Personal Liability and Indemnification | 26 |
| Section 5. | Books of Account | 27 |
| Section 6. | Execution of Documents | 27 |
| Section 7. | Deposit and Withdrawal of Funds | 27 |
| Section 8. | Surety Bonds | 28 |
| Section 9. | Funding Policy | 28 |
| Section 10. | HIPAA Compliance | 28 |

**ARTICLE V - CONTRIBUTIONS TO THE PLAN**
| | | |
|---|---|---|
| Section 1. | Rate and Period of Contributions | 31 |
| Section 2. | Period of Contributions | 31 |
| Section 3. | Effective Date of Contributions | 31 |
| Section 4. | Mode of Payment | 31 |
| Section 5. | Default in Payment | 32 |
| Section 5a. | Interest | 32 |
| Section 5b. | Liquidated Damages | 32 |
| Section 5c. | Action for Enforcement | 33 |
| Section 5d. | Termination of Party Status | 33 |

i

Exhibit 2 - Page 197

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

Section 5e.    Reporting Requirements ................................................................................ 34
Section 5f.    Post '60s and Supplemental Markets Contributions ............................... 34
Section 6.     Report on Contributions.............................................................................. 34
Section 7.     Individual Contributions ............................................................................ 36
Section 8.     New Employers ........................................................................................... 36
Section 9.     Advancement of Premium ........................................................................ 36
Section 10.    Contributions for Designated Groups ...................................................... 37
Section 11.    Agents for Transmittal of Contributions.................................................. 37

## ARTICLE VI - PLAN OF BENEFITS

Section 1.     Benefits ........................................................................................................ 39
Section 2.     Method of Providing Payments ................................................................ 39
Section 3.     Written Plan of Benefits ............................................................................ 39
Section 4.     Commencement Date of Benefits Under Plan ......................................... 39
Section 5.     Initial Eligibility Requirements ................................................................ 39
Section 6.     Eligibility of Employees Hereafter Qualified ......................................... 40
Section 7.     Other Eligibles ............................................................................................ 40
Section 8.     Approval Required Before Payment of Benefits
               a) Bureau of Internal Revenue ................................................................. 40
               b) Wage Stabilization Board...................................................................... 41
Section 9.     Claims Review Procedure........................................................................... 41
Section 10.    Authority of Directors to Interpret Plan of Benefits .............................. 43
Section 11.    Limitation of Legal Actions....................................................................... 43

## ARTICLE VII - MEETINGS AND DECISIONS OF DIRECTORS

Section 1.     Officers and Terms ..................................................................................... 45
Section 2.     Meeting of Directors................................................................................... 45
Section 3.     Action by the Directors Without Meeting ............................................... 45
Section 4.     Quorum ........................................................................................................ 45
Section 5.     Vote of Directors ........................................................................................ 46
Section 6.     Presence of Officers at Meetings .............................................................. 47
Section 7.     Minutes of Meetings .................................................................................. 47

## ARTICLE VIII - ACTION IN THE EVENT OF DEADLOCK

Section 1.     Application of This Article ........................................................................ 49
Section 2.     Casting a Vote............................................................................................. 49
Section 3.     Expenses of Umpire.................................................................................... 49

## ARTICLE IX - EXECUTION OF TRUST AGREEMENT

Section 1.     Counterparts................................................................................................ 51
Section 2.     Written Instruments ................................................................................... 51

## ARTICLE X - AMENDMENT TO TRUST AGREEMENT

Section 1.     Amendment by Parties................................................................................ 53
Section 2.     Limitation on Right to Amendment.......................................................... 53
Section 3.     Notification of Amendment ...................................................................... 53

Exhibit 2 - Page 198

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

## ARTICLE XI - TERMINATION OF TRUST

| | | |
|---|---|---|
| Section 1. | By the Directors | 55 |
| Section 2. | By the Parties | 55 |
| Section 3. | Procedure on Termination | 55 |
| Section 4. | Notification of Termination | 55 |

## ARTICLE XII - MISCELLANEOUS PROVISIONS

| | | |
|---|---|---|
| Section 1. | Termination of Individual Employers | 57 |
| Section 2. | Vested Rights | 57 |
| Section 3. | Encumbrance of Benefits | 57 |
| Section 4. | Place of Business | 57 |
| Section 5. | Situs | 57 |
| Section 6. | Construction of Terms | 57 |
| Section 7. | Certification of Directors' Actions | 58 |
| Section 8. | Notification of Directors | 58 |
| Section 9. | Severability | 58 |
| Section 10. | Expenses of Directors | 58 |
| Section 11. | Validity of Action | 58 |
| Section 12. | Loew's Incorporated Retirement Plan | 58 |
| Section 13. | Claims Brought By Directors | 59 |

## ARTICLE XIII - RETIRED EMPLOYEES FUND

| | | |
|---|---|---|
| Section 1. | Eligible Retirees | 61 |
| | a) Persons who were participants in the Retired Employees Fund | 61 |
| | b) Metrocolor Facility Closing Benefit | 62 |
| Section 1(a) | Eligible Retirees - continued | 64 |
| Section 1(b) | [Section Deleted] | 64 |
| Section 2. | Commencement of Eligibility | 64 |
| Section 3. | Pension Plan as Agent | 65 |
| Section 4. | Benefits | 66 |
| Section 5. | Segregation of Funds | 66 |
| Section 6. | Segregation of Benefits and Reserves | 66 |
| Section 7. | Duration of Eligibility | 67 |
| Section 8. | Approval Required Before Payment of Benefits | 67 |
| Section 9. | Producer-Writers Guild of America Pension Plan | 67 |
| | Signatures | 69 |

## EXHIBIT A(29)   COMPOSITE PATTERN OF EMPLOYER RATE OF CONTRIBUTIONS

## ARTICLE I - PARTICIPATING UNIONS

| | | |
|---|---|---|
| Section 1. | Names of Unions | 1 |

## ARTICLE II - ACTIVE EMPLOYEES FUND

| | | |
|---|---|---|
| Section 1. | Contribution Requirements – Union Groups | 3 |
| Section 2. | Nonaffiliated Employee Groups | 10 |
| Section 3. | Contribution Requirements – Nonaffiliated Groups | 11 |
| Section 4. | Controlling Employees | 13 |

iii

Exhibit 2 - Page 199

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

**ARTICLE III - RETIRED EMPLOYEES FUND**

| | | |
|---|---|---|
| Section 1. | Contribution Requirements -- Union Groups | 16 |
| Section 2. | Nonaffiliated Employee Groups | 23 |
| Section 3. | Contribution Requirements -- Nonaffiliated Groups | 24 |
| Section 4. | Controlling Employees | 25 |

**ARTICLE IV - MAINTENANCE OF BENEFITS**

| | | |
|---|---|---|
| Section 1. | Active Employees Fund | 27 |
| Section 2. | Retired Employees Fund | 29 |

**ARTICLE V - OTHER CONTRIBUTIONS**

| | | |
|---|---|---|
| Section 1. | Residuals Contributions | 30 |
| | A. Supplemental Markets Payments | 30 |
| | B. Post '60s Payments | 31 |

///

Exhibit 2 - Page 200

## [3]MOTION PICTURE INDUSTRY HEALTH PLAN

[2]    This Agreement and Declaration of Trust is made and entered into as of the 20th day of October, 1952, in the County of Los Angeles, State of California, by and between the signatory members of the Association of Motion Picture Producers, Inc., the Contract Services Administration Trust Fund, the Independent Motion Picture Producers Association, the Society of Independent Motion Picture Producers, and the Alliance of Television Film Producers, each having its principal offices in Los Angeles County, State of California (hereinafter called the Associations) and various employers who are not members of the Associations but who in writing adopt and agree to be bound by the terms and provisions of this instrument and any amendments or modifications thereof (the members of the Associations and other employers will hereinafter be referred to collectively as the "Employers"), and the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada (hereinafter referred to as "I.A.T.S.E."), and affiliated Locals #44, #80, #165, #468, #659, #683, #695, #705, #706, #727, #728, #767, #776, #789, #790, and #816, and Operative Plasterers and Cement Finishers International Association of United States and Canada, Local #755, International Hod Carriers, Building and Common Laborers Union, Local #724, International Brotherhood of Electrical Workers, Local #40 (hereinafter referred to as "I.B.E.W."), The Publicists Guild, Screen Story Analysts' Guild, Script Supervisors' Guild, Hotel and Restaurant Employees and Bartenders International Union, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada and American Federation of Guards, Local #1 (hereinafter referred to as the "Unions"), and such other Unions as may become parties hereto in the manner herein provided, and Roy M. Brewer, E. L. Scanlon, James L. Noblitt, E. L. DePatie, John W. Lehners, Alfred P. Chamie, Ted Ellsworth, George Douglas, James D. Tante, W. K. Craig, Ralph H. Clare, I. E. Chadwick, Mae Stoneman, Marvin L. Faris, J. C. Bowman, and Richard L. Morley hereinafter referred to as the Initial [3]Directors, and Carl G. Cooper, T. J. Leonard, George Flaherty, William K. Hopkins, Herbert Aller, Howard A. McDonell, Edwin T. Hill, Ed Colyer, Albert K. Erickson, E. C. deLavigne, Ben A. Martinez, Samuel Broidy, H. C. Rohrbach, Bonar Dyar, Kay Lenard, and Louis Gray, hereinafter referred to as Alternate Directors.

---

[1] Section AMENDED throughout (7/19/91) (Amendment XLVI)

[2] ADDED 9/28/77 (Amendment XXXIII)

[3] Section AMENDED throughout (7/19/91) (Amendment XLVI)

Rev. 1/10

Exhibit 2 - Page 201

Case 2:12-cv-06093-VBF-MAN Document 60-2 Filed 04/18/14 Page 7 of 108 Page ID #:1541

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

*(This page left intentionally blank)*

Exhibit 2 - Page 202

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 3

## WITNESSETH:

WHEREAS, the Unions and the Employers have entered into collective bargaining agreements which provide, among other things, for the establishment of a Health Plan, and

WHEREAS, to accomplish the aforesaid purpose, it is desired to establish a Health Plan as a Trust Fund for receiving contributions and to provide benefits for eligible Employees, and

WHEREAS, the said Trust Fund is to be known as the AGREEMENT AND DECLARATION OF TRUST ESTABLISHING THE MOTION PICTURE INDUSTRY HEALTH PLAN, and

WHEREAS, it is desired to set forth the terms and conditions under which the said 'Plan is to be established and administered, and

WHEREAS, it has been mutually agreed that the Plan shall be administered by Directors and it is desired to define the powers and duties of the Directors and the nature of the benefits to be provided,

NOW THEREFORE, in consideration of the premises, it is mutually understood and agreed as follows:

---

ᴮ Section AMENDED throughout (7/19/91) (Amendment XLVI)

Exhibit 2 - Page 203

Case 2:12-cv-06693-VBF-MAN   Document 66-2   Filed 04/16/14   Page 9 of 108   Page ID
#:1543

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

*(This page left intentionally blank)*

Exhibit 2 - Page 204

Case 2:12-cv-06693-VBF-MAN   Document 60-2   Filed 04/18/14   Page 10 of 108   Page ID
#:1544

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 5

# ARTICLE I
## DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in this agreement:

### [5]Section 1. Employer

The term "Employer" as used herein shall mean any member of the Associations or any other Employer which produces motion pictures or commercials in the Los Angeles area or whose business is primarily the furnishing of materials or services for motion picture or commercial production in said area, and who becomes a party to this agreement and who has duly executed a Collective Bargaining Agreement with any Union which is or becomes a party hereto and which agreement requires contributions by such Employer to this Trust. The Trust created shall itself be considered an Employer hereunder if permitted by law or governmental regulation to be so considered with respect to employees directly employed by it in the administration thereof. Each Union and Association party hereto (including the Alliance of Motion Picture and Television Producers ("AMPTP") may be considered an Employer hereunder, if permitted by law or governmental regulation to be so considered, with respect to employees directly employed by such Union or Association in its own affairs. The Motion Picture Industry Pension Plan, the Motion Picture Industry Individual Account Plan, the Contract Services Administration Trust Fund, the Motion Picture Association of America, The Entertainment Industry Foundation, the Directors Guild of America Contract Administration, and the Directors Guild—Producer Training Plan may be considered Employers hereunder, if permitted by law or governmental regulation to be so considered with respect to employees directly employed by such entity. First Entertainment Federal Credit Union may be considered an Employer hereunder with respect to those employees of First Entertainment who may be permitted to participate in the Plan pursuant to resolutions duly adopted by the Directors.

[6] The term "Employer" as used herein shall also mean any member of the Alliance or any other employer that produces motion pictures or commercials outside of the Los Angeles area, that becomes a

---

[5]  Section AMENDED 12/1/59  (Amendment IV),
  Section AMENDED 9/1/93  (Amendment LIV),
  Section AMENDED 10/25/95 (Amendment LV),
  Section AMENDED 12/17/98, retroactively effective 1/1/98 (Amendment LVII)
  Section AMENDED 12/9/98, effective 1/1/99 (Amendment LX) (2nd and 3rd paragraphs were replaced with 3 new
      paragraphs.)
  Section AMENDED 3/25/04, (Amendment LXXVIII), retroactively effective 1/1/04, Article I, Section 1.
  Section AMENDED 12/20/04, (Amendment LXXXIII), retroactively effective 1/1/04,a new paragraph was
      inserted immediately before the last paragraph in Article I, Section 1.
  Section AMENDED 3/8/06, retroactively effective 1/29/06 (Amendment LXXXXVI), parts this Section were
      amended.

[6]  Section AMENDED 6/26/02, effective 7/1/02 (Amendment LXX) (This paragraph was replaced.)
  Section AMENDED 11/20/03, effective 1/1/04 (Amendment LXXVII) (This paragraph was replaced in its
      entirety.)
  Section AMENDED 12/20/04, effective 1/1/05 (Amendment LXXXIV) (This 2rd paragraph was replaced in its
      entirety.)
  Section AMENDED 2/23/05 (Amendment LXXXIX) (This 2nd paragraph was replaced in its entirety.)
*(Footnotes continued on next page.)*

Exhibit 2 - Page 205

Case 2:12-cv-06693-VBF-MAN   Document 60-2   Filed 04/16/14   Page 11 of 108   Page ID
#:1545

Page 6                                                                    Motion Picture Industry Health Plan
                                                                          Agreement and Declaration of Trust
                                                                          {Inclusive of Amendments I through CVI}

party to this Plan and that has duly executed a Collective Bargaining Agreement with I.A.T.S.E. or I.A.T.S.E. Local 600, 700, 52, 161, 800, or Teamsters Locals 399 and 817, that requires contributions by such employer to this Plan; provided, however, that such entity shall be considered an Employer only with respect to Employees described in Section 2(b)(B)(iii)(1), Section 2(b)(B)(iii)(2), Section 2(b)(D), 2(b)(F), 2(b)(G), or 2(b)(I) of this Article.

The term "Employer" also includes, for the limited purpose only of making contributions to the Plan on behalf of Participants included within the definition of Employee by Section 2 of this Article, a producer of motion pictures or commercials who does not produce such pictures or commercials in the Los Angeles area and is not described in the foregoing paragraph, but hires Participants under the circumstances set forth in Section 2 of this Article.

The term "Employer" also includes, for the limited purpose only of making contributions to the Plan on behalf of Participants described in Section 2(b)(E) of Article I, a producer of motion pictures or commercials who does not produce such pictures in the Los Angeles area and is not described in, but hires Participants under the circumstances set forth in Section 2(b)(E) of Article I.

The term "Employer" as used in Article V of this Plan shall include each "Employer" as that term is defined by any of the foregoing paragraphs of this Section 1 and shall include any other employer which produces or distributes motion pictures and which has executed an agreement with any Union or with the Plan assuming the obligation under any applicable collective bargaining agreement to pay to the Plan contributions required to be made to the Plan under Article XIX (Post '60s Theatrical Motion Picture) or Article XXVIII (Supplemental Markets) of the I.A.T.S.E. Basic Agreement or by any analogous provisions of any other collective bargaining agreement between any Employer party and any Union party to this Plan.

[7]     The term "Employer" as used herein shall exclude Loan-Out companies. A "Loan-Out" company is any company, regardless of its legal entity structure, that is controlled by the only employee performing work covered by an applicable collective bargaining agreement. Employers who have Controlling Employee(s) are only eligible to participate in the Plan if they meet the criteria set forth in Article II, Section 4. of Exhibit. A (Controlling Employees) as well as all the other terms and conditions of the Plan.

---

Section AMENDED  4/27/05, retroactively effective 1/1/05 (Amendment LXXXX) (This [2nd] paragraph was replaced in its entirety.)

[7]     Section AMENDED 2/5/09 (Amendment CIV, this paragraph was added effective 2/25/09.)

Exhibit 2 - Page 206

Case 2:12-cv-06693-VBF-MAN   Document 60-2   Filed 04/16/14   Page 12 of 108   Page ID
#:1546

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 7

## ⁸Section 2. Employee

The term "Employee" as used herein shall mean:

⁹(a) (i) An eligible employee of an Employer who is included within a unit covered by a Collective Bargaining Agreement between an Employer and a Union, which are or become parties hereto;

 (ii) An employee of this Health Plan, any Union, any Association party hereto, the Motion Picture Industry Pension Plan, the Motion Picture Industry Individual Account Plan, the Alliance of Motion Picture and Television Producers, the Motion Picture Association of America, The Entertainment Industry Foundation, the First Entertainment Credit Union, the Contract Services Administration Trust Fund, the Directors Guild of America Contract Administration, and the Directors Guild—Producer Training Plan, if such entity be lawfully included as an Employer, as provided in Section 1, of this Article;

 (iii) Nonaffiliated Producers and Accountants Eligible executive producers, producers, associate producers, and production accountants (subject to such definitions and eligibility rules as the Directors, in their discretion, may establish), employed by an Employer, provided the Employer agrees (in sufficient written instrument to the Directors which is accepted by the Directors and which acceptance may be withheld in the discretion of the Directors) to make contributions on their behalf at such times and in such amounts as the Directors may, from time to time, establish by resolution; and

 (iv) Other Nonaffiliates Any other employee of an Employer who is not included within the definition of Employee above and who is not included within any unit or units covered by any collective bargaining agreement to which such Employer is a party, whether with any Union or any other labor organization, provided, however that no person described in this subparagraph (iv) shall become an Employee hereunder unless the Employer in a sufficient written instrument to the Directors designates as eligible Employees all of the employees of such Employer not within any unit or units covered by any such collective bargaining agreement (other than those persons mentioned in subparagraph [iii]), and unless such designation is accepted by the Directors, which acceptance may be withheld in the discretion of the Directors.

---

⁸ Section AMENDED 12/1/59 (Amendment IV),
Section AMENDED 3/26/61 (Amendment VI),
Section AMENDED 6/12/68 (Amendment XIX),
Section AMENDED 12/20/85 (Amendment XLI),
Section AMENDED 2/27/91 (Amendment XLVII),
Section AMENDED 12/17/98, retroactively effective 1/1/98 (Amendment XVII)

⁹ Section AMENDED 8/26/98, effective 9/20/98 (Amendment LIX) Section 2(a)(iii) was amended.
Section AMENDED 12/18/02 (Amendment LXXIV), effective 1/1/03.
Section AMENDED 3/25/04 (Amendment LXXVIII), retroactively effective January 1, 2004, Article I, Section 2(a)(ii).
Section AMENDED 6/22/05 (Amendment LXXXXII), retroactively effective January 1, 2005, Article I, Section 2(a)(iii) and (iv) are amended and subsection (v) is added
Section AMENDED 8/24/05 (Amendment LXXXXIII), effective 8/24/05, Article I, Section 2.(a)(ii) is amended.

Exhibit 2 - Page 207

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

(v) Termination of Nonaffiliate Agreements  The designation of an Employer's Employees for eligibility to participate under subparagraphs (iii) or (iv) of the preceding paragraph may be terminated by the Plan after notice, and by the Employer after notice and acceptance of such termination by the Plan.

[10](vi) Controlling Employees. A qualified Controlling Employee of an Employer shall mean any Employee (excluding any Employee described in Article II, Section 2, Paragraph B.1 of Exhibit A regarding Named Employers) who is also a shareholder of the corporation or member of the LLC or is an officer of such Employer or the spouse of such a shareholder, member of the LLC or officer, and whose Employer employs at least one other employee performing work covered under the applicable collective bargaining agreement in addition to the Controlling Employee. Controlling Employees shall also include similarly situated employees of any other eligible business entities.

[11](b) The term Employee as defined in any event shall not include those employees who do not satisfy one of the following subparagraphs:

   (A) the employee's principal employment with the Employer satisfies both of the following requirements:

      (i) the employee is in the labor pool in the Los Angeles area, and

      (ii) the employee is hired (1) by the Employer in the Los Angeles area to perform services in the Los Angeles area in the Industry, or (2) by the Employer in the Los Angeles area to perform temporary services outside the Los Angeles area in connection with motion picture (including theatrical, television, music video and commercial) productions; or

   (B) the employee's principal employment with the Employer satisfies all of the following requirements:

      (i) the employee is in the labor pool in the United States or Puerto Rico, and

      [12](ii) the employee is hired by the Employer in the United States or Puerto Rico area (1) to perform services in such areas in the Industry in connection with motion picture (including theatrical, television, music video and commercial) productions or (2) to perform temporary services outside the United States and Puerto Rico area in connection with such motion picture productions, and

---

[10] ADDED - 2/5/09 (Amendment CIV, effective 2/25/09 paragraph (vi) was added.)

[11] Section AMENDED 12/9/98, effective 1/1/99 (Amendment LX).  Section 2(b)(i)-(ii) were amended.
Section AMENDED 8/25/99, retroactively effective 1/1/99 (Amendment LXII)
Section AMENDED 6/26/02, effective 7/1/02 (Amendment LXX)
Section AMENDED 11/20/03, effective 1/1/04 (Amendment LXXVII) Subsection (b) was amended in its entirety.
Section AMENDED 12/20/04, retroactively effective January 1, 2004 (Amendment LXXXIII) The introductory sentence in Section 2.(b) was amended.

[12] Section AMENDED 12/20/00, retroactively effective 1/1/99 (Amendment LXV)
Section AMENDED 11/20/03, effective 1/1/04 (Amendment LXXVII) Subsection (b) was amended in its entirety.

Exhibit 2 - Page 208

Case 2:12-cv-06093-VBF-MAN Document 60-2 Filed 04/18/14 Page 14 of 108 Page ID #:1548

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 9

    (iii)    the employee is employed by the Employer as (1) a cameraperson who is working under a Collective Bargaining Agreement between an Employer and I.A.T.S.E. or Local 600 thereof or (2) an editorial or post-production sound employee who is working under a Collective Bargaining Agreement between an Employer and I.A.T.S.E. or Local 700 thereof; or

[13](C)    the Employer is the Plan, the Motion Picture Individual Account Plan, the Motion Picture Industry Pension Plan, the Motion Picture Association of America, or I.A.T.S.E. Local 52, Local 161, Local 600 or Local 700 and the Employee's principal employment with the Employer satisfies each of the following requirements:

    (i)    the Employee is in the labor pool in the United States, and

    (ii)    the Employee is hired by the Employer in the United States to perform services in the United States in the Industry; or

[14](D)    the employee's principal employment with the Employer satisfies all of the following requirements of subparagraphs (i), (ii) and (iii) below or, in the alternative, all of the following requirements of subparagraphs (iv), (v) and (vi) below:

    (i)    the employee is in the labor pool in New York or New Jersey, and

    (ii)    the employee is hired by the Employer in New York or New Jersey (1) to perform services in such areas in the Industry in connection with motion picture (including theatrical, television, music video and commercial) productions or (2) to perform temporary services outside of such areas, but within the States of Connecticut, Delaware and Pennsylvania, excluding the City of Pittsburgh, in connection with such motion pictures or commercial productions, and

    (iii)    the employee is employed by the Employer as a studio mechanic who is working under a Collective Bargaining Agreement between an Employer and I.A.T.S.E. Local 52 thereof, or

    (iv)    the employee is in the labor pool in New York or New Jersey, and

    (v)    the employee is hired by the Employer in New York or New Jersey to perform services in the Industry in connection with motion picture productions, and

    (vi)    the employee, prior to May 14, 2006, worked under an I.A.T.S.E., Local 52 Feature and Television Collective Bargaining Agreement which required contributions to the Motion Picture Industry Pension and Health Plans, and is hired by an Employer, on or after May 14, 2006, under an I.A.T.S.E. Collective Bargaining Agreement to perform services as a studio mechanic outside of the geographic jurisdiction of I.A.T.S.E., Local 52, as set forth in the May 16, 2006 Motion Picture Studio Mechanics, Local 52, I.A.T.S.E. Feature and Television Production Contract with Major Producers.

---

[13]  Restated 12/20/04, effective 1/1/05 (Amendment LXXXIV) Subsection (C) was restated.
Section AMENDED 8/24/05, effective 8/24/05 (Amendment LXXXXIII) Subsection (C) was amended.

[14]  Section AMENDED 8/23/06, retroactively effective 5/14/06 (Amendment LXXXXVIII)

Exhibit 2 - Page 209

Case 2:12-cv-00093-VBF-MAN Document 60-2 Filed 04/16/14 Page 15 of 108 Page ID #:1549

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments 1 through CVI

[15](E)    This paragraph (E) applies to an employee who satisfies all of the following requirements

    (i)    the employee is in the labor pool in the United States, and

    (ii)    the employee is hired by the Employer in the United States to perform services in the United States in the Industry and

    (iii)    if a Sideletter (as defined below) provides that the particular employee who would otherwise participate in, and have contributions made to, other pension and/or health plans (the "away plans") with respect to employment in the Industry by a specified employer pursuant to a collective bargaining agreement on one or more specified projects (or all projects) will instead participate in one or more of the MPI Plans.

    In that case, then in accordance with and subject to the Sideletter, the particular employee shall be an Employee hereunder and shall be eligible to earn benefits and Credited Hours with respect to the Employee's employment by the specified employer on the project(s) specified in the Sideletter. In addition, the specified employer to said Sideletter will be considered an Employer party for the limited purpose of making contributions on behalf of such Employee(s) (and the union party shall be considered a Union party for this purpose). Notwithstanding Exhibit A to the Plan, said Employer will be required to contribute in the amounts and for the hours set forth in the Sideletter with respect to said Employee(s). Notwithstanding Section 1(a)(1), except for employee(s) specified in the Sideletter, no other employees of said Employer covered by the applicable collective bargaining agreement shall be Employees hereunder. A Sideletter is a collective bargaining agreement (or addendum thereto), together with any applicable employee election forms, that (i) is among the employer and an I.A.T.S.E. local union and (ii) meets the conditions set forth in resolutions adopted by the Directors of the MPI Plans.

[16](F)    Local 161  The employee's principal employment with the Employer satisfies all of the following requirements of subparagraphs (1), (2) and (3) below or, in the alternative, all of the following requirements of subparagraphs (4), (5) and (6) below:

    (i)    the employee is in the labor pool in New York, New Jersey or Connecticut, and

    (ii)    the employee is hired by the Employer in New York, New Jersey or Connecticut (i) to perform services in such areas in the Industry in connection with motion pictures or commercial productions or (ii) to

---

[15]    ADDED – 12/20/04, retroactively effective 1/1/04 (Amendment LXXXIII). New section (E).
    Section AMENDED 12/21/05, effective 12/21/05 (Amendment LXXXXV).

[16]    As ADDED – 12/20/04, effective 1/1/05 (Amendment LXXXIV) Subsection (F) is added.
    Section AMENDED 8/24/05, effective 8/24/05 (Amendment LXXXXIII) Article I, Section 2(b)(F)(iii) is amended.
    Section AMENDED 10/15/07, retroactively effective 3/3/07 (Amendment C), Subsection (F) is amended in its entirety.

Exhibit 2 - Page 210

Case 2:12-cv-00093-VBF-MAN   Document 60-2   Filed 04/18/14   Page 16 of 108   Page ID
#:1550

Motion Picture Industry Health Plan                                                    Page 11
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

perform temporary services, in connection with motion pictures or commercial productions, in Delaware, Maine, Massachusetts, New Hampshire, Pennsylvania, Rhode Island, Vermont, District of Columbia, Florida, Georgia, Maryland, North Carolina, South Carolina, Virginia, and West Virginia, and

(iii)   the employee is employed by the Employer as a script supervisor, production office coordinator, assistant production office coordinator, production accountant, payroll accountant or assistant production accountant who is working under a Collective Bargaining Agreement between an Employer and I.A.T.S.E. Local 161 thereof.

(iv)   the employee is in the labor pool in New York, New Jersey or Connecticut; and

(v)   the employee is hired by the Employer in New York, New Jersey or Connecticut to perform services in the Industry; and

(vi)   the employee, prior to March 3, 2007, worked under an I.A.T.S.E. Local 161 Feature and Television Collective Bargaining Agreement which required contributions to the Motion Picture Industry Pension and Health Plans, is hired by an Employer on or after March 3, 2007 to perform services as a script supervisor, production office coordinator, assistant production office coordinator, production accountant, payroll accountant or assistant production accountant outside of the geographic jurisdiction of the 2003 Motion Picture Script Supervisors and Production Office Coordinators, Local #161, IATSE and M.P.T.A.A.C. Motion Picture Theatrical and TV Series Production Contract, or its successor agreements, and is employed under a Collective Bargaining Agreement permitting redirection of contributions to this plan on behalf of the employee.

[17](G)   The employee's principal employment with the Employer satisfies all of the following requirements:

(i)   the employee is in the labor pool in the United State or Puerto Rico; and

(ii)   the employee is employed by the Employer to perform services in the United States, United States territories, Puerto Rico or Canada, but excluding employment on New York-based productions or productions made in the vicinity of New York, when such productions of either type are made with on-production crews obtained exclusively from New York; and

(iii)   the employee is employed by the Employer as an art director working under a Collective Bargaining Agreement between an Employer and I.A.T.S.E. or Local 800 thereof.

[18](H)   East Coast Production Accountants   The employee's principal employment with the Employer satisfies all of the following requirements:

---

[17]   As added – 2/23/05 (Amendment LXXXIX)

Case 2:12-cv-00693-VBF-MAN  Document 60-2  Filed 04/18/14  Page 17 of 108  Page ID
#:1551
Page 12

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

- (i) the employee is employed by the Employer in New York or New Jersey; or

- (ii) the employee is hired by the Employer in New York or New Jersey to perform services outside those states, but within the limits of the U.S., its territories and Canada; and

- (iii) the employee is employed by the Employer as a nonaffiliated production accountant under a Production Accountants Group Designation.

[19](I) The employee's principal employment with the Employer satisfies all of the following requirements:

- (i) the employee is hired by the Employer (1) to perform services in the City of New York, New York and/or in Los Angeles County, or (2) is hired by the Employer in New York, New York or in Los Angeles County to perform work outside of such areas; and

- (ii) the employment is in connection with the production of either (a) live action theatrical motion pictures or live action prime time television motion pictures, or (b) a motion picture of a different type which the Employer, at its sole discretion, has determined will be covered by a collective bargaining agreement referenced in (I)(iii), below; and

- (iii) the employee is employed by the Employer as a freelance casting director or freelance associate casting director who is working under a collective bargaining agreement between the Employer, on the one hand, and Teamsters Local 399 and Teamsters Local 817, on the other hand.

[20](J) The employee's principal employment with the Employer satisfies all of the following requirements:

- (i) The employee is employed (1) through the Employer's southern California office or crewing service, to perform service in connection with the live broadcast or recording of events held in the California counties of Los Angeles, Ventura, Orange or San Diego, or the greater Palm Springs, California area, or (2) through the Employer's southern California office or crewing service, to temporarily perform services in connection with the live broadcast or recording of events held outside such counties and area referenced in (J)(i)(1), above; and

- (ii) The employee is not hired from San Diego Local 795, I.A.T.S.E., and is not a participant in the I.A.T.S.E. National Health and Welfare, Annuity or Pension Funds, by virtue of customarily being employed under an

---

[18]   ADDED 6/22/05, retroactively effective 1/1/05 (Amendment LXXXXII) (Subsection (H) is added.)
[19]   ADDED 3/8/06, retroactively effective 1/29/066 (Amendment LXXXXVI) (Subsection (I) is added.)
[20]   ADDED 3/1/07 (Amendment LXXXXIX)

Exhibit 2 - Page 212

Case 2:12-cv-06093-VBF-MAN Document 68-2 Filed 04/16/14 Page 18 of 108 Page ID #:1552

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 13

I.A.T.S.E. Collective Bargaining Agreement covering geographic regions other than those described in (J)(i)(1) above; and

    (iii)    The employee is a freelance operator employed as a technical production crew member, and a Collective Bargaining Agreement between an Employer and I.A.T.S.E. requires contributions to the Motion Picture Industry Pension, Health and Individual Account Plans on behalf of such employee.

[21](c)    (A) Application. Effective September 1, 2002, this paragraph (2) applies to each director of photography who

    (i)    on August 31, 2002, is a Controlling Employee, within the meaning of Exhibit A, Article II, Section 4, of a Controlled Employer that is signatory to the Television Commercials Production Contract, Northeast Corridor and Outer Region, between A.I.C.P. and I.A.T.S.E. #600 ("Contract"), or would be a Controlling Employee after August 31, 2002 were it not for this subparagraph 2(c), and

    (ii)    has performed or in the future performs work for the Controlled Employer that is covered by the Contract. Any such individual described in this paragraph (A) shall be referred to as an "Excluded Person".

If any other Collective Bargaining Agreement covering directors of photography involved in commercial production provides that contributions to the Active or Retiree Funds of the Plan are not due for Controlling Employees in a manner similar to the Contract, then the rules set forth in this subparagraph 2(c) shall also apply to such Collective Bargaining Agreement, except that such rules shall be effective as of the date contributions cease for Controlling Employees under such Collective Bargaining Agreement (instead of September 1, 2002).

    (B)    Rules for Excluded Persons Not Working under other Collective Bargaining Agreements. Notwithstanding any other provision of this Trust Agreement, the following rules apply to each Excluded Person who has not performed work for the Controlled Employer under any Collective Bargaining Agreement other than the Contract.

First, such Excluded Person (whether or not he previously participated in the Active or Retiree Fund of the Plan) shall not be an Employee, Controlling Employee or Participant in the Active or Retiree Fund of the Plan for the Controlled Employer on and after September 1, 2002 and shall not earn any Credited Hours for the Controlled Employer on and after September 1, 2002.

Second, the determination of whether the Excluded Employee earns qualified years or hours in the Retired Employee Fund or eligibility in the Active Fund shall be made by ignoring all employment for such Controlled Employer on and after September 1, 2002.

---

[21] Section AMENDED 4/22/98, retroactively effective 9/20/97 (Amendment XVIII)
Section AMENDED 8/28/02, effective 9/1/02 (Amendment LXXI) Article I, Section 2 was amended by deleting the now expired subsection 2 (c) and replacing it with a new subsection 2(c).

Exhibit 2 - Page 213

Case 2:12-cv-00693-VBF-MAN Document 60-2 Filed 04/16/14 Page 19 of 108 Page ID #:1553

Page 14

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

Third, the Controlled Employer shall not contribute on behalf of the Excluded Person on or after September 1, 2002, but shall continue to contribute on behalf of other Employees (and such other Employees are not impacted by this subparagraph 2(c)). If the Excluded Employee later performs work under another Collective Bargaining Agreement, then the rules set forth in (C) below shall apply, on a prospective basis, beginning on the date such work first commences.

(C)     Rules for Excluded Persons Working under other Collective Bargaining Agreements. The following rules apply to each Excluded Person who has performed work for the Controlled Employer under any Collective Bargaining Agreement other than the Contract.

First, the Excluded Person shall be an Employee, Participant, and a Controlling Employee in the Plan with respect to such employment by the Controlled Employer.

Second, the Controlled Employer shall contribute on the Excluded Person's behalf under the Controlling Employee rules set forth in Exhibit A, Article II, Section 4, provided that with respect to periods on and after September 1, 2002, such contributions shall be made on the basis that the Excluded Person is not covered by the Contract.
Third, this subparagraph 2(c) shall not impact in any way the obligation of the Controlled Employer to contribute on behalf of other Employees (and such other Employees are not impacted by this subparagraph 2(c)).

(D)     Employment for other Employers. This subparagraph 2(c) shall not apply with respect to any work by the Excluded Person for an Employer that is not a Controlled Employer or for an Employer as to which the individual is not an Excluded Person.

[22](d)     (A) This paragraph (2)(d) applies to any freelance Employee employed in the job classification of production office coordinator, assistant production office coordinator or art department coordinator under the Amendment Agreement of August 1, 2001 between the A.M.P.T.P. (on behalf of those Employers it represented in the negotiations of the 2000 Producer-I.A.T.S.E. Basic Agreement and those Employers who effectively consented to be part of the multi-employer bargaining unit described therein), on the one hand, and the I.A.T.S.E. and I.A.T.S.E., Local 871, on the other hand, (such agreement, together with renewals thereof, referred to as the "Agreement"). However, this paragraph (2)(d) does not apply to an Employee with respect to a particular Employer unless the Employee was working for that Employer in such a job classification on or before August 1, 2001 and also previously participated in the Employer's benefit plans (in lieu of this Plan) during such employment.

(B)     Notwithstanding the foregoing paragraph (2)(a)(i), any such Employee working for an Employer in such a job classification on or after August 1, 2001 may elect (in writing) to participate in such Employer's benefit plans in lieu of the Active and Retiree Health Plans, the Individual Account Plan and Motion Picture Industry Pension Plan (collectively "MPI Plans"). Such elections shall be filed with the Employer and made in accordance with paragraphs (i) or (ii) below, as applicable. Except as described in the next sentence, all elections are irrevocable with respect to the employment of such Employee with the Employer, even if the Employee terminates and is later reemployed by the Employer. However, if the Employer terminates or discontinues its health plan or pension plan or the Employee is excluded from participation in either such plan,

---

[22]     ADDED - Subsection (d) added 2/27/02, effective 8/1/02 (Amendment LXVIII)

Exhibit 2 - Page 214

Case 2:12-cv-06693-VBF-MAN   Document 60-2   Filed 04/18/14   Page 20 of 108   Page ID #:1554

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments 1 through CVI)

Page 15

the Employee may make a different election. No election made by an Employee for a particular Employer shall apply to any other Employer.

    (iii)    In the case of any such Employee employed on August 1, 2001 by an Employer in such a job classification (or who was previously employed by the Employer and resumes employment with the Employer in such a job classification prior to November 1, 2001), any such election shall be made no later than December 1, 2001. If the Employee elects to participate in the MPI Plans, participation in the MPI Plans shall commence on the date the election is made (or as soon as practicable thereafter) and the Employer shall commence making contributions as of such date. If no written election is made, the

Employee shall participate in the MPI Plans beginning December 1, 2001 and the Employer shall commence making contributions as of such date. Notwithstanding the foregoing, if the Employee previously participated in the Employer's plans, but the Employee actively participates in the MPI Plans as an employee of the Employer on August 1, 2001 (or date of resumption of employment, if later), participation in the MPI Plans shall continue until election is made pursuant to this paragraph (i).

    (ii)    In the case of any such Employee who was previously employed by an Employer on or before August 1, 2001 who resumes employment with that particular Employer in such a job classification on or after November 1, 2001, any such election shall be made no later than 30 days after the date of resumption of employment in such position. If no written election is made, the Employee shall participate in the MPI Plans. If the Employee elects (or is deemed to elect) to participate in the MPI Plans, participation shall commence on the date of resumption of such employment and the Employer shall commence making contributions as of such date.

    (C)    If such an election to participate in the Employer's plans is made, the Employee shall not be a Participant in the MPI Plans and shall not earn any Credited Hours with respect to employment by such Employer for any period during which the individual works under the Agreement for such Employer. In addition, no contributions shall be due to the MPI Plans by the Employer with respect to the periods described in the preceding sentence.

    (D)    The Employer shall retain all written elections and provide them to the MPI Plans upon request.

[23](e)    This paragraph (e) applies if a Sideletter (as defined below) provides that a particular Employee will participate in, and contributions will be made to, his or her home pension and health plans with respect to employment by a specified Employer on one or more specified projects (or all projects) in lieu of one or more of the MPI Plans (as defined in paragraph 2(d)(B) above). In that case, then in accordance with and subject to the Sideletter, the particular Employee shall not be a participant in the Plan, and shall not be credited with any hours or Qualified Years with respect to the Employee's employment by the specified Employer on the project(s) specified by the Sideletter. A Sideletter is a Collective Bargaining Agreement (or

---

[23] ADDED - Subsection (e) added 4/23/03, effective 5/1/03 (Amendment LXXVI)
Section AMENDED 3/25/04 (Amendment LXXVIII), retroactively effective 9/22/03, Article I, Section 2.

Exhibit 2 - Page 215

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 21 of 108 Page ID #:1555

Page 16

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

addendum thereto), together with any applicable employee election forms, that (i) is among the Employer and an I.A.T.S.E. local Union or a Basic Crafts local Union (that is a Union named in paragraph (2), (4), (5), (7) or (8) of the definition of "Union" in Article 1, Section 3) and (ii) meets the conditions set forth in resolutions adopted by the Directors of the MPI Plans.

[24]**Section 3. Unions**

The Term "Unions" as used herein shall mean the following unions:

1.   International Alliance of Theatrical Stage Employes, Moving Picture Technicians, Artists and Allied Crafts of the United States and Canada, AFL-CIO, CLC (covering its Locals 44, 52, 80, 161, 600, 683, 695, 705, 706, 728, 729, 767, 700, 800, 839, 871, 884, and 892);

2.   Studio Utility Employees, Local 724

3.   Hotel and Restaurant Employees and Bartenders Union, Local 11

4.   United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local 78

5.   Ornamental Plasterers and Cement Finishers' International Association of United States and Canada, Local 755

6.   American Federation of Security Officers, Local 1

7.   International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 399

8.   International Brotherhood of Electrical Workers, Local 40

9.   Service Employees International Union, Local 1877

10.  MGM Studio Police Officers Guild

11.  Studio Security and Fire Association—The Warner Bros. Studio Facilities

12.  American Federation of Musicians, Local 47

13.  Producers Guild of America

14.  Office and Professional Employees' International Union, A F. of L., Local 174

15.  Warner Bros. Studio Office Employees Guild

16.  International Brotherhood of Teamsters, Theatrical, Radio, Television, Field Equipment, Sound Tracks, Motion Picture, Film, Exhibition, and Orchestra Chauffeurs and Helpers, Local 817.

---

[24]  Section AMENDED 10/25/95, effective 6/12/95  (Amendment LV)
   Section AMENDED 11/20/03, effective 1/1/04 (Amendment LXXVII)
   Section AMENDED 12/20/04, effective 1/1/05 (Amendment LXXIV) #1 of Section 3 was changed.
   Section AMENDED 3/8/06, retroactively effective 1/29/06 (Amendment LXXXVI) Local 817 was added.
   Section AMENDED 8/28/08, retroactively effective 7/1/08 (Amendment CII) Locals 790 and 847 merged into 800.

Rev. 1/10

Exhibit 2 - Page 216

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/10/14 Page 22 of 100 Page ID
#:1556

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 17

17.  Any other union as shall become a party to this Agreement and has executed a Collective
Bargaining Agreement with an Employer as defined in Section 1 hereof.

## [25]Section 4.  Directors

(a)  The term "Employer Directors" as used herein shall mean the Directors appointed by the
Employers.

(b)  The term "Union Directors" as used herein shall mean the Directors appointed by the
Unions.

(c)  The term " Directors" as used herein shall mean Employer Directors and Union Directors
collectively.

## Section 5.  Agreement and Declaration of Trust

The term "Agreement and Declaration of Trust" as used herein shall mean this instrument,
including any amendments hereto and modifications hereof.

## [26]Section 6.  Plan of Benefits

The term "Plan of Benefits" as used herein shall mean the Plan or program of benefits established
under and pursuant to this Agreement and Declaration of Trust.

## Section 7.  Plan

The term " Plan" as used herein shall mean the Motion Picture Industry Health Plan, the Trust
Fund created pursuant to this agreement.  The Plan shall include all contributions from Employers, all
insurance policies issued to or at the instance of the Plan, together with all dividends, refunds, and all
other sums payable to the Directors on account of such policies, all investments made and held by the
Directors hereunder, all income from investments made and held by the Directors, or otherwise, and any
other money or property of any kind or character received and held by the Directors, from any source
whatsoever, for the uses, purposes, and trusts set forth in this Agreement and Declaration of Trust.

## Section 8.  Contributions

The term "Contributions" as used herein shall mean the contributions made to the Plan in
accordance herewith.

## Section 9.  Benefits

The term "Benefits" as used herein shall mean the health and welfare benefits to be provided
pursuant to the Plan of Benefits for the Employees of the Employers, their families and dependents,
provided, however, that such families and dependents shall be eligible for any such benefits only when
the Employee through whom they would derive such benefits is at the time an Employee eligible
hereunder.

---

[25]  Section AMENDED 12/15/99 (Amendment LXIV), effective January 1, 2000.

[26]  Section AMENDED throughout 7/19/91 (Amendment XLVI)

Exhibit 2 - Page 217

Case 2:12-cv-00693-VBF-MAN   Document 60-2   Filed 04/18/14   Page 23 of 108   Page ID #:1557

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

### Section 10.  Collective Bargaining Agreement

The term "Collective Bargaining Agreement" as used herein shall mean the collective bargaining agreement in force and effective between the respective Unions and the Employers.

### Section 11.  Effective Date

The term "Effective Date" or "Effective Date of this Trust Agreement" as used herein shall mean the date upon which this instrument shall have been executed by all parties hereto, or the date of receipt of the approvals provided for in Section 8 of Article VI hereof, whichever date shall be the later.

///

Exhibit 2 - Page 218

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

## ARTICLE II

### Section 1. Establishment of Plan

There is hereby established the "Motion Picture Industry Health Plan" for the purpose of providing and maintaining health and welfare benefits and insurance for employees in accordance with the provisions hereof.

///

Exhibit 2 - Page 219

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

*(This page left intentionally blank)*

Exhibit 2 - Page 220

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

## ARTICLE III
## DIRECTORS[27]

### [28]Section 1.  Board of Directors

There is hereby established a Board of Directors for the purpose of administering this Plan in accordance with the terms and provisions hereof.

### Section 2.  Number of Directors

The initial Directors and their alternates shall be:

(a)      the operation and administration of the Plan shall be the joint responsibility of eighteen (18) Directors appointed by the Employers and eighteen (18) Directors appointed by the Unions. Subject to Section 2(b)–(d) below, all alternate directors on December 31, 1999 shall become Directors on January 1, 2000.

(b)      The eighteen (18) Union Directors are to be appointed in the following manner:

(1)      Thirteen (13) Directors to be appointed by the President of the I.A.T.S.E. (or its designate).

(2)      Five (5) Directors to be appointed by the Chairman of the Basic Crafts (or its designate).

(c)      The eighteen (18) Employer Directors are to be appointed by the President of the Alliance of Motion Picture and Television Producers (or its designate).

(d)      Notwithstanding the foregoing, no person shall be appointed (or continue to serve) as a Director of this Plan unless such person is also a director of the Motion Picture Industry Pension Plan.  In addition, no person shall be appointed (or continue to serve) as a Director of this Plan if such individual is either the business representative, officer, elected official or an employee of a Union party acting as a collective bargaining representative for any employees of either this Plan or the Motion Picture Industry Pension Plan.

---

[27]  Section AMENDED - Article III is amended 12/15/99 (Amendment LXIV), effective 1/1/00.  (Eliminates any rights/reference of Alternate Directors.

[28]  Section AMENDED 9/16/59 (Amendment III)
Section AMENDED 5/9/62 (Amendment IX)
Section AMENDED 9/9/64 (Amendment X)
Section AMENDED 1/12/66 (Amendment XIII)
Section AMENDED 2/21/67 (Amendment XV)
Section AMENDED 6/23/87 (Amendment XLII)

Exhibit 2 - Page 221

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 27 of 108 Page ID #:1561

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments 1 through CVI

## Section 3. Term of Directors

Each Director shall continue to serve as such until his death, incapacity, resignation, or removal, as herein provided. Any Employer Director may be removed at will by the Employer party which shall have appointed him; and any Union Director may be removed at will by the Union party, which shall have appointed him.

## Section 4. Resignation

A Director may resign and become and remain fully discharged from further duty or responsibility hereunder upon giving thirty (30) days' written notice to the remaining Directors and to the party, which shall have appointed or selected such Director. Shorter notice than thirty days may be accepted by the remaining Directors and the respective parties aforesaid as sufficient. Such notice shall state a time not less than such thirty (30) days' thereafter when the resignation shall take effect and upon such date, so designated, shall become effective unless a successor Director shall have been appointed at an earlier date, in which case such resignation shall take effect immediately upon the appointment and certification of such successor Director.

## Section 5. Certification

In the event a Director is removed, and in any case in which a successor Director is appointed, the Directors shall be notified in writing of such removal or the appointment of such successor, as the case may be, by an instrument in writing executed by the party causing such removal or appointment. No removal or appointment shall become effective until such notice, so evidenced, is received by the Directors. The filing or deposit of such notice of removal or appointment, addressed to the Directors hereunder at the office of the Director, shall constitute sufficient notice to the Directors within the purview hereof.

## Section 6. Succession

Any successor Director appointed by and in accordance with the foregoing provisions shall, upon his acceptance of such directorship in writing and filed with the Directors, become vested with all rights, powers and duties of a Director hereunder with like effect as if originally named as a Director in this Plan.

///

Exhibit 2 - Page 222

Case 2:12-cv-00093-VBF-MAN Document 60-2 Filed 04/18/14 Page 28 of 108 Page ID
#:1562

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 23

## ARTICLE IV
## POWERS, DUTIES AND OBLIGATIONS OF DIRECTORS

### Section 1. Construction of Agreement

The Directors shall have power to construe the provisions of the Agreement and Declaration of Trust and the terms used herein and any construction adopted by the Directors in good faith shall be binding upon the Unions, the Employers and the Employees and their families and dependents.

### [29]Section 2. General Powers

The Directors are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

    (a)    To pay and provide for the payment of all reasonable and necessary expenses of collecting payments and administering the affairs of the Plan, including, but without limitation thereto, the payment of all expenses which may be incurred for or in connection with the establishment and maintenance of the Plan and this trust, the employment of such administrative, legal, actuarial, and other expert assistance or services, auditing, bookkeeping and clerical services or assistance, the leasing or purchasing of such premises, materials, supplies and equipment as the Directors in their discretion find necessary or appropriate in the performance of their duties.

    (b)    To make appropriate provision for the bonding of themselves and all employees or agents who handle the assets of the Plan.

    (c)    To purchase and to pay or provide for the payment of the various premiums on the policy or policies of insurance secured or obtained hereunder when such premiums shall become due, to purchase and to pay or provide for the payment or subscriptions, charges deposits, or other payments under group contracts for life, accidental death and dismemberment, medical, hospitalization, weekly accident and sickness benefits, and surgical benefits, and other similar expenditures required under the Plan of Benefits to be established hereunder, for Employees, their families and dependents.

    (d)    To establish and accumulate as part of the Trust Fund a reserve or reserves which in the opinion of the Directors may be necessary or desirable to carry out the purposes hereof, but the Directors shall not hold or maintain funds in any such reserve or reserves which in the aggregate would exceed the reasonably estimated and authorized expenses, costs, premiums, subscriptions, charges and deposits contemplated under subsections (a) or (c) of this section for a period of operation of the Plan of Benefits herein contemplated in excess of two years. All accumulations or lump-sum payments made by the Employers to the Plan at or upon its effective date, as distinguished from current Contributions made thereafter, shall, except as to any part thereof required for immediate use, be

---

[29] Section AMENDED 6/12/68 (Amendment XIX)

Exhibit 2 - Page 223

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

immediately transferred to and held as a reserve or reserves as herein contemplated. Except with respect to such initial Contributions, no part of the income of the Plan, from any and all sources, in excess of twenty-five percent (25%) of such income for any calendar year shall be set aside or used for the establishment or maintenance of any reserve or reserves in the aggregate. In the event aggregate reserves equaling the requirements of two years' operation as above contemplated are accumulated, then and so long as such aggregate reserves at such maximum figure are maintained all income in excess of operational requirements and the maintenance of such maximum reserve or reserves shall be used for the purposes herein authorized.

[30](e) To invest, reinvest, purchase, acquire, manage, sell, exchange, lease, convey, or dispose of any property, whether real or personal at any time forming a part of the Trust Fund, and to execute and deliver any and all instruments of conveyance and transfer in connection therewith. In investing, reinvesting, purchasing, acquiring, exchanging, selling and managing property for the benefit of another, the Directors shall exercise the judgment and care, under the circumstances then prevailing, which men of prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of their capital. Within the limitations of the foregoing standard, and subject to any express provisions or limitations contained in any particular trust instrument, the Directors are authorized to acquire every kind of property, real, personal or mixed, and every kind of investment, specifically including, but not by way of limitation, corporate obligations of every kind, and stocks, preferred or common, which men of prudence, discretion and intelligence acquire for their own account. The Directors in their discretion, rather than retain the authority with respect to the management, acquisition, disposition, investing and reinvesting of all the assets of the Trust Fund, may delegate part or all of such authority with respect to the investment of principal or income to one or more investment managers selected by the Directors, in which event, such investment manager or managers shall be responsible for the management, acquisition, disposition, investing and reinvesting of such assets of the Plan as the Directors shall specify under such terms as specified by the Directors. To the extent the Directors so delegate their investment authority to one or more investment managers, the Directors shall not be responsible for the acts or omissions of such investment manager or managers or for individual investments selected and made by such investment manager or managers, subject, however, to the authority of the Directors to periodically review such investments for the purpose of determining whether such investment manager or managers are satisfactorily performing their authority within the scope of the delegation made by the Directors.

(f) To enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Trust

---

[30] Section AMENDED 2/20/76 (Amendment XXVII)
Deleted 6/6/77 (Amendment XXXI)

Rev. 1/10

Exhibit 2 - Page 224

Case 2:12-cv-06063-VBF-MAN   Document 60-2   Filed 04/18/14   Page 30 of 108   Page ID #:1564

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 25

Fund and to do all acts as they, in their discretion, may deem necessary or advisable.

(g) To compromise, settle, arbitrate and release claims or demands in favor of or against the Trust Fund or the Directors on such terms and conditions as the Directors may deem advisable.

(h) To keep property and securities registered in the name of the Directors or in the name of a nominee or nominees or in unregistered or bearer form.

(i) To keep property or securities in the custody of a bank or trust company.

(j) To hold part or all of the funds of the Trust Fund uninvested.

(k) To remove the underwriter of the Plan of Benefits or the broker or consultant and to do all acts in this regard as they, in their discretion, may deem necessary or advisable.

(l) To borrow money in such amounts and upon such terms and conditions as shall be deemed advisable by the Directors or proper to carry out the purposes of the Plan and to pledge any securities or other property for the repayment of any such loans.

(m) To pay out of the Plan all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Plan or any money, property or securities forming a part thereof.

(n) To do all acts, whether or not expressly authorized herein, which the Directors may deem necessary or proper for the protection of the property held hereunder; provided, however, no part of the Plan shall be used, applied, or paid directly or indirectly for or on account of any pension, annuity or similar arrangement for any person whatsoever.

(o) To accept or reject in their sole discretion the application for inclusion in the Plan by any Employer, Union or any specific group of employees.

[31](p) To establish any committees which in the Directors' discretion are desirable for the administration of this Plan. Each committee shall be composed of an equal number of Employer and Union Directors and shall be controlled by procedures decided by the Directors. Each committee shall perform the functions delegated to it by the Directors and shall have the authority, by resolution of that committee, to delegate such functions to a subcommittee of the Committee or the Plan Office. Unless the Directors determine otherwise, there shall be

---

[31] ADDED 7/19/91 (Amendment XLVI)
Section AMENDED 10/24/01 (Amendment LXVII)

Exhibit 2 - Page 225

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

six standing committees: Administrative, Benefits, Audit & Collections, Executive, Legal, and Finance.

### Section 3. Compensation

The Directors shall not receive compensation for the performance of their duties.

### [32]Section 4. Personal Liability and Indemnification

(a)     Except as provided in Section 5(g), neither the Directors nor any individual Director shall be personally answerable or personally liable for any liabilities or debts of the Plan contracted or incurred by them as such Directors, or for the non-fulfillment of contracts or any other liability of any other kind which the Directors or any of them may incur hereunder, including legal fees and other expenses of litigation incurred in defending against any asserted liability, debt or nonfulfillment of contract (collectively, "Liabilities"). Liabilities shall also include, without limitation, liabilities arising from a Director's error of judgment or any loss arising out of any act or omission by a Director or of any agent or attorney elected or appointed by or acting for the Directors in the execution of a Director's duties with respect to the Plan (whether performed at the request of the Directors or not). All such Liabilities shall be paid out of the Plan and the Plan is hereby charged with a first lien in favor of such Director or Directors, for his or their security and indemnification. Except as provided in Section 5(g), the Plan shall indemnify the Directors against any and all such Liabilities.

(b)     The Directors shall have the power to and may in their discretion pay legal fees and other expenses of litigation incurred by any Director in defending a civil or criminal action, suit or proceeding against him as such fees and expenses are incurred in advance of the final disposition of such action, suit or proceeding. The Directors may authorize payment of such fees if the Directors determine that such Director acted in good faith within what he reasonably believed to be the scope of his duties or authority, and upon receipt of an undertaking, by or on behalf of the Director, to repay all amounts so advanced unless it shall ultimately be determined that he is entitled to be indemnified by the Plan as authorized in this Section 5. The foregoing provisions of this Section 5 shall be applicable as well to any officer or employee of the Plan to whom the Directors in their discretion shall extend the benefits hereof.

(c)     The Directors shall purchase Errors and Omissions Insurance for the purpose of obtaining indemnity against liability of any kind arising out of acts or omissions of such Directors, including legal fees and other expenses of litigation which the Directors or any of them may incur; provided, however, that such Errors and Omissions Insurance shall not protect any Director from liability arising out of his own willful misconduct, bad faith or gross negligence; and provided further, however, that such Errors and Omissions Insurance shall permit recourse by the insurer against a Director or Directors in the case of a breach of fiduciary obligation by such Director or Directors. The Directors are authorized to cause the Trustee to pay the premiums for such Errors and Omissions Insurance from the assets of the Trust. Notwithstanding the previous two sentences, the Directors in their individual capacity are authorized, for the appropriate additional payment which is not paid from the assets of the Trust, to obtain a nonrecourse endorsement on such Errors and Omissions Insurance.

---

[32] Section AMENDED 11/3/72 (Amendment XXI)
Section AMENDED 8/28/02 (Amendment LXXI)

Exhibit 2 - Page 226

Case 2:12-cv-00093-VBF-MAN Document 60-2 Filed 04/16/14 Page 32 of 108 Page ID #:1566

Motion Picture Industry Health Plan                                                    Page 27
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

(d)     Notwithstanding anything otherwise contained in this agreement, with respect to any matter which calls for notice to the Directors hereunder, the Directors shall have no obligation with regard to any action or nonaction as to such matter until and unless such notice is received by them.

(e)     The Directors shall be fully protected in acting upon any instrument, certificate, or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and the accuracy of the statements therein contained.

(f)     The Directors may from time to time consult with the Plan's legal counsel and shall be fully protected in acting upon the advice of such counsel.

(g)     Nothing herein shall exempt any Director from liability arising out of his own willful misconduct, bad faith or gross negligence, nor entitle such Director to indemnification for any amounts paid or incurred as a result thereof. In addition, nothing herein shall be construed as relieving any fiduciary from responsibility or liability for any responsibility, obligation or duty under Part 4 of Subtitle B of Title I of the Employee Retirement Income Security Act of 1974. This Section shall be construed to mean that no Director or other fiduciary shall be liable or responsible for his own acts or omissions or for any act or omission of any other fiduciary, except as provided herein or as provided under applicable state or federal law.

### Section 5. Books of Account

The Directors shall keep true and accurate books of account and records of all their transactions, which shall be open to the inspection of each of the Directors at all times and which shall be audited annually or oftener by a certified public accountant selected by the Directors. Such audits shall be available at all times for inspection by the Unions and the Employers at the principal office of the Plan, and a statement of the results of such audit shall be available at such office to all interested parties.

### Section 6. Execution of Documents

The Directors may authorize an Employer Director and a Union Director or any joint group equally composed of Employer and Union Directors to jointly execute any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that such notice or instrument has been duly authorized and is binding on the Plan and the Directors.

### Section 7. Deposit and Withdrawal of Funds

All moneys received by the Directors hereunder shall be deposited by them in a general account in such bank or banks as the Directors may designate for that purpose. All withdrawals of moneys from such general account shall be made only by checks signed by such Directors as may be authorized in writing by the Directors to sign such checks, and no such checks shall be valid unless signed by at least two (2) Directors, one of whom shall be a Union Director and one an Employer Director.

The Employer Directors shall designate in writing the name or names of the particular Employer Directors who may sign checks in the above manner, and the Union Directors shall likewise designate in writing the name or names of the particular Union Directors who may sign checks in the above manner.

Exhibit 2 - Page 227

Case 2:12-cv-00693-VBF-MAN   Document 60-2   Filed 04/16/14   Page 33 of 108   Page ID
#:1567
Page 28
Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments 1 through CVI

The Directors may in their discretion establish such other special, payroll, or expense accounts with said bank or banks to facilitate the administration of the Plan, but such special accounts shall be limited to funds transferred from the general account in the manner above stated and shall be further limited so that at no time in such special accounts, in the aggregate, shall funds be carried in excess of the reasonable requirements for two (2) months' operation of the Plan. The Directors may in their discretion designate one or more employees of the Plan to sign checks upon such separate and specific bank account or accounts as the Directors may establish and limit for the purposes hereof.

### Section 8. Surety Bonds

The designated Directors and employees of the Directors who are empowered and authorized to sign checks as aforesaid shall each be bonded by a duly authorized surety company in such amounts as may be determined from time to time by the Directors. Each employee employed by the Directors who may be engaged in handling moneys of the Plan shall also be bonded by a duly authorized surety company in the same manner. The cost of the premiums on such bonds shall be paid out of the Plan.

### [33]"Section 9. Funding Policy

The Directors shall establish, at a meeting duly called for that purpose, a written funding policy consistent with the purposes of the Plan and the requirements of applicable law, which funding policy shall be reviewed at least annually by the Directors. When establishing and reviewing said funding policy, the Directors shall determine the short and long range financial needs of the Plan based upon relevant considerations such as the current cost of premiums, current administrative costs and known fixed items of cost based on past operational experience.

### [34]"Section 10. HIPAA Compliance

(a)  In accordance with the requirements of the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. Section 1320, et. seq. ("HIPAA"), regarding the disclosure of "protected health information," as defined under 45 CFR, Section 164.501 ("PHI"), the Plan and its Directors, shall take the actions set forth in this Section 10 to comply with HIPAA and provide a mechanism under which Plan employees and Directors may receive PHI in connection with Plan "participants" and "beneficiaries," as those terms are defined under 29 U.S.C. Sections 1002(7) and (8), respectively.

(b)  Unless otherwise permitted by law, and subject to the certification requirement set forth in sub-sections 10 (c) and (d) hereunder, the Plan may disclose PHI to the Directors provided that the Directors are only authorized to use or disclose such PHI for the following Plan administrative functions: quality assurance, claims processing, auditing, monitoring or any other Plan administrative function for which the use or disclosure of such PHI is necessary or useful, excluding functions performed by the Directors in connection with any other benefit or benefit plan of the Directors. The Directors shall only have access to and use of such PHI to the extent necessary or useful to perform such Plan administrative functions. In the event that any Director does not comply with the provisions of this sub-section 10(b), such matters shall be subject to appropriate sanction including, but not limited to, a Director's possible removal. Any complaint regarding an

---

[33]  ADDED 12/2/75 (Amendment XXX)
[34]  ADDED 3/5/03 (Amendment LXXV)

Exhibit 2 - Page 228

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 34 of 108 Page ID
#:1568
Motion Picture Industry Health Plan
Page 29
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

alleged violation of this sub-section 10(b) shall be brought before the Board of Directors' Administrative Committee, subject to review by the full Board of Directors.

(c) The Plan shall disclose PHI to the Directors only upon receipt of written certification from the Directors that this Agreement and Declaration of Trust has been amended to provide for the conditions set forth in sub-section 10(d) hereunder and that the Directors agree to comply with such conditions.

(d) The Directors agree, with respect to PHI disclosed to them by the Plan, that said Directors shall, other than as permitted or required by applicable law:

i. Not use or further disclose the PHI, other than as permitted or required by this Agreement and Declaration of Trust;

ii. Ensure that any agents of the Directors to whom the Directors provide PHI received from the Plan, agree to the same restrictions and conditions that apply to the Directors with respect to such PHI, as described in this Section 10;

iii. Not use or disclose PHI for employment-related actions and decisions or in connection with any other benefit or employee benefit Plan with which the Director is associated; provided, however, that PHI does not include employment records held by the Plan in its role as employer;

iv. Report to the Plan any use or disclosure of the information that is inconsistent with the authorized uses or disclosures as authorized under sub-section 10(b), hereinabove, of which the Directors become aware;

v. To the extent required under 45 CFR Section 164.524, make PHI available to the Plan to permit participants and beneficiaries to inspect and copy their PHI, as contained in the "designated records set," as defined in 45 CFR Section 164.501;

vi. To the extent required under 45 CFR Section 164.526, make PHI available to the Plan to permit participants and beneficiaries to amend or correct any PHI contained in the designated record set (as referenced in sub-section 10(d)(v) above) that is inaccurate or incomplete, and incorporate amendments provided by the Plan;

vii. To the extent required under 45 CFR Section 164.528, make PHI available to the Plan to provide a participant or beneficiary with an accounting of disclosures of their PHI;

viii. Make any practices, books, and records of the Directors relating to the use or disclosure of PHI received from the Plan available to the United States Secretary of Health and Human Services, for purposes of determining the Plan's compliance with HIPAA;

ix. If feasible, return or destroy all PHI received from the Plan that the Directors still maintain in any form and retain no copies of such information when no longer needed for the purpose for which disclosure was made, except that if such destruction is not feasible, limit further uses and disclosures to those purposes that make the return or destruction of the information non-feasible;

x. Ensure that adequate protections are taken, in accordance with sub-section 10(b) above.

Exhibit 2 - Page 229

Case 2:12-cv-06093-VBF-MAN Document 60-2 Filed 04/10/14 Page 35 of 108 Page ID #:1569

Page 30

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

[35](e)    In accordance with 45 CFR, Section 164.314, the Directors or their delegate shall:

    i.    Implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the electronic PHI that they create, receive, maintain, or transmit on behalf of the Plan;

    ii.    Ensure that the adequate separation between the Plan and the Directors required by 45 CFR, Section 164.504(f)(2)(iii), is supported by reasonable and appropriate security measures;

    iii.    Ensure that any agent, including a subcontractor, to whom they provide this information agrees to implement reasonable and appropriate security measures to protect the information; and

    iv.    Report to the Plan any security incident of which they become aware. For purposes of this provision, the term 'security incident' means the attempted or successful unauthorized access, use, disclosure, modification, or destruction of information or interference with system operations in an information system.

///

---

[35] ADDED 2/23/05 (Amendment LXXXVII)

Exhibit 2 - Page 230

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 31

## ARTICLE V
## CONTRIBUTIONS TO THE PLAN

### [36]Section 1.  Rate and Period of Contributions

In order to effectuate the purposes hereof, each Employer shall contribute to the Plan a sum measured by the schedules attached hereto, marked "Exhibit A," and made a part hereof, with respect to each Employee to which the appropriate subdivision of said Exhibit A pertains.  The Directors shall have the authority to amend the composite rates set forth in Exhibit A by resolution from time to time as they deem necessary, in order to reflect changes in the contributions provided for in the respective collective bargaining agreements between the Employers and the Unions and Guilds, which are parties to the Trust.

### Section 2.  Period of Contributions

Such Contributions shall continue as in Section 1 of this Article provided to the date specified in the appropriate subsection of said Exhibit A unless the present Collective Bargaining Agreement between the particular Employer and Union affected is extended under its terms or by operation of law, in which case the termination date so specified in Exhibit A with respect to such Employer and the Employees affected by such Agreement shall be correspondingly extended, or such termination date is hereafter extended by the particular Employer and Union affected, in which case the period of contribution of the Employer so extending such date shall be deemed to be extended with respect to the Employees affected by such extension Agreement, but no Employer or Union not a party to such an Agreement shall be in any way affected thereby.  The parties, or any of them, to any such above described extension shall give written notice to the Directors of such extension.  No such extension shall have any force or effect unless such notice be given within six months after the termination date so extended.

### Section 3.  Effective Date of Contributions

Each Employer shall pay into the Trust Fund upon the Effective date of this Trust Agreement, or within five (5) days thereafter, a sum equal to the accumulated Contributions at the rates herein established from October 25, 1951, or from such other date as may be provided for the purpose in the Collective Bargaining Agreement applicable to such Employer, to the Effective Date of this Trust.  From and after the Effective Date of this Trust Agreement Contributions at the said rates and for the period or periods above specified shall be paid into the Trust Fund at the times and in the manner hereinafter specified.

### [37]Section 4.  Mode of Payment

All Contributions shall be payable to the Plan and shall be payable weekly by each Employer. Each contribution shall be deemed due and owing at the end of such period, the first of which shall commence with the Effective Date of this Trust Agreement, and shall be paid within ten (10) working days after the end of such period.  The Directors may, by resolution duly adopted, provide for payment with respect to any Employer or Employers upon a different periodic basis satisfactory to the Employer or Employers concerned.

---

[36] Section AMENDED 8/12/80 - Effective 8/1/79  (Amendment XXXIV)

[37] Section AMENDED 12/17/2009, effective 1/1/20 (Amendment CVI)

Exhibit 2 - Page 231

Case 2:12-cv-00693-VBF-MAN Document 60-2 Filed 04/16/14 Page 37 of 108 Page ID #:1571

Page 32

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

## [38]Section 5. Default in Payment

The failure of an Employer to pay the contributions required hereunder at the times and in the manner herein specified shall constitute a violation of such Employer's obligations hereunder. All contributions are due on a weekly basis, and shall be deemed due and owing as of the end of each payroll week. For the purposes of this provision, the close of each payroll week is considered to be midnight every Saturday. The failure of an Employer to pay the contributions as required hereunder within ten (10) working days after the end of the payroll week shall constitute a violation of such Employer's obligation under the Declaration of Trust, and shall subject the Employer to such remedies as are herein specified, in addition to remedies which the Directors may determine and establish by resolution. Non-payment by an Employer of any contributions as herein provided shall not relieve any other Employer of its obligation to make payment of its required contributions.

The provisions of this Section and Sections 5a, 5b, 5c, 5d and 5e shall be equally applicable to contributions required to be made to the Plan under Article XIX (Post '60 Theatrical Motion Pictures) and XXVIII (Supplemental Markets) of the I.A.T.S.E. Basic Agreement and to contributions required under analogous provisions of any other collective bargaining agreement between any Employer party and any Union party to this Plan, except that interest on delinquent contributions due under said provisions shall be at the rate of one per cent (1%) per month, commencing ten (10) business days after the Plan gives written notice of the delinquency to the Employer and continuing to the date when payment is made.

## [39]Section 5a. Interest

In the event of a default in payment of the Employer's contributions, interest shall be charged on the amount of such contributions from the date when payment was due to the date when payment was made; provided, however, that with respect to Post '60s and Supplemental Markets contributions, interest shall begin to run ten (10) business days after the Plan gives written notice of the delinquency to the Employer. Except as otherwise expressly provided herein, the legal rate of interest so charged shall be determined from time to time by resolution of the Directors. Any interest payments required under this Section shall be in addition to any liquidated damages assessed pursuant to other parts of this Article.

## [40]Section 5b. Liquidated Damages

The parties recognize and acknowledge that the regular and prompt payment of Employer contributions to the Plan is essential to the maintenance in effect of the Plan of Benefits, and it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Plan and Plan of Benefits which would result from the failure of an individual Employer to pay such contributions in full within the time provided above. In accordance with Section 502(g)(2) of ERISA, the amount of damage to the Plan and Plan of Benefits shall be presumed to be the greater of: 1) twenty percent (20%) of the amount of contributions due; or 2) the amount of interest due under the above provisions of this Article on the date when payment is made. Any such liquidated damages which may become due under this Section shall be in addition to any interest due under this Article and shall also be in addition to said

---

[38] Section AMENDED 8/26/75 (Amendment XXVI)
   Section AMENDED 8/30/93 (Amendment L)
   Section AMENDED 12/17/09, effective 1/1/10 (Amendment CVI)

[39] Section AMENDED 8/26/75 (Amendment XXVI)

[40] Section AMENDED 8/26/75 (Amendment XXVI)
   Section AMENDED 8/30/93 (Amendment L)

Exhibit 2 - Page 232

Case 2:12-cv-06093-VBF-MAN   Document 66-2   Filed 04/18/14   Page 38 of 108   Page ID
#:1572

Motion Picture Industry Health Plan                                                    Page 33
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

delinquent contribution or contributions. Said liquidated damages shall become due and owing five (5) business days after receipt of written notice of delinquency from the Plan. For purposes of this Section, notice of delinquency shall be deemed received by the Employer three (3) days after the notice is mailed to the last known address of the Employer. It shall be the responsibility of the Employer to notify the Plan of any change of address. Notwithstanding the foregoing, with respect to Supplemental market and Post '60s contributions only, liquidated damages shall become due and owing ten (10) business days after receipt of written notice from the Plan of the Employer's delinquency and no liquidated damages shall be charged if the delinquent contributions and interest are paid prior to the commencement of an action in court to collect such contributions. The Board of Directors may waive payment of said liquidated damages or any portion thereof in any particular case upon good cause satisfactory to the Directors being established.

## "Section 5c.  Action for Enforcement

The Directors may take any action necessary to enforce the provisions of this Agreement, including but not limited to the right to sue any Employer in any court of competent jurisdiction for the payment of any monies determined by the Directors to be owed to the Plan, in which event the Employer shall be liable to the Plan for all expenses of enforcement and/or collection, including but not limited to, all reasonable accountant's fees, auditor's fees, attorney's fees and costs and collection agency fees incurred in connection therewith. In any such action or proceeding, the Employer, in addition to any other sums claimed by the Directors to be owed shall likewise be liable for interest and liquidated damages as provided in this Agreement.

## "Section 5d.  Termination of Party Status

(1) In addition to all rights of enforcement anywhere in this Declaration of Trust provided, or given by law, in the event of a violation of an Employer's obligation under this Declaration of Trust as stated above which continues for twenty-one (21) days after the date of mailing of written notice of such violation and intent to terminate, the Directors may terminate the status of such Employer as a party. Upon such termination such Employer shall forthwith cease to be an Employer under the provisions of this Trust or a party hereto in any way thereafter. No Employer as defined in Section 1 of Article I hereof whose status as a party hereto has been so terminated, shall be eligible to become again a party hereto except upon such terms as the Directors may require, including but not limited, to payment of all past obligations hereunder, and upon such terms as to security for future obligations hereunder, including but not limited to a bond or bonds for performance of such future obligations, as the Directors may require. Nothing herein shall be construed as requiring the Directors to agree that a party having been terminated shall become an Employer again. Any such termination of the status of an Employer as a party hereto shall not relieve such Employer from liability for any losses to the Plan, all costs and expenses incurred in the collection of same, interest and liquidated damages as herein provided.

---

[41] Section AMENDED 8/26/75 (Amendment XXVI)
   Section AMENDED 11/3/04 (Amendment LXXXII)
[42] Section AMENDED 8/26/75 (Amendment XXVI)
   Section AMENDED 12/20/04 (Amendment LXXXVI), effective 12/20/04.  Art. V, Section 5(d) was amended in its entirety.

Exhibit 2 - Page 233

Case 2:12-cv-00893-VBF-MAN Document 60-2 Filed 04/18/14 Page 39 of 108 Page ID
Page 34
#:1573
Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

(2) In addition to all rights of enforcement anywhere in this Plan, or given by law, in the event the Directors determine that an Employer has engaged in intentional to grossly negligent practices which are inconsistent with or detrimental to the purposes for which the Plan is established and maintained, including but not limited to the reporting of Employees whose hours cannot be substantiated, the Directors, in the sole and exclusive exercise of their discretion, may terminate the status of such Employer as a party upon written notice to Employer. Said termination shall be effective 21 days after the date of mailing of the written notice of the Directors' determination. No Employer as defined in Section 12 of Article I hereof whose status as a party hereto has been so terminated, shall be eligible to become again a party hereto except upon such terms as the Directors may require, including but not limited to, payment of all past obligations hereunder. Nothing herein shall be construed as requiring the Directors to agree that a party having been terminated shall become an Employer again. Any termination of the status of an Employer as a party hereto shall not relieve such Employer from liability for any loss to the Plan incurred as a result of the Employer's conduct, as well as all costs and expenses, including attorneys' fees incurred in the collection of same.

### [43]Section 5e. Reporting Requirements

Any additional expenses incurred by the Plan due to late receipt of any required data or information required of the Employer hereunder shall be reimbursed by the Employer or Employers on a pro-rata basis. Any such Employer who has not so reimbursed the Plan within 21 days after the date of mailing of a written demand for such reimbursement shall be subject to all of the enforcement provisions of Article V, Section 5c.

### [44]Section 5f. Post '60s and Supplemental Markets Contributions

Notwithstanding any other provisions of this Section, if it is determined that delinquent contributions required to be made to the Plan under Article XIX (Post '60s Theatrical Motion Pictures) and Article XXVIII (Supplemental Markets) of the IATSE Basic Agreement or contributions required under analogous provisions of any other collective bargaining agreement between an Employer and Union to this Plan are due pursuant to a special audit conducted after submission of a Late Application to Prorate, interest shall be charged on the amount of such contributions from the date when payment was due to the date when payment is made.

### [45]Section 6. Report on Contributions

(a) The Employers shall make such reports and statements to the Directors with respect to the amount and calculation of any and all contributions as the Directors may deem necessary or desirable. The Directors may, at reasonable times and during normal business hours of any Employer, audit or cause the audit or an inspection of the records of any Employer which may be pertinent in connection with the said Contributions and/or reports and insofar as same may be

---

[43] Section AMENDED 12/4/84 – effective 1/25/85 (Amendment XXXVIII)
Section AMENDED 2/24/99 – 4/1/99 (Amendment LXI)
[44] Section AMENDED 12/17/98, retroactively effective 1/1/98 (Amendment LXII)
[45] Section AMENDED 12/4/84 - effective 1/25/85 (Amendment XXXVIII)
Section AMENDED 2/24/99 - effective 4/1/99 (Amendment LXI)
Section AMENDED 6/26/02 – effective 6/26/02 (Amendment LXIX)
Section AMENDED in its entirety, 11/3/04 (Amendment LXXXII)

Exhibit 2 - Page 234

Case 2:12-cv-00093-VBF-MAN   Document 60-2   Filed 04/16/14   Page 40 of 108   Page ID #:1574

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 35

necessary to accomplish the purposes of this Plan. Should any such audit or inspection disclose a delinquency, underpayment, or other erroneous reporting, the cost of the audit or inspection shall be borne by the Employer.

(b) In the event the Employer fails to make records available for audit or an inspection, the Directors may take any action necessary, including the right to sue the Employer in any court of competent jurisdiction, to compel the production of such records in which event the Employer shall be liable for all expenses of enforcement, including but not limited to, all reasonable accountants' fees, auditors' fees, attorneys' fees and costs incurred in connection therewith, in addition to any delinquent contributions, liquidated damages, interest, attorneys' fees and costs, whether or not the audit or inspection identifies delinquent contributions. The Directors may waive any or all expenses of enforcement upon good cause satisfactory to the Directors being established.

(c) If the Directors determine that, as a result of hours improperly or erroneously reported by an Employer on behalf of any individual, or that for any other reason, such individual obtains benefits to which he or she would not otherwise be entitled, the Directors may take any action necessary to recover the amount of such benefits, including the right to sue any Employer and/or individual in any court of competent jurisdiction, in which event the Employer and/or individual shall be liable to the Plan for all expenses of collection thereof including all costs incurred in connection therewith, including but not limited to, all reasonable auditor's fees and attorney's fees, incurred in connection therewith.

In any such action, the Directors may determine the Employer and individual jointly and severally liable for the amount of overpaid benefits, whereupon they shall be jointly and severally liable for interest to be calculated from the date such overpayment was made through such later date upon which actual payment occurs. The rate of interest so charged shall be determined from time to time by resolution of the Directors.

In exercising their discretion to recover claims for benefit overpayments and related damages, the Directors may waive the payment of the claim or any portion thereof in any particular case upon good cause satisfactory to the Directors being established.

(d) In the event that the records of the Employer or the Plan indicate that any work performed by an Employee (whether or not for that Employer) in an audit period has been covered by a Collective Bargaining Agreement, the Directors may determine in their sole discretion for any Employer the amount of work performed for that Employer by the Employee and that some or all of the work performed by that Employee in that audit period is covered by a Collective Bargaining Agreement unless the Employer produces records adequately documenting to the satisfaction of the Directors (in their sole discretion) the extent of covered services performed. In the absence of adequately substantiating records of the Employer, the Directors may, based on other evidence or the facts of the particular case, also determine in their sole discretion that no contributions are due.

(e) In the event that an Employer shall erroneously make any contributions based upon a mistake of fact, said Contributions shall not be recoverable by the Employer unless the Employer notifies the Administrative Director for the Plan in writing of the mistaken payment within two (2) years of the date on which said mistaken payment was received by the Plan. This two-year limitation shall not be applicable to contributions made under the Supplemental Markets or Post '60s provisions of any collective bargaining agreement between the Employer and any Union party herein; said contributions may be returned within the period of six (6) months, which begins the

Rev. 1/10

Exhibit 2 - Page 235

Case 2:12-cv-00093-VBF-MAN   Document 66-2   Filed 04/18/14   Page 41 of 108   Page ID
#:1575
Page 36

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

date the controversy about the interpretation of the Supplemental Markets or Post '60s provisions of the Collective Bargaining Agreement is finally resolved by negotiated settlement, arbitration or litigation, whichever is applicable.

## Section 7. Individual Contributions

The foregoing sections of this Article V shall be applicable to Employer Contributions only. Notwithstanding any other provisions hereof the Directors shall have full power and authority to accept direct Contributions from individuals who would otherwise qualify as Employees hereunder whenever any such individual would be entitled to the benefits of this trust and Plan of Benefits under the provisions of the conditional or restrictive acceptance of this trust and Plan of Benefits by Loew's Incorporated, as an Employer party. The Directors shall likewise have full power and authority in their discretion to accept Contributions from individuals in such cases and on such conditions as the Directors may determine whereby such individuals, being and remaining available in the labor pool of the motion picture industry in the Los Angeles area, may be provided with such Benefits as the Directors may determine, provided that in any case whatsoever when Contributions are accepted from others than Employers hereunder no determination or action of the Directors shall impose any additional cost or obligation whatever upon any Employer without the express written consent and agreement of such Employer at the time, and provided any such Contributions from other than Employers shall be in such manner and amounts as in the discretion of the Directors is required to defray the administrative cost of handling such Contributions by other than the Employers and the providing of Benefits by reason thereof.

## [46]Section 8. New Employers

An Employer who becomes a party hereto after the effective date of this Trust shall make such Contributions at such rates and for such periods as may be required by and under Exhibit A attached hereto, as it may be amended from time to time by the Directors. Nothing in the provisions of Section 3 of this Article shall be construed as requiring an Employer, as contemplated under this Section 8, to make any retroactive Contributions other than as may be specifically contained in any collective bargaining agreement relating to such Employer. Upon the execution of a collective bargaining agreement requiring Contributions to this Plan whereby the Employer becomes a party hereto, either such Employer or any Union party to such collective bargaining agreement shall file an executed copy or a true copy of such Agreement with the Directors, and the Directors shall be entitled to treat the copy so filed as determining the obligation of the Employer thereunder to comply with this Trust.

## Section 9. Advancement of Premium

Upon the failure of any Employer to make the required Contributions when due hereunder, the Directors shall have the right and power to pay or provide for payment from the Plan of the premiums necessary to provide the Benefits hereunder to an eligible or the eligible Employees of such delinquent Employer, but the Directors shall not be obligated, either to said Employees or said Employer, to make or provide such payments, and Directors shall incur no liability whatsoever, either individually or collectively, for their failure or refusal to do so. In the event such payments are made by the Directors from the Plan on behalf of a delinquent Employer, the Plan shall be reimbursed by said Employer for such payments, and the fact that the Directors may have made such payments shall not alter or diminish the obligations of such Employer or the rights of the Directors under this Article.

---

[46] Section AMENDED 8/12/80 - Effective 8/1/79 (Amendment XXXIV)

Exhibit 2 - Page 236

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 42 of 108 Page ID #:1576

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 37

## [47] Section 10. Contributions For Designated Groups

An Employer which designates (and subject to the approval of the Directors) pursuant to the provisions of Section 2 of Article I hereof, a group of its employees who are not included within any unit covered by any collective bargaining agreement to which the Employer is a party, to become eligible Employees hereunder shall, at such times and for such periods as the Directors may require, make contributions to this Plan with respect to each such designated Employee in the amount set forth in the Schedules attached hereto and marked Exhibit "A," it being agreed that the amount so specified in Exhibit "A" as applicable to such designated Employees, shall be subject to change from time to time by appropriate action of the Directors and shall represent the same sum as the contributions to be made in connection with other Employees, as specified in said Exhibit "A." The contributions for each of such designated persons shall commence upon such date as the Directors shall determine, after or at the time of acceptance by the Directors of designation and the group so designated, as provided in Section 2 of Article I hereof, which date shall not be retroactive without the consent of the designating Employer and shall not be later than the next succeeding date of commencement of the qualification period for eligibility to receive benefits under this Plan. The designation contemplated hereunder may be terminated by the Plan after notice, and by the Employer after notice and acceptance of such termination by the Plan. Such termination shall become effective only at the end of the qualification period during which the Directors give notice of termination or accept the Employer's notice to terminate, and liability for payment of contributions shall continue until the end of such qualification period.

## [48] Section 11. Agents for Transmittal of Contributions

Nothing in this Article V shall prohibit the appointment or removal by the Directors of an Agent for the collection from the Employers of contributions on behalf of specific Employee classifications when in the judgment of the Directors it is in the best interest of the Plan, provided that such collection by such Agent is authorized in the appropriate Collective Bargaining Agreements and provided further that such Agent shall be bonded as provided by Section 8 of Article IV and in conformity with the requirements of any applicable state or federal law.

///

---

[47] ADDED 3/26/61 (Amendment VI)
Section AMENDED 6/12/68 (Amendment XIX)
Section AMENDED 2/27/91 (Amendment XLVII)

[48] ADDED 12/13/66 (Amendment XVI)

Exhibit 2 - Page 237

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI

*(This page left intentionally blank)*

Motion Picture Industry Health Plan                                                    Page 39
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

## ARTICLE VI
## PLAN OF BENEFITS

### [49]Section 1.  Benefits

The Directors shall have full authority to determine all questions of nature, amount, and duration of Benefits to be provided based on what such Directors shall estimate the Plan can provide without undue depletion or excessive accumulation; such Benefits may include but shall be limited to life, accidental death and dismemberment, medical, hospital, weekly accident and sickness benefits and surgical plans; provided, however that no pension or annuity benefits may be provided for or paid under the Agreement and Declaration of Trust.

### [50]Section 2.  Method of Providing Payments

The benefits shall be provided and maintained through policies or contracts procured by the Directors from duly licensed insurance carriers or other groups or agencies as may be determined by the Directors.  Benefits may also be provided directly by the Plan.

### Section 3.  Written Plan of Benefits

After determination of the detailed basis upon which payments of Benefits is to be made pursuant to this agreement, the same shall be specified in writing by appropriate resolution of the Directors, subject, however, to such change or modification by the Directors from time to time as they in their discretion may determine.  All such changes or modifications shall be similarly specified in writing by appropriate resolution of the Directors.  Copies of such detailed basis or plan of benefits so determined shall be furnished by the Directors to the parties hereto.

### Section 4.  Commencement Date of Benefits Under Plan

Benefits for Employees becoming eligible as hereinafter provided shall commence as soon as practicable after the approval of this Trust Agreement and Plan by the appropriate governmental authorities as hereinafter specified, and the insurance policies or contracts contemplated by this agreement have been issued and are in effect.

### Section 5. Initial Eligibility Requirements

Employees who meet the requirements stated in this section shall be deemed qualified for Benefits at the commencement date provided in the preceding section as follows:

    (a)    The Employee shall have worked for one (1) or more of the Employers party hereto for

---

[49]  Section AMENDED 6/6/77 (Amendment XXXI)
[50]  Section AMENDED 6/6/77 (Amendment XXXI)

Exhibit 2 - Page 239

Page 40                                                                          Motion Picture Industry Health Plan
                                                                                 Agreement and Declaration of Trust
                                                                                 (Inclusive of Amendments 1 through CVI)

at least 165 straight-time hours during the period from October 25, 1951, to and including
March 22, 1952. The words "worked * * * straight-time hours" shall mean the number of straight-time
hours worked or for which the Employer was required to pay such Employee as defined in Exhibit A
hereto attached.

    (b)    An Employee who qualifies and is eligible as above provided shall remain eligible under
this Trust Agreement and Plan until December 31, 1952, provided that during such period
of eligibility such Employee remains available in the labor pool of the motion picture
industry in the Los Angeles area for any one or more of the types of work covered by the
collective bargaining units more particularly described in the respective contracts
between the Employers and the Unions. The Directors shall by resolution, establish
administrative rules for the determination of the availability of persons in the labor pool
of the motion picture industry in the Los Angeles area, and, when determined, copies of
such rules shall be furnished by the Directors to the parties hereto.

### [51]Section 6. Eligibility of Employees Hereafter Qualified

Employees shall throughout the life of this Trust Agreement and Plan, become and remain
eligible upon such conditions and for such periods as the Directors shall determine and establish by
resolution. The Directors may by resolution, change or amend, or otherwise modify, in whole or in part,
such eligibility resolution or resolutions.

### [52]Section 7. Other Eligibles

Employees of the Trust Fund, employees of the Motion Picture Industry Pension Plan, employees
of the participating Unions and employees of the Associations representing participating Employers who
meet the same standards of number of hours worked and for whom Contributions to the Plan are similarly
made, shall be and become eligible for the same periods and upon the same conditions as other
Employees. Employees designated to become eligible in accordance with the provisions of Section 2 of
Article I and Section 10 of Article V hereof, shall, subject to the express provisions and limitations of said
sections, be and become eligible for the same periods and upon the same conditions as other Employees.

### Section 8. Approval Required Before Payment of Benefits

    (a)    Bureau of Internal Revenue. No Benefits will be put into effect until the
Contributions or payments hereunder by the Employers shall have been approved
by the U.S. Treasury Department, Bureau of Internal Revenue, as proper
deductions by the Employers as business expenses for income tax purposes. In
the event such approval is not obtained, the Union and the Employers agree to
make such amendments and revisions of this Agreement and Declaration of Trust
as are necessary to obtain such approval. For the purpose of this Section, the
Employers agree to have one Employer promptly file a request for such approval
and request the Bureau to rule, in addition, that all other Employers contributing
to this Plan may be deemed covered by the same ruling. Upon receipt of such

---

[51]  Section AMENDED 9/26/74 (Amendment XXV)
[52]  Section AMENDED 3/9/55 (Amendment I)
    Section AMENDED 12/1/59 (Amendment IV)
    Section AMENDED 3/26/61 (Amendment VI)

Exhibit 2 - Page 240

Motion Picture Industry Health Plan                                        Page 41
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

ruling from the Bureau, the Employer shall promptly notify the Directors and the
Directors shall consider same as compliance with this Section.

(b)    <u>Wage Stabilization Board</u>. If current Wage Stabilization Board regulations
require approval of the Plan of Benefits decided upon by the Directors, such
Benefits shall not be put into effect until such approval is obtained.

### [53]Section 9. Claims Review Procedure

(a)    No participant, active or retired, dependent or beneficiary of either, or other
person shall have any right or claim to benefits under the Plan, other than as
specified in such eligibility resolutions as the Directors shall determine and
establish. If any claimant shall have a dispute as to eligibility, type, amount, or
duration of such benefits, the dispute shall be resolved by the Claims Review
Committee of the Board of Directors as hereinafter set forth. Said Committee
shall consist of the members of the Benefits Committee as appointed by the
Chairman. Notwithstanding the foregoing, in the event that the Plan offers HMO
or similar benefit options to participants, including benefits that require pre-
authorization, it may delegate to an entity administering such benefits the
authority to provide its own claims review procedure and/or interpret the terms of
said benefits.

(b)    Any person whose application for benefits under the Plan has been denied in
whole or in part shall be notified of such decision in writing. Such notice shall
set forth the specific reason or reasons for the denial, contain specific references
to pertinent Plan provisions upon which the denial is based, state any internal
rule, guideline, protocol or similar criterion which has been relied on (or state
that such will be supplied, at no cost, upon request), describe any additional
material or information necessary for the claimant to perfect the claim and
explain why such material or information is necessary, and explain the Plan's
claim review procedure. If the determination was based on lack of medical
necessity, experimental treatment or similar exclusion, an explanation of the
clinical or scientific judgment shall be provided or it will be stated that such will
be provided, at no cost, upon request. If the claimant desires further
consideration of the decision denying the claim, he may request a review upon
written application to the Plan. In connection with such request for review, the
claimant shall upon request, be entitled to review and receive copies of pertinent
documents, at no cost. The Claimant may also submit additional documentation,
issues and comments in writing to the Plan Administrative Director which shall
be considered by the Board of Directors in arriving at a decision on review. Such
request for review shall state in clear and concise terms the reason or reasons for
disagreement with the decision, and shall be filed with the Plan Administrative
Director's office within one hundred eighty (180) days after receipt by the
claimant of the decision denying the claim. The failure to file a request for

---

[53]  ADDED 1/22/76 (Amendment XXVIII)
    Section AMENDED 3/14/88 (Amendment XLIII)
    Section AMENDED 12/18/02 (Amendment LXXIII), effective 1/1/03.

Rev. 1/10

Exhibit 2 - Page 241

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/16/14 Page 47 of 108 Page ID #:1581

Page 42

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

review within such one hundred and eighty (180) day period shall constitute a waiver of the claimant's right to review of the decision and such decision shall be final and binding upon all parties thereto. Such failure shall not, however, preclude the applicant or claimant from establishing entitlement at a later date based on additional information and evidence which was not available at the time of the decision on the claim for benefits.

(c)     Upon receipt of a request for review, the Claims Review Committee shall proceed to review the administrative file, including the request for review and its contents. A decision by the Claims Review Committee shall be made By the next meeting of the Committee following the request for review, however, if the request is received within thirty (30) days of such meeting, the decision may be rendered by the next meeting. In the event of special circumstances, the appeal may be decided no later than the third meeting following the request for review. If such special circumstances exist, the person requesting the review will be notified in writing prior to the special circumstances extension and informed of the reasons for the extension and the date on which the appeal will be decided. The claimant shall be advised of the decision of the Claims Review Committee in writing, no later than five (5) days after the decision is made which decision shall include specific reasons for the decision and references to pertinent Plan provisions upon which the decision is based. If an adverse determination is based on lack of medical necessity, experimental treatment or similar exclusion, an explanation of the clinical or scientific judgment will be provided or, in the alternative, it shall be stated that such explanation will be furnished, upon request, at no cost. If an internal Plan rule, guideline, protocol or similar criterion is being relied on, such will be identified and either provided at that time or the claimant will be informed that it will be made available, at no cost, upon request.

(d)     The Claims Review Committee shall make an independent determination of the appeal, in the sense that it will not defer to the decision of the initial decision maker. If the appeal is based on a medical judgment, including any determination whether a medical treatment is medically necessary, experimental, or of similar nature, the review conducted by the Committee will utilize a health care professional knowledgeable in the pertinent area who was not consulted in connection with the initial benefit determination, and who is not a subordinate of any such person. The Plan shall, upon request from the person whose claim was denied, identify any medical or vocational experts whose advice was obtained in connection with an adverse benefit determination.

(e)     The decision of the Claims Review Committee shall be final and binding upon all parties, including the claimant; provided, however, that any notification of determination on appeal shall state that the claimant ha the right to bring a civil action under Section 502(a) of ERISA and any person claiming under the claimant. The provisions of this section shall apply to and include any and every claim to benefits under the Plan and any claim or right asserted against the Plan, regardless of the basis asserted for the claim and regardless of when the act or omission upon which the claim is based occurred, subject to Section 9(a) above.

Rev. 1/10

Exhibit 2 - Page 242

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 48 of 108 Page ID
#:1582

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 43

(f)     Nothing contained in this Article shall be interpreted as a limitation on the right of the Plan and any claimant to voluntarily agree in writing to extensions of time beyond those time limitations provided for in this Article. A more detailed claims processing and claims review procedure, consistent with this Article, may be provided to plan participants, in accordance with ERISA requirements.

## [54]Section 10. Authority of Directors to Interpret Plan of Benefits

The Directors and such Committee or Committees of the Board of Directors as may be established from time to time to act as the Claims Review Committee established under Article VI, Section 9, above, shall have the power to construe and interpret the provisions of the plan of benefits, including any summary plan description or other writing disseminated to Employees, beneficiaries and their dependents, and any and all terms used therein, and any construction or interpretation adopted by the Directors or such Committee in good faith shall be final and binding upon the Unions, Employers, and the Employees, their dependents and beneficiaries.

## [55]Section 11. Limitation of Legal Actions

Notwithstanding any other provision of this Plan, no action may be commenced with respect to or arising out of any claim for benefits against the Plan (or the Directors or any of its or their agents) more than one hundred eighty (180) days after the Participant, Beneficiary, provider or other individual, as the case may be ("Claimant") is first given a written notice of the denial of his or her appeal by the Claims Review Committee ("Committee") of the Board of Directors. Unless the Committee specifically determines otherwise, this period shall not be extended even if the Committee again considers the matter after the initial denial. This limitations period shall apply to all actions arising out of or relating to a claim of benefits including, but not limited to, any action under Section 502(a)(1)(B) of ERISA and any action under Section 501(a)(3) of ERISA to the extent said claim relates to the provision of benefits or rights under the Plan.

///

---

[54]   ADDED 5/3/89 (Amendment XLIV)

[55]   ADDED 8/25/99 (effective for appeals first denied on or after such date) (Amendment LXII)

Exhibit 2 - Page 243

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

*(This page left intentionally blank)*

Rev. 1/10

Exhibit 2 - Page 244

Motion Picture Industry Health Plan                                           Page 45
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

## ARTICLE VII
## MEETINGS AND DECISIONS OF DIRECTORS

### Section 1. Officers and Terms

The Directors shall meet as promptly as possible after the complete execution of this Agreement
and Declaration of Trust and elect a chairman, vice-chairman, a secretary and a vice-secretary from
among the Directors. The chairman and vice-chairman shall be selected from among the Employer
Directors, and the secretary and vice-secretary shall be selected from among the Union Directors in the
even-numbered years. In odd-numbered years the chairman and vice-chairman shall be selected from
among the Union Directors and the secretary and vice-secretary shall be selected from among the
Employer Directors. The term of such officers shall commence on the January 1st next following their
election and continue to the next succeeding December 31st or until his or their successors have been
elected, provided that the term of the initial group of officers hereunder shall commence immediately
upon election, and their term of office shall be for the balance of the calendar year or until his or their
successors have been elected.

### [55]Section 2. Meeting of Directors

The Directors shall meet annually in December of each year for the purpose of electing officers
for the following calendar year. All meetings of the Directors shall be held at such place or places, within
the County of Los Angeles, and at such hours as may be established by resolution of the Directors.
Regular or periodic meetings may be held at such time or times as may be established by resolution of the
Directors. Special meetings at other than such established times may be held at such other time or times.
A special meeting may be called at any time by the chairman or secretary upon five (5) days' written
notice to the Directors and may be held at any time without such notice if all Directors consent thereto in
writing, which consent may be given either before, at, or after the time of such meeting. At least five
days' written notice to such Directors shall be given by the secretary of each annual, regular, or special
meeting of Directors, which notice shall specify the hour and place of such meeting and shall state the
nature of any business which is to be considered at such meeting. No business other than that stated in
the notice shall be acted upon by the Directors at any meeting, whether annual, regular, or special.

### Section 3. Action by the Directors Without Meeting

Action by the Directors may also be taken by them without a meeting provided that such action is
evidenced by an instrument in writing to which all of the Directors shall consent by unanimous written
concurrence.

### Section 4. Quorum

In all meetings of the Directors ten (10) Directors shall constitute a quorum for the transaction of
business providing there are at least five (5) Employer Directors and five (5) Union Directors present and
acting at such meeting. In the absence of a quorum at a meeting the Directors shall have no power to
transact any business but must adjourn. If there be no quorum through the absence of the minimum
number of either Employer Directors or Union Directors, but the required minimum of one such group is
present, then the group so present may require any proposal or proposals properly on the agenda, in

---

[55] Section AMENDED (7/19/91) (Amendment XLVI)

Exhibit 2 - Page 245

Case 2:12-cv-00893-VBF-MAN Document 60-2 Filed 04/18/14 Page 51 of 108 Page ID
#:1585

Page 46

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

accordance with the provision of Section 2 of this Article, to be specifically placed upon the agenda for the next meeting of the Directors and be specifically included in the notice calling such next meeting. If a quorum shall not be present at such next meeting through the absence of the minimum required number of the Directors from the same group which caused the failure of a quorum at the first meeting, and if there be no action properly had upon the proposal or proposals so noticed for two consecutive meetings, including the first meeting, and such action is not had because of the continued absence of a quorum as aforesaid, then upon adjournment of the second of such meetings, as in this section provided, the vote of the absent group of Directors shall be deemed cast automatically in opposition to the vote of the group which has been present at such meetings, so as to cause thereby a deadlock vote between the groups which shall be determined in accordance with the provision of Article VIII hereof.

### [57]Section 5. Vote of Directors

(a)     In the absence of a request for a unit vote made prior to the taking of a vote on any matter, all questions at all meetings shall be determined by a majority vote of the Directors present at the meeting, provided that a quorum for the transaction of business is present as required by Section 4 of this Article.

(b)     In the event that, prior to the taking of a vote in any question, any Director requests that the question be decided by a unit vote, the following procedure shall apply:

> (i)     The Union Directors collectively shall have one (1) vote on said question. The Employer Directors collectively shall have one (1) vote on said question.

> (ii)    The vote of the Employer Directors shall be determined by a majority of the Employer Directors present, and the vote of the Union Directors shall be determined by a majority of the Union Directors present. In the event that either the Employer Directors present or the Union Directors present cannot determine their respective collective vote among themselves by such a majority decision, then the matter at issue shall remain in status quo until the deadlocked group of Directors can cast the single, collective vote of that group as above contemplated; provided, however, if such group of Directors does not resolve such a deadlock among themselves and cast their collective vote prior to the next meeting of the Directors, the question or matter shall again be presented at such next meeting. If at such next meeting the particular group of Directors be still deadlocked and remain so until such meeting be adjourned, then immediately upon the adjournment the vote of such deadlocked group shall be deemed automatically cast in opposition to the vote of the group which has not been deadlocked, so as to cause thereby a deadlocked vote between the groups which shall be determined in accordance with the provisions of Article VIII hereof.

(c)     In the event that any matter presented for decision and voted on in accordance with the procedure set forth in subparagraph (a) of this Section cannot be decided by the Directors as a whole because of a tie vote, the matter shall be submitted for a unit vote in accordance with subparagraph (b) of this Section. In the event that any matter presented for decision by a unit vote under subsection (b) of this Section cannot be decided by the Directors as a whole because

---

[57]  Section AMENDED 5/15/85 (Amendment XXXIV)

Exhibit 2 - Page 246

Motion Picture Industry Health Plan                                              Page 47
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

of a tie vote between Employer Directors and Union Directors, the matter shall remain in status
quo pending the vote of the impartial umpire as provided in Article VIII hereof.

### Section 6. Presence of Officers at Meetings

In the absence or disability of the chairman, the vice-chairman shall act as chairman. In the
absence or disability of the secretary, the vice-secretary shall act as secretary. In the case of the absence
of both the chairman and the vice-chairman, or in the absence of both the secretary and the vice-secretary,
or in the absence of all such officers, pro-tem appointments to such respective offices shall be made by
the Directors present.

### Section 7. Minutes of Meetings

The Directors shall keep minutes of all meetings, but such minutes need not be verbatim. The
keeping of such minutes shall be the responsibility of the secretary. A copy of the minutes of each
meeting shall be prepared and sent by the secretary to each Director whether or not such Director was
actually present at the meeting, which copies of such minutes shall be so sent to each Director as soon as
practicable after the adjournment of such meeting, to the end that each Director shall have been enabled to
examine such minutes prior to the time of the next meeting.

*///*

Rev. 1/10

Exhibit 2 - Page 247

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

*(This page left intentionally blank)*

Rev. 1/10

Exhibit 2 - Page 248

Case 2:12-cv-06693-VBF-MAN   Document 60-2   Filed 04/18/14   Page 54 of 108   Page ID
#:1588

Motion Picture Industry Health Plan                                                              Page 49
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

## ARTICLE VIII
## ACTION IN THE EVENT OF DEADLOCK

### [58]Section 1.  Application of This Article

In the event the Directors cannot act with respect to any question or resolution presented to the Directors for decision because of tie vote between the Employer Directors and the Union Directors, then an impartial umpire to cast the deciding vote shall, if possible, be chosen forthwith by the Directors.  If such Directors cannot at such time choose an impartial umpire, then the chairman and the secretary shall attempt to select such impartial umpire, and if such chairman and secretary cannot agree on an impartial umpire within seventy-two (72) hours after the adjournment of the meeting at which the tie vote occurred, then either group of Directors of the Employers or the Unions may petition the District Court of the United States, of the Central District of California, for the appointment of such an impartial umpire.

### Section 2.  Casting a Vote

Upon the impartial umpire being so chosen or appointed, a meeting of the Directors shall be held as soon as practicable, which shall be attended by such umpire, and he shall at such time hear any evidence or arguments presented by either group of Directors upon the question or resolution upon which such tie vote has occurred, and such umpire may, if he desires, make any inquiries from the Directors with respect to any information deemed by him to be competent, relevant, or material to the question, and if such information is not then available, it shall be furnished to such umpire, by the chairman and the secretary jointly, as soon as practicable.  Such impartial umpire shall then as soon as practicable, and, in any case, within fourteen (14) days after the meeting at which such umpire shall have been present and heard the evidence and arguments, by written instrument cast his vote for or against the question or resolution upon which the tie has occurred.  Such umpire may, but need not, specify his reasons for casting such vote.  A copy of such written vote of the umpire shall be delivered by him to the chairman and to the secretary of the Directors.

### Section 3.  Expenses of Umpire

The cost and expense incidental to any appointment of an umpire, and the holding of proceedings before him, including the fee, if any, for such umpire, shall be a proper charge against the Plan, and the Directors are authorized and directed to pay such charges.

///

---

[58]  Section AMENDED 5/15/85 (Amendment XXXIV)

Exhibit 2 - Page 249

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

*(This page left intentionally blank)*

Rev. 1/10

Exhibit 2 - Page 250

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 51

## ARTICLE IX
## EXECUTION OF TRUST AGREEMENT

### Section 1. Counterparts

This trust agreement may be executed in one or more counterparts. The signature of a party on any counterpart shall be sufficient evidence of his execution hereof.

### [59]Section 2. Written Instruments

After obtaining the consent and approval of the Directors, an Employer who is not a named party hereto may adopt and become a party to this trust agreement by executing a counterpart hereof or by executing and delivering to the Directors a sufficient written instrument wherein he agrees to participate in the Plan pursuant to the terms of this Trust Agreement. Such instrument may by reference include the terms of any then existing Collective Bargaining Agreement. The Directors may accept or reject in their sole discretion, the application for inclusion in the Trust as a party, of any Employer or Union or the inclusion of any specific group of employees.

///

---

[59]  Section AMENDED 6/12/68 (Amendment XIX)

Exhibit 2 - Page 251

Page 52

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

*(This page left intentionally blank)*

Exhibit 2 - Page 252

Case 2:12-cv-00693-VBF-MAN Document 60-2 Filed 04/18/14 Page 58 of 108 Page ID
#:1592

Motion Picture Industry Health Plan                                                    Page 53
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

## ARTICLE X
## AMENDMENT TO TRUST AGREEMENT

### [69]Section 1. Amendment by Parties

Articles I, VI, XI, Sections 1-4, inclusive and 7-9, inclusive of Article XIII and Exhibit A of this Agreement and Declaration of Trust may be amended in any respect, not specifically prohibited by Section 2 of this Article, from time to time by written instrument duly approved and executed by seventy-five percent (75%) in number of the individual Directors in office at the time. This Agreement and Declaration of Trust may otherwise be amended in any respect, not specifically prohibited in this Agreement, from time to time by written instrument duly executed and approved by 75% in number of the individual Directors in office at the time and ratified and approved in writing by at least 51% of the individual Employer parties (who at the time were obligated to make Contributions to the Plan within the 30 day period prior thereto and are not at the time delinquent as to contribution payments hereunder), and by at least 51% of the individual Union parties at the time. Upon ratification and approval by the last required signature thereto any such instrument constituting an amendment shall be annexed hereto. If such amendment does not by its own terms fix the effective date thereof then the Directors in their sole discretion shall have full power to fix such effective date by resolution provided that in such event such effective date shall not be a date prior to the ratification and approval by the last required signature thereto. Notwithstanding the foregoing, the rights of the Directors to amend provisions of this Agreement and Declaration of Trust by resolution, to the extent authorized by specific provisions of this Agreement and Declaration of Trust, shall remain in effect unless such authorization is amended in accordance with the terms of this Article X.

### Section 2. Limitation on Right to Amendment

No amendment may be adopted under Section 1 of this Article which will alter the basic principles of this Agreement and Declaration of Trust or be in conflict with the then existing Collective Bargaining Agreements between the Employers and the Unions hereunder, or be contrary to any other applicable law or governmental rule or regulation, or which will permit any part of the Plan to be used, applied, or paid directly or indirectly for or on account of any pension, annuity or arrangement similar thereto or any gratuitous payment to any person whomsoever, by the Directors.

### [51]Section 3. Notification of Amendment

Whenever an amendment is adopted in accordance with this Article, a copy thereof shall be distributed to each Director, and the Directors shall notify the insurance carrier or carriers of the policy or policies forming part of the Plan and any other necessary persons or parties and shall execute any necessary instrument or instruments in connection therewith.

///

---

[69] Section AMENDED 6/23/04 (Amendment LXXIX), Ratified 7/15/04.
[61] Section AMENDED 12/15/99 (Amendment LXIV), effective 1/1/00

Exhibit 2 - Page 253

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

*(This page left intentionally blank)*

Rev. 1/10

Exhibit 2 - Page 254

Motion Picture Industry Health Plan                                                    Page 55
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

## ARTICLE XI
## TERMINATION OF TRUST

### [62]Section 1. By the Directors

An Employer shall cease to be an Employer within the meaning of this Agreement and
Declaration of Trust upon termination by the Directors or when it is no longer obligated to make
contributions to the Plan.

### Section 2. By the Parties

This Agreement and Declaration of Trust may be terminated at any time by an instrument in
writing duly executed by all parties hereto.

### Section 3. Procedure on Termination

In the event of the termination of this Agreement and Declaration of Trust, the Directors shall
apply the Plan to pay or to provide for the payment of any and all obligations of the Plan and shall
distribute and apply any remaining surplus in such manner as will in their opinion best effectuate the
purpose of the Plan; provided, however, that no part of the corpus or income of said Plan shall be used for
or diverted to purposes other than for the exclusive benefit of the Employees, their families, beneficiaries,
or dependents, or the administrative expenses of the Plan or for other payments in accordance with the
provisions of the Plan. Under no circumstances shall any portion of the corpus or income of the Plan,
directly or indirectly, revert or accrue to the benefit of any contributing Employer, or to the benefit of any
Union. No use thereof for the benefit of the Employees, their families, beneficiaries, or dependents shall
be made except by way of health and welfare benefits and excluding always any direct distribution of
cash or property.

### Section 4. Notification of Termination

Upon termination of the Plan in accordance with this Article the Directors shall forthwith notify
the Unions and each Employer and the insurance carrier or carriers of any policies or contracts which may
be held as part of the Plan and also all other necessary parties; and the Directors shall continue as
Directors for the purpose of winding up the affairs of the trust and may take any action with regard to any
policy or policies which may be required by law or by the insurance carrier or carriers of such policies.

///

---

[62]   Section AMENDED in its entirety 12/20/04 (Amendment LXXXVI), effective 12/20/04.

Rev. 1/10

Exhibit 2 - Page 255

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

*(This page left intentionally blank)*

Rev. 1/10

Exhibit 2 - Page 256

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 57

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

### [63]Section 1. Termination of Individual Employers

An Employer shall cease to be an Employer within the meaning of this Agreement and Declaration of Trust upon termination by the Directors or when he is not longer obligated to make contributions to the Plan.

### Section 2. Vested Rights

No Employee or any person claiming by or through such Employee, including his family, dependents, beneficiary and/or estate, shall have any right, title or interest in or to the Plan or any property of the Plan or any part thereof, but the Employees who are at the time beneficiaries under this Trust may, directly or through representatives selected by them, or any of them, by action against the Directors, enforce this Trust.

### [64]Section 3. Encumbrance of Benefits

No moneys, property, or equity of any nature whatsoever, in the Plan, or policies or benefits or moneys payable therefrom, shall be subject in any manner by an Employee or person claiming through such Employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void; provided, however, that subject to authorization or ratification by the Directors, such assignments or transfers may be made to authorized providers of the medical services, supplies, and benefits established by the Directors for participants in the Plan.

### Section 4. Place of Business

The place of business of the Plan shall be Los Angeles County, State of California; any notification or written communication to the chairman or secretary or to the Plan or the Directors as a body shall be deemed properly addressed if addressed to the office of the Plan.

### Section 5. Situs

This Agreement and Declaration of Trust is accepted by the Directors in the City of Los Angeles, State of California, and such place shall be deemed the situs of the Trust Fund created hereunder. All questions pertaining to validity, construction and administration shall be determined in accordance with the laws of such State.

### Section 6. Construction of Terms

Wherever any words are used in this Agreement and Declaration of Trust in the masculine gender they shall be construed as though they were also used in the feminine or neuter gender in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the singular form they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in the Agreement and Declaration

---

[63]  Section AMENDED 12/20/04 (Amendment LXXXVI)

[64]  Section AMENDED 8/13/74 (Amendment XXIV)

Exhibit 2 - Page 257

Case 2:12-cv-00693-VBF-MAN Document 60-2 Filed 04/18/14 Page 63 of 108 Page ID #:1597

Page 58

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

of Trust in the plural form they shall be construed as though they were also used in the singular form in all situations where they would so apply.

### Section 7. Certification of Directors' Actions

The chairman and the secretary, when duly authorized by the Directors so to do, may execute any certificate or document jointly on behalf of the Directors, and such execution, so authorized, shall be deemed executed by all the Directors. Third persons having dealings with the Plan or with the Directors shall be entitled to rely on any such certificate or document so executed without further inquiry into the authority of the chairman and the secretary to execute such certificate or document.

### Section 8. Notification to Directors

The address of each of the Directors shall be that stated on the signature page of this Agreement and Declaration of Trust. Any change of address shall be effected by written notice to the Directors.

### Section 9. Severability

Should any provision in this Trust Agreement or in the Plan of Benefits or rules and regulations adopted thereunder or in any Collective Bargaining Agreement be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Plan and the Plan of Benefits. In the event the functioning of the Plan and the Plan of Benefits becomes impossible or impractical for such reason, all the then parties, including the Directors, shall endeavor to devise and adopt an amendment which will permit, if possible, the functioning of the Plan and Plan of Benefits as nearly as possible in accordance with the true spirit and intent thereof.

### Section 10. Expenses of Directors

All reasonable expenses of the Directors incurred in the performance of their duties, such as traveling expenses to attend Directors' meetings, may be chargeable to the Plan at the discretion of the Directors. All other expenses incurred pursuant to Article IV hereof shall be paid by the Plan.

### Section 11. Validity of Action

No action determined by the vote of the Directors, directly or through the vote of an umpire as herein contemplated, shall be valid or effective which shall interpret or apply any provisions of this indenture in any manner or to any extent so as to be contrary to any applicable law or governmental rule or regulation or which would exceed the powers given to the Directors as set forth hereunder or change or enlarge the express purpose hereof.

### Section 12. Loew's Incorporated Retirement Plan

With respect to Loew's Incorporated and any of its employees covered by any Collective Bargaining Agreement heretofore or hereafter entered into, and/or any amendment thereof, which contains provisions relating to the Retirement Plan for Employees of Loew's Incorporated, this Trust Agreement shall be subject to and modified by such provisions, and in the event of any conflict between such provisions and the provisions of this Trust Agreement such provisions of such Collective Bargaining Agreement shall, with respect to Loew's Incorporated and its employees affected thereby, be controlling.

Rev. 1/10

Exhibit 2 - Page 258

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 59

### [65]Section 13.  Claims Brought By Directors

Any and all controversies, claims or disputes involving a claim by one or more Directors against one or more other Directors and/or the Plan shall be submitted to an arbitrator selected from a list of nine potential arbitrators with expertise in matters related to employee benefit plans provided by the American Arbitration Association ("AAA").  Each side shall have alternating rights to strike the name of a potential arbitrator from the list until the name of only one arbitrator remains.  The side that strikes first shall be determined by coin toss and each party shall then alternately strike until only one name is left and he or she shall be the arbitrator selected.  Each side shall have the opportunity to reject one entire list of arbitrators and request a new list.  The arbitration shall be commenced by filing a demand for arbitration with the AAA within sixty days after the occurrence of the facts giving rise to any such controversy, claim or dispute.  The arbitration shall be conducted in Los Angeles, California, and shall follow the procedures of the American Arbitration Association.  Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.  Each of the parties to the arbitration shall bear its own attorneys fees and costs and shall equally share any costs of the arbitration except as provided for in Article IV, Section 4, with respect to the defense of claims against Directors.

///

---

[65]  ADDED 4/27/05, retroactively effective 11/1/04 (Amendment LXXXXI)

Exhibit 2 - Page 259

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

*(This page left intentionally blank)*

Exhibit 2 - Page 260

Motion Picture Industry Health Plan                                                    Page 61
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

## ARTICLE XIII
## [66]RETIRED EMPLOYEES FUND

In order to provide benefits for those persons who have heretofore retired or who hereafter retire
from active employment in the motion picture industry, and who were at the time of such retirement
covered by a collective bargaining agreement which required contributions to be paid to the Plan on their
behalf, or who were members of a group of employees designated as being eligible Employees hereunder
in a sufficient written instrument to the Directors requiring their Employer to pay contributions to the
Plan on their behalf, the following provisions shall apply:

### [67]Section 1. Eligible Retirees

(a)       Persons who were participants in the Retired Employees Fund and: (i) who are certified
by the Administrator as having actually worked at least twenty (20) Qualified Years and at least
twenty thousand (20,000) hours on which contributions were required to be paid to the Retired
Employees Fund hereunder, or (ii) who are certified by the Administrator as having worked at
least fifteen (15) Qualified Years and twenty thousand (20,000) hours on which contributions
were required to be paid to the Retired Employees Fund hereunder, at least three (3) of which
Qualified Years were earned after the calendar year the participant attained the age of forty (40),
and at least one (1) of which Qualified Years was earned during or after the Plan Year 2000; and,
under either subparagraph (i) or (ii), above, is certified by the Administrator as having retired
from the motion picture industry, shall be known as "Retired Employees" hereunder; provided,
however, that such persons who retired prior to age 62 shall not be considered Retired Employees
hereunder prior to the first day of the month following attainment of age 62 and with respect to
the provisions of this Article XIII, the certified date of retirement of such persons shall be the first
day of the month following attainment of age 62; provided , further, however, that such persons
who have worked at least thirty (30) Qualified Years and at least sixty thousand (60,000) hours
on which contributions were required to be paid to the Retired Employees Fund hereunder, shall
be considered Retired Employees on the first day of the month following attainment of age 60
and such persons who have worked at least thirty (30) Qualified Years and at least fifty-five
thousand (55,000) hours on which contributions were required to be paid to the Retired
Employees Fund hereunder shall be considered Retired Employees on the first day of the month
following attainment of age 61.

---

[66]   ADDED 7/8/59 (Amendment II)
       Section AMENDED 4/29/82 (Amendment XXXV)
[67]   Section AMENDED 7/1/66 (Amendment XIV)
       Section AMENDED 7/1/68 (Amendment XVIII)
       Section AMENDED 7/13/77 (Amendment XXXII)
       Section AMENDED 4/29/82 (Amendment XXXV)
       Section AMENDED 9/5/85 (Amendment XL)
       Section AMENDED 10/24/90 (Amendment XLV)
       Section AMENDED 3/13/92 (Amendment LI)
       Section AMENDED 12/15/99 (Amendment LXIII) The first paragraph is amended, effective 12/26/99.
       Section AMENDED 12/20/00 (Amendment LXV)

Exhibit 2 - Page 261

Case 2:12-cv-00693-VBF-MAN   Document 60-2   Filed 04/18/14   Page 67 of 108   Page ID
#:1601

Page 62

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Notwithstanding the foregoing, any person who is totally and permanently disabled at the time of retirement from the motion picture industry and who has worked at least ten (10) Qualified Years and ten thousand (10,000) hours on which contributions were required to be paid to the Retired Employees Fund shall be eligible for retiree benefits regardless of his or her age at the time of retirement if: (1) such person is eligible to and has retired under the disability pension provisions of the Motion Picture Industry Pension Plan; or (2) such person meets the requirements for such a disability pension but is not eligible for a disability pension solely because he or she is not a participant in said Pension Plan; or (3) such person meets all of the requirements for such a disability pension except that a determination of eligibility for Social Security disability benefits is not available due to the person's age at the time of retirement, provided that such person is certified as being totally and permanently disabled by the medical review staff of the Retiree Fund.

In the event of the death of a person who has been certified as eligible to receive benefits as a disability retiree, his or her surviving spouse (provided that they have been married for at least two (2) years at the time of death) and any other qualified dependents (so long as they continue to meet the criteria for qualified dependents) shall be provided benefits hereunder for a maximum period of one year of extended coverage for each Qualified Year that the deceased participant had earned. For disability retirees who had earned at least twenty (20) Qualified Years and twenty thousand (20,000) hours prior to retirement and who die after reaching age 62, such qualified dependent survivor benefits shall be provided for the duration of the dependent's lifetime (so long as they continue to meet the criteria for qualified dependents).

[68]   For the purposes of this Section, the term "Qualified Years" shall mean any year in which a person worked at least four hundred (400) hours on which contributions were required to be paid to the Retired Employees Fund hereunder. In addition, any participant who was formerly a participant in the Film Producers/Film Craftsmen Pension Plan ("NABET Plan") and who had earnings reported to that fund for each of the five years from 1987 through 1991, inclusive, wherein at least $8,000.00 was reported in each of four (4) out of the five (5) years, shall be credited with five (5) Qualified Years in the Retired Employees Fund hereunder.

(b)   Metrocolor Facility Closing Benefit.

Because of the unique circumstances surrounding the closing of the film processing operations (the "Facility") of Metrocolor Partners ("Metrocolor"), the following eligibility rule shall be applicable to certain Participants in the Retired Employees Fund who were affected by the plant closure of the Metrocolor Facility.

(i)   A participant will only be entitled to the benefits of this Section if he meets all of the following three criteria:

(1) He received at least 400 hours on which contributions were required to be paid and were actually paid to the Retired Employees Fund hereunder for services performed for Metrocolor at the Facility in 1987 and 1988;

---

[68]   Section AMENDED by Resolution on 8/31/94.

Exhibit 2 - Page 262

Case 2:12-cv-00893-VBF-MAN Document 60-2 Filed 04/18/14 Page 68 of 108 Page ID
#:1602

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 63

(2) He received at least 400 hours on which contributions were required to be paid and were actually paid to the Retired Employees Fund hereunder from Metrocolor for services performed at the Facility on or after April 25, 1989; and

(3) He had been credited with either (A) 18 or 19 Qualified Years by the end of the Plan Year ending in 1989, or (B) 28 or 29 Qualified Years by the end of the Plan Year ending in 1989.

(ii) A participant described in Subsection (i) shall be credited with an additional Qualified Year at the end of the Plan Year ending in 1990. In addition, if the Participant had either 18 or 28 Qualified Years at the end of the Plan Year ending in 1989, he shall be credited with an additional Qualified Year at the End of the Plan Year ending in 1991. The Participants entitled to the benefits of this Section shall not be entitled to the crediting of any hours because of this Section, but only of additional Qualified Years.

(iii) A special rule shall apply if a Participant is credited with one or more Qualified Years under Subsection (ii) and would not have received credit for a Qualified Year during the Plan Years in question absent Subsection (ii) and subsequently earns additional Qualified Years. In this case, any additional Qualified Years earned by the Participant in addition to those credited under Subsection (ii) shall only count to the extent they exceed the Qualified Years credited under Subsection (ii). For example, if a Participant receives additional Qualified Years in the Plan Years ending in 1990 and 1991 under Subsection (ii), Qualified Years earned in the Plan Years ending in 1992 and 1993 would not count as Qualified Years hereunder (although hours on which contributions were required to be paid and were actually paid to the Retired Employees Fund hereunder in 1992 and 1993 would be taken into account).

[69](c) Any person desiring to become a Retired Employee hereunder shall give notice to the Administrator of his retirement from the industry in the same manner as though such person were actually retiring under the Pension Plan. Any person who has heretofore retired from the industry and who meets the eligibility requirements set forth herein but did not qualify as a Retired Employee under the provisions of this Article XIII prior to September 5, 1985, may become a Retired Employee hereunder by giving ninety (90) days prior written notice to the Pension Plan; provided, however, that no such person shall be entitled to retroactive coverage; and provided further that no such person shall become a Retired Employee eligible for benefits hereunder until and unless he is certified by the Administrator, as meeting the eligibility requirements set forth herein. The Directors of the Retired Employees Fund may, be resolution, change, amend or otherwise modify, in whole or in part, the eligibility rules applicable to Retired Employees.

---

[69] Section AMENDED 12/15/99 (Amendment LXIII), effective 12/26/99.

Exhibit 2 - Page 263

Case 2:12-cv-06693-VBF-MAN   Document 60-2   Filed 04/18/14   Page 69 of 108   Page ID
#:1603

Page 64                                                                    Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

#### [76]Section 1(a)  Eligible Retirees - continued

Persons who are certified as provided in Section 1 and Section 9 of this Article XIII as having met all the conditions for retirement provided in such Section 1 and Section 9, or as having met all such requirements except those pertaining to attained age and as having died prior to the effective date of retirement may nevertheless be considered to be "Retired Employees" hereunder regardless of having died before retirement, provided, however, that such persons may be so considered to be "Retired Employees" for the limited purpose only of providing that their qualified dependents may receive benefits hereunder of the same general nature as they would have received had such person died after the effective date of his retirement and provided, further, that the kind, conditions and duration of such benefits shall be those the Directors establish by resolution.  Employees who have retired prior to reaching age 62 and who are certified as having met all the conditions for retirement provided in Section 1 and Section 9 except those pertaining to attained age may also be considered "Retired Employees" for the limited purpose only of providing that their qualified dependents may receive benefits hereunder of the same general nature as they would have received had such person died after reaching the age of 62;  provided, however, that the kind, conditions and duration of such benefits shall be those the Directors establish by resolution.

#### [77]Section 1(b)  Eligible Retirees – continued  [SECTION DELETED IN ITS ENTIRETY]

#### [78]Section 2.  Commencement of Eligibility

A retired Employee, whether or not he would, prior to the certified date, have been an Employee, and whether or not prior to the certified date the employer of such employee was an Employer, shall from the date specified in such certification become and thereafter remain eligible for the health and welfare benefits provided under this Article XIII, upon the conditions and with the exceptions set forth below.  If any such Retired Employee upon the certified date be then eligible for benefits under Article VI, as an Employee, such Retired Employee shall nevertheless be transferred from the Active Plan to the Retiree Fund and shall no longer be eligible to receive benefits under Article VI;  provided, however, that any such Retired Employee shall be entitled to receive from the Retiree Fund benefits which are equal to those which he would have received had he remained eligible to receive benefits under Article VI through the end of any benefit period for which such employee had earned eligibility in the Active Plan.  If any such Retired Employee who was previously an Employee entitled to benefits under Article VI shall, subsequent to becoming eligible for benefits under this Article XIII, return to active employment in the motion picture industry and work 300 or more hours during any qualifying period for an Employer or Employers for which contributions were required to be paid to the Active Plan, such Retired Employee

---

[79]    ADDED 7/1/68  (Amendment XX)
        Section AMENDED 9/5/85  (Amendment XL)
[71]    ADDED 4/10/74  (Amendment XXIII)
        Section DELETED in its entirety 12/20/00 (Amendment LXV)
[72]    Section AMENDED 7/1/61  (Amendment VII)
        Section AMENDED 7/1/61  (Amendment VIII)
        Section AMENDED 7/1/68  (Amendment XX)
        Section AMENDED 6/30/83  (Amendment XXXVI)
        Section AMENDED 1/9/84  (Amendment XXXVII)
        Section AMENDED 3/14/88  (Amendment XLIII)
        Section AMENDED 3/20/92  (Amendment XLVIII)
        Section AMENDED 6/25/97  (Amendment LVI), effective 7/1/97
        Section AMENDED 12/20/00 (Amendment LXV)

Exhibit 2 - Page 264

Case 2:12-cv-06093-VBF-MAN Document 60-2 Filed 04/18/14 Page 70 of 108 Page ID #:1604

Motion Picture Industry Health Plan                                               Page 65
Agreement and Declaration of Trust
(Inclusive of Amendments 1 through CVI)

shall be transferred from the Retiree Fund to the Active Plan and shall become eligible for benefits under Article VI commencing with the first date of the related benefit period. If any Retired Employee who was not a participant in the Active Plan prior to being certified as a Retired Employee hereunder, shall, subsequent to becoming eligible for benefits under this Article XIII, return to work in the motion picture industry and perform services for an Employer which is a party to the Active Plan and for which contributions are required to be and in fact are made to the Active Plan, he or she shall become eligible for benefits under Article VI in the same manner and pursuant to the same rules as other new participants in the Active Plan; provided, however, that any benefits exclusion applicable to new participants which are not applicable to continuing Active Employees shall not apply to any retired Employee transferred hereunder.

Any Retired Employee who is transferred from the Retiree Fund to the Active Plan as herein above provided shall become fully eligible for all benefits provided to continuing Active Employees commencing with the first day of the related benefit period and shall remain eligible for the period during which he or she continues to meet the normal eligibility requirements applicable to all other Active Employees. Any individual so transferred from the Retiree Fund to the Active Plan shall not be entitled to any benefits under this Article XIII, but shall become eligible for benefits under this Article XIII immediately upon the expiration of his or her eligibility for the benefits under Article VI, except as provided below.

Under no circumstances shall a Retired Employee be entitled to benefits under both this Article XIII and, as an active employee, under any other provision hereof at the same time; provided, however, that any totally and permanently disabled person who is entitled to life insurance on a waiver of premium arising out of the group life insurance provided under Article VI hereof and who becomes eligible for benefits under the Retired Employees Fund shall continue to be entitled to such life insurance under such waiver of premiums but shall not be eligible for or receive any life insurance provided by the Retired Employees Fund and no premium shall be paid for such Retiree Life Insurance by either the person or the Retired Employees Fund. If any Retired Employee is or becomes eligible for benefits as a retiree or active employee under any other existing trust, fund or plan provided by an employer, then benefits under this Article XIII and such other trust, fund or plan shall be coordinated under the then existing coordination of benefits rules applicable hereunder.

## [73]Section 3. Pension Plan as Agent

The said Pension Plan through its Administrative Director has been and is hereby designated as and shall be an Agent of this Plan for the receipt and collection from the employers as defined in said Pension Plan of all Contributions relating to this Article XIII, notwithstanding that an employer under such Pension Plan may not be or at any time have been an Employer within the provisions of Section 1 of Article I hereof.

---

[73] Section AMENDED 12/15/99 (Amendment LXIII) 12/26/99

Exhibit 2 - Page 265

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

### [74]Section 4. Benefits

The Benefits to be provided hereunder for such Retired Employees shall not commence prior to January 1, 1960 and shall be of the general categories described in Section 1 of Article VI hereunder, but such Benefits need not be the same in amounts or coverage or include all of the Benefits at the time provided to Employees hereunder in accordance with said Article VI. The Directors shall have full authority to determine all questions of nature, amount, commencement and duration of Benefits to be provided the Retired Employees and their dependents.

### Section 5. Segregation of Funds

All amounts received at any time for or on account of Retired Employees shall be kept separate and apart from all other moneys or other assets received or held by this Plan under any provision hereof other than under this Article XIII. The fund so segregated for the purpose of this Article XIII shall be administered as a separate trust fund which shall be known as the Retired Employees Fund. The Retired Employees Fund shall bear its proportionate share of the cost of administration of the entire Plan, and such proportionate share shall be determined by the Directors from time to time. The Directors with respect to such Retired Employees Fund shall have all the powers and authority anywhere in this instrument provided, but shall not be subject with respect thereto to the limitations imposed by subdivision (d) of Section 1 of Article IV hereof relating to the establishment or accumulation of a reserve or reserves, which with respect to the Retired Employees Fund shall be within the discretion of the Directors, nor shall the Directors be entitled to accept contributions from individuals as provided in Section 7 of Article V hereof.

### [75]Section 6. Segregation of Benefits and Reserves

The Directors in determining the extent and character of benefits to be provided for Retired Employees and their dependents shall be under no obligation whatever to provide Benefits which cannot be obtained through the utilization of the Retired Employees Fund and in no case may any moneys or reserve in the Plan, other than moneys received for or a reserve established and made up from the said Retired Employees Fund, be used for the obtaining of such Benefits for Retired Employees and their dependents, to the end that under no circumstances will Benefits available to Employees, as contemplated under other Articles hereof, be reduced or diluted or otherwise affected by the Benefits which may be provided for Retired Employees and their dependents hereunder. Similarly, no part of any moneys or reserve in the Retired Employees Fund shall ever be used to provide Benefits except for Retired Employees or their dependents.

---

[74] Section AMENDED 7/1/68 (Amendment XX)
[75] Section AMENDED 3/1/65 (Amendment XII)
Section AMENDED 7/1/66 (Amendment XVII)
Section AMENDED 7/1/68 (Amendment XX

Exhibit 2 - Page 266

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 72 of 108 Page ID #:1606

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 67

### [75]Section 7. Duration of Eligibility

The requirements for eligibility to receive benefits under any provision of this instrument other than this Article XIII shall not apply to Retired Employees except as expressly provided in Section 2 of this Article XIII. Retired Employees shall become eligible upon certification by the Administrator as in this Article contemplated, and such Retired Employee shall thereafter remain eligible for benefits as Retired Employees hereunder subject only to the provisions of Section 2 of this Article XIII with respect to Retired Employees who return to active employment as an Employee of an Employer hereunder. Except as expressly provided in Section 2 of this Article XIII, after becoming eligible hereunder, any such Retired Employee shall thereafter remain eligible for benefits as a Retired Employee hereunder throughout the life of this Trust or until the death of the Retired Employee, whichever event shall first occur, provided, however, that the qualified dependents of a deceased Retired Employee may become and remain eligible for certain benefits under this Article XIII following the death of the Retired Employee subject to such rules as the Directors may establish by resolution. If the certification upon which such eligibility is based is found to be in error or is revoked by the Administrator, then the eligibility of the particular Retired Employee shall cease until a further and correct certification is made by the Administrator.

### Section 8. Approval Required Before Payment of Benefits

No Benefits under this Article XIII will be put into effect until the contributions or payments for such Benefits hereunder by the Employers shall have been approved by the U.S. Treasury Department, Bureau of Internal Revenue, as proper deductions by the Employers as business expenses for income tax purposes. In the event such approval is not obtained, the Union and the Employers agree to make such amendments and revisions of this Agreement and Declaration of Trust are necessary to obtain such approval. For the purpose of this Section, the Employers agree to have one Employer promptly file a request for such approval and request the Bureau to rule, in addition, that all other Employers contributing to this Plan may be deemed covered by the same ruling. Upon receipt of such ruling from the Bureau, the Employer shall promptly notify the Directors and the Directors shall consider same as compliance with this Section.

### [77]Section 9. Producer-Writers Guild of America Pension Plan

Wherever in this Article XIII reference is made to the Motion Picture Industry Pension Plan or the Pension Plan or to the Board of Directors or Administrative Director of said Pension Plan such reference shall, effective December 13, 1966, thereafter apply in like manner and with equal force and effect respectively to the Producer-Writers Guild of America Pension Plan, its Board of Directors or its Administrator with respect to persons who are or become participants under such Producer-Writers Guild of America Pension Plan, subject to the following:

---

[76]    Section AMENDED 7/1/66 (Amendment XVII)
    Section AMENDED 7/1/68 (Amendment XX)
    Section AMENDED 6/30/83 (Amendment XXXVI)
    Section AMENDED 1/9/84 (Amendment XXXVII)
    Section AMENDED 12/15/99 (Amendment LXIII), effective 12/26/99

[77]    ADDED 12/13/66 (Amendment XVII)
    Section AMENDED 7/1/68 (Amendment XVIII)
    Section AMENDED 2/13/74 (Amendment XXII

Exhibit 2 - Page 267

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Such persons who are participants under the Producer-Writers Guild of America Pension Plan and who are certified by the Board of Directors of said Pension Plan or by its Administrator if authorized by said Board of Directors, to the Directors of this Plan as having been eligible to retire and as having retired on a date specified, and who have become pensioners within the meaning and provisions of Article IV, Sections 1 or 2 of such Producer-Writers Guild of America Pension Plan and who meet the provisions of Article IV, Section 1(a), (b) and (c) of such Plan and who have attained age 62 shall likewise be known as "Retired Employees" hereunder, and with respect to the purposes and provisions of this Article XIII, the certified date of their retirement shall be the first day of the month following attainment of age 62. References to specific Articles, Sections or Provisions of the Producer-Writers Guild of America Pension Plan in this Section 9 shall be deemed to refer to the said Articles, Sections or Provisions as they stood on December 13, 1966, provided, however, if there be any subsequent amendment of said Pension Plan in the particulars referred to, then the Directors of this Trust may by resolution accept any such amendment to the Pension Plan as thereafter constituting the reference thereto made in this Section.

Notwithstanding that the effective date of this section 9 is December 13, 1966 no person certified as having been or being retired under such provisions of the Producer-Writers Guild of America Pension Plan shall be eligible for benefits under this Article XIII prior to January 1, 1968.

In order to be eligible for benefits under this Article XIII, persons certified as eligible retired employees in accordance with the provisions of this Section 9 must have been so certified and accepted by the Directors as such prior to March 1, 1974.

///

Exhibit 2 - Page 268

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

Page 69

Signatures

IN WITNESS WHEREOF, the undersigned do hereunto cause this instrument to be duly
executed on behalf of their proper offices thereunto duly authorized.

We hereby agree to act as Directors in accordance with the foregoing Agreement and Declaration
of Trust. We have read the foregoing instrument, fully understand the contents thereof and agree to
comply with all its terms and provisions.

**Directors -** *(in alphabetical order)*

**Aric Ackerman** - M
Interpret
1318 Broadway
Santa Monica, CA 90404

**Helayne Antler** - M
Sony Pictures Entertainment
10202 W. Washington Blvd.,
Rm. SPP5408
Culver City, CA 90232

**Joseph Aredas** - L
IATSE West Coast Office
10045 Riverside Dr.
Toluca Lake, CA 91602

**Earl Brendlinger** - L
Local 724
6700 Melrose Ave.
Los Angeles, CA 90038-3412

**Krysten Brennan** - M
Walt Disney Pictures
& Television
500 Buena Vista St.
Burbank, CA 91521-7478

**Ed Brown** – L
Local 44
12021 Riverside Drive
N. Hollywood, CA 91607

**Stephanie Caprielian** - M
NBC Universal City Studios
100 Universal City Plaza
Bldg. 1280-3
Universal City, CA 91608-
1002

**James Casey** - M
Sony Pictures Entertainment
10202 W. Washington Blvd.,
SPP-5412
Culver City, CA 90232

**Tommy Cole** – L
Local 706
828 N. Hollywood Way
Burbank, CA 91505

**J. Nicholas Counter III** - M
AMPTP
15301 Ventura Blvd.
Sherman Oaks, CA 91403

**Anthony Cousimano** - L
Local 399
P.O. Box 6017
N. Hollywood, CA 91603

**Thomas Davis** - L
Local 80
2520 W. Olive Ave.
Burbank, CA 91505-4523

**Bruce Doering** - L
Local 600
7755 Sunset Boulevard
Hollywood, CA 90046

**Steven Escovedo** - M
20th Century Fox
P.O. Box 900
Beverly Hills, CA 90213-0900

**John Ford** - L
Local 52
326 W. 48th Street
New York, NY 10036

**Nicole A-J. Gustafson** - M
Paramount Pictures Corp.
5555 Melrose Avenue
Bluhdorn Bldg., Ste. 104
Los Angeles, CA 90038

**Kay Kimmel** - M
Entertainment Partners
2835 North Naomi St.
Burbank, CA 91504-2024

**Stephen Koppekin** - M
Paramount Pictures Corp.
5555 Melrose Ave.
Bluhdorn Building
Los Angeles, CA 90038

**Ronald Kutak** - L
Local 700
7715 Sunset Blvd.
Suite #200
Hollywood, CA 90046-3912

**Hank Lachmund** - M
Warner Bros.
Television Prod.
300 Television Plaza
Bldg. 137 Rm. 1009
Burbank, CA 91505

**Laura Legge** - M
Touchstone Television
500 S. Buena Vista Street
MC 4481
Burbank, CA 91521-4481

**Matthew D. Loeb** – L
IATSE
1430 Broadway, 20th Fl.
New York, NY 10018

Rev. 1/10

Exhibit 2 - Page 269

Page 70

Motion Picture Industry Health Plan
Agreement and Declaration of Trust
(Inclusive of Amendments I through CVI)

**Michael Messina** - M
Warner Bros. Studios
Facilities
4000 Warner Blvd.
Bldg. 17, Rm. 202
Burbank, CA 91522

**Michael F. Miller** - L
IATSE--West Coast Office
10045 Riverside Drive
Toluca Lake, CA 91602

**Catrice Monson** -- M
CBS Broadcasting, Inc.
4024 Radford Avenue
Studio City, CA 91604

**Carmine Palazzo** - L
IATSE--West Coast Office
10045 Riverside Drive
Toluca Lake, CA 91602

**George Palazzo** - L
Local 729
1811 W. Burbank Blvd.
Burbank, CA 91506-1314

**Leo Reed** - L
Local 399
P.O. Box 6017
N. Hollywood, CA 91603

**Michael Rosenfeld** - M
The Walt Disney Co.
500 S. Buena Vista
Room 104C,
Team Disney Bldg.
Burbank, CA 91521-0153

**Scott Roth** - L
Local 800
11969 Ventura Blvd.
Suite #200
Studio City, CA 91604

**Ted Rubin** - M
Warner Bros. Pictures
4000 Warner Blvd.,
Bldg. 156, Suite #1225
Burbank, CA 915221561

**Wayne Runyon** - M
Fox Entertainment Group,
Inc.
2121 Avenue of the Stars,
Ste. 2240
Los Angeles, CA 90067

**Mark Seay** - L
Local 755
13245 Riverside Drive
Suite. #300 E
Sherman Oaks, CA 91423

**Louis Shore** - M
CBS Studios, Inc.
7800 Beverly Blvd.,
Rm. 3314
Los Angeles, CA 90036

**Buffy Snyder** - L
Local 705
4731 Laurel Cyn. Blvd. #201
Valley Village, CA 91607-
3911

**Carole Stepp** - L
Teamsters Local 399
P.O. Box 6017
N. Hollywood, CA 91603-
6017

Rev. 1/10

Exhibit 2 - Page 270

## MOTION PICTURE INDUSTRY HEALTH PLAN

## EXHIBIT A (29)[1]

## COMPOSITE PATTERN OF EMPLOYER RATE OF CONTRIBUTIONS

## AUGUST 1, 2000

The following is a schedule of the composite rates of contribution required to be paid by all Employer parties to the Motion Picture Industry Health Plan (the "Health Plan") and to the Retired Employees Fund of the Motion Picture Industry Health Plan (the "Retired Employees Fund") and a schedule of the number of hours for which such contributions must be made for each of the various classes of participants on whose behalf contributions are required with respect to contributions due on and after August 1, 2000.

### ARTICLE I - PARTICIPATING UNIONS

This schedule constitutes a composite Industry pattern of the rates of contributions provided for in the respective Collective Bargaining Agreements between the Employers and the Unions and Guilds which are parties to the Motion Picture Industry Health Plan. The Unions are set forth in Article I, Section 3. of the Trust Agreement, as follows:

[2]**Section 1.** **Names of Unions**

1. International Alliance of Theatrical Stage Employes, Moving Picture Technicians, Artists and Allied Crafts of the United States and Canada, AFL-CIO, CLC (covering its Locals 44, 52, 80, 161, 600, 683, 695, 705, 706, 728, 729, 767, 700, 800, 839, 871, 884, and 892).

2. Studio Utility Employees, Local 724

3. Hotel and Restaurant Employees and Bartenders International Union, Local 11

4. United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, Local 78

5. Ornamental Plasterers and Cement Finishers International Association of the United States and Canada, Local 755

6. American Federation of Security Officers, Local 1

7. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 399

8. International Brotherhood of Electrical Workers, Local 40

9. Service Employees International Union, Local 1877 (formerly SEIU Local 399)

10. Studio Security and Fire Association—The Warner Bros. Studio Facilities

---

[1]  RESTATED in its entirety by Amendment LXXII at the 10/23/02 Board Meeting.
  Section AMENDED – Amendment LXXIV, 12/18/02, effective 1/1/03.
  Number is changed with each new edition.
  Section AMENDED - Numerous changes were made throughout by Resolution on 5/23/03, effective 8/1/03.
  Section AMENDED - Renumbered – Amendment LXXXXII, 6/22/05, retroactively effective 1/1/05.

[2]  Section AMENDED – Section Amended by Resolution at the 8/23/02 Board Meeting.
  Section AMENDED – Amendment LXXVII, 11/20/03, effective 1/1/04, Article I, Section 1, Item 1 was changed.
  Section AMENDED – Amendment LXXXIV, 12/20/04, effective 1/1/05, Article I, Section 1, Item 1 was amended.
  Section AMENDED – Amendment LXXXXVI, 3/8/06, retroactively effective 1/29/06, Local 817 was added.
  Section AMENDED – Amendment CII, 8/28/08, retroactively effective 7/1/08, Locals 790 and 847 merged to Local 800.

Exhibit 2 - Page 271

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

11. American Federation of Musicians, Local 47

12. Office and Professional Employees International Union, Local 174

13. International Brotherhood of Teamsters, Theatrical, Radio, Television, Field Equipment, Sound Tracks, Motion Picture, Film, Exhibition, and Orchestra Chauffeurs and Helpers, Local 817.

///

Exhibit 2 - Page 272

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

## ARTICLE II - ACTIVE EMPLOYEES FUND

### [3]Section 1.    Contribution Requirements - Union Groups

Contributions to the Health Plan by Employers whose Employees work for such Employers within any job classification covered by a Collective Bargaining Agreement between such Employer and either a Union or Guild named herein shall be made as follows:

[4]A.    1.   In accordance with Article V. Section 1. and 2. of the Trust Agreement regarding the Rate and Period of Contributions, the Employer shall, for the period commencing July 30, 2006, to and including July 31, 2009, pay into the Health Plan the amounts set forth in Paragraph B. below, for each work hour guaranteed Employee by such Employer or each hour worked by Employee for such Employer, whichever is greater, on or after July 30, 2006 to an including July 31, 2009, under the terms of such agreement, including straight time and overtime hours on any day worked.

Where a minimum call is applicable and the Employee works less than the minimum call, then the minimum call shall constitute time worked. Employees subject to such agreement employed for full weeks under guaranteed weekly salary schedules shall be contributed for and credited with not less than the hours guaranteed the Employees under such guaranteed weekly salary schedule. In the event such Employee (other than an "on-call" or other salaried, exempt Employee) works in excess of such applicable number of hours guaranteed in such weekly schedule, then additional contributions shall be made for such excess hours worked.

For the purpose of this provision, for the sixth and seventh day not worked on distant location, contributions for Employees (other than "on-call" or other salaried, exempt Employees) shall be based on eight (8) hours for each day.

Except as provided in the next paragraph, for the purpose of this provision, studio, nearby and distant location employment under "on-call" weekly salary schedules shall be considered as a guarantee of twelve (12) hours per day during any partial workweek, fifty-six (56) hours during any five-day workweek, sixty-three (63) hours during any six-day workweek and seventy-one (71) hours during any seven-day workweek.

However, effective July 30, 2006 to and including July 31, 2009 with respect to employment under the Producer—I.A.T.S.E. and M.P.T.A.A.C. Basic Agreement, studio, nearby and distant location employment under "on-call" weekly salary schedules shall be considered as a guarantee of twelve (12) hours per day during any partial workweek, sixty (60) hours during any five-day workweek, sixty-seven (67) hours during any six-day workweek and seventy-five (75) hours during any seven-day workweek. Such guaranteed hours shall also apply to employment under any other Collective Bargaining Agreement (including related side letters) that provides

---

[3]    Section AMENDED by Resolution on 5/23/03, effective 8/1/03.
       Section AMENDED 3/8/06 (Amendment LXXXXVI) numbering was changed, and subsection A.2. was added.
[4]    Section AMENDED 12/20/00 (Amendment LXV).
       Section AMENDED 6/26/08 (Amendment CI), retroactively effective 8/1/06.

Rev. 1/10

Exhibit 2 - Page 273

Case 2:12-cv-06093-VBF-MAN Document 00-2 Filed 04/18/14 Page 79 of 108 Page ID #:1613

Page 4

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

such hours, but only during the period specified in such Collective Bargaining Agreement.

In all cases, for the sixth day not worked on distant location, contributions for "on-call" Employees shall be based on seven (7) hours. For the seventh day not worked on distant location, contributions for "on-call" or other salaried, exempt Employees shall be based on eight (8) hours.

In all cases, contributions for "on-call" or other salaried, exempt Employees shall be based on such number of guaranteed hours only.

2.  Notwithstanding the foregoing, and only in the case of freelance casting directors and freelance associate casting directors defined in Article I, Section 2.(b)(I) of the Trust Agreement, effective January 29, 2006, to and including September 30, 2008, in accordance with Paragraph B.2. below, contributions for such "on-call" Employees shall be based on sixty (60) hours per week; provided, however, that for such Employees employed on a weekly schedule, who work a partial workweek [i.e., less than five (5) days] contributions shall be based on twelve (12) hours, for each day worked. For such Employees employed on an hourly basis, contributions shall be made for each hour worked or guaranteed, whichever is greater.

[5]B.    1.  Except as provided below, the Employer shall continue to pay to the Health Plan for the period commencing August 1, 2000 and continuing until changed by the Directors, one dollar, twenty-nine and five-tenths cents ($1.295), for each hour described in Paragraph A, above.

Said composite rate shall consist of:

(1)  One dollar, five and eight-tenths cents ($1.058) for the basic health plan;

(2)  Eighteen and seven-tenths cents ($0.187) per hour for a dental plan; and

(3)  Five cents (5¢) for a vision care plan.

2.  However, with respect to Covered Participants, the Employer shall pay to the Health Plan for employment during the periods set forth below (or at such other times as set forth in the applicable Collective Bargaining Agreement) unless increased pursuant to Article IV below), for each hour described in Paragraph A, above, the following composite rates:

(A)  For the period commencing on August 3, 2003 through and including July 29, 2006, one dollar, forty-nine and five-tenths cents ($1.495) consisting of:

(1)  One dollar, twenty-five and eight-tenth cents ($1.258) for the basic health plan;

---

[5]  Section AMENDED 12/9/98, effective 1/1/99 (Amendment LX)
Section AMENDED 11/20/03 (Amendment LXXVII), effective 1/1/04. Article II, Section 1.B. was changed in its entirety.
Section AMENDED 6/23/04 (Amendment LXXIX), retroactively effective 1/1/04. Section 1.B.1.
Section AMENDED 2/23/05 (Amendment LXXXVIII)
Section AMENDED 6/28/06 (Amendment LXXXXVII), effective 7/30/06.

Exhibit 2 - Page 274

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

Page 5

    (2)  Eighteen and seven-tenths cents ($0.187) for a dental plan; and

    (3)  Five cents (5¢) for a vision care plan.

(B)  For employment commencing on July 30, 2006 through and including July 31, 2009, one dollar, sixty-nine and five tenths cents ($1.695) consisting of:

    (1)  One dollar, forty-five and eight tenths cents ($1.458) for the basic health plan;

    (2)  Eighteen and seven-tenths cents ($0.187) for a dental plan; and

    (3)  Five cents (5¢) for a vision care plan.

For purposes of this Paragraph B.2., a "Covered Participant" shall mean (a) a Participant who is not covered by a Collective Bargaining Agreement between the Employers and the Unions and (b) a Participant who is covered by one of the following Collective Bargaining Agreements:

    (i)  the 2003 Producer – I.A.T.S.E. and M.P.T.A.A.C. Basic Agreement; or any successor agreements thereto; or

    (ii)  any other Collective Bargaining Agreement (including related side letters) that provides for increases in contributions to this Plan in the same manner as set forth in this Paragraph B.2.

[6]3.  Notwithstanding Paragraphs B.1 and B.2., the following contribution rate shall apply with respect to:

    (i)  camerapersons who are working under the Amendment Agreement of May 1, 1997 between Producer and the I.A.T.S.E. and Local #600 thereof (known as the "Local #600 Amendment Agreement") (or under any other Local #600 Collective Bargaining Agreement that provides for contribution rates as set forth in this Section 1.B.3. for all hours after the effective date of such rates),

---

[6]  Section AMENDED 12/20/00 (Amendment LXV).
    Section AMENDED 11/20/03 (Amendment LXXVII) Article II, Section 1.B. was changed in its entirety.
    Section AMENDED 6/26/02 (Amendment LXX), effective 7/1/02.
    Section AMENDED 11/20/03 (Amendment LXXVII), effective 1/1/04, Article II, Section 1.B. was changed in its entirety.
    Section AMENDED 6/23/04 (Amendment LXXIX), retroactively effective 1/1/04, Article II, Sections 1.B.3.
    Section AMENDED 6/23/04 (Amendment LXXIX), retroactively effective 1/1/04, Section 1.B.3.(ii) and (iii).
    Section AMENDED 11/3/04 (Amendment LXXXI), effective 1/23/05, Article II, Section 1.B.3.
    Section AMENDED 12/20/04 (Amendment LXXXIII), retroactively effective 1/1/04, Art. II, Sec. 1.B.3. was amended.
    ADDED – 12/20/04 (Amendment LXXXIV), effective 1/1/05, Art. II, Sec. 1.B.3.(v) was added.
    Section AMENDED – 12/20/04 (Amendment LXXXIV), effective 1/1/05, the final paragraph of Art. II, Sec. 1.B.3. was amended in its entirety, removing the "3.(A)" designation and being restated.
    Section AMENDED – 12/21/05 (Amendment LXXXXV), effective 12/21/05.
    Section AMENDED – 10/25/07 (Amendment C), effective 10/25/07.

Exhibit 2 - Page 275

Case 2:12-cv-00693-VBF-MAN Document 60-2 Filed 04/18/14 Page 81 of 108 Page ID #:1615

Page 6

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

(ii) editorial and post-production sound employees who are working under the January 1, 2002 Amendment Agreement to the Agreement of December 10, 1999 between Producer and I.A.T.S.E. and M.P.T.A.A.C. and Local #700 thereof ("1999 Local Post Production Agreement") for all hours worked on or after July 1, 2002 (or under any other Local #700 Collective Bargaining Agreement that provides for contribution rates as set forth in this Section 1.B.3. for all hours after the effective date of such rates),

(iii) studio mechanics who are working under any Collective Bargaining Agreement with Motion Picture Studio Mechanics, Local #52, I.A.T.S.E. (unless such studio mechanic is described in Article II, Section 1.B.4. or 1.B.5. below) for all hours worked on or after January 1, 2004,

(iv) employee(s) who are working under a Sideletter (as defined below) that provides that such employee(s) who would otherwise participate in, and have contributions made to, other pension and/or health plans (the "away plans") with respect to employment in the Industry by a specified employer pursuant to a collective bargaining agreement on one or more specified projects (or all projects) will instead participate in one or more of this Plan, the Individual Account Plan and the Motion Picture Industry Pension Plan. [In that case, then in accordance with and subject to Section 2(b)(E) of Article I of the Plan and the Sideletter, the particular employee shall be an Employee hereunder and the specified employer and union to said Sideletter will be considered an Employer and Union, respectively, solely with respect to said specified Employee(s).] Notwithstanding Section 1.A. above, said Employer will be required to contribute only for the hours set forth in the Sideletter with respect to said Employee(s), provided that the Employer must contribute for each work hour guaranteed Employee by such Employer or each hour worked by Employee for such Employer, whichever is greater, under the terms of such Sideletter and related agreements, including straight time and overtime hours on any day worked. Except for employee(s) specified in the Sideletter, said Employer shall not contribute on behalf of any other of said Employer covered by the applicable collective bargaining agreement. A Sideletter is a collective bargaining agreement (or addendum thereto), together with any applicable employee election forms, that (i) is among the employer and an I.A.T.S.E. local union and (ii) meets the conditions set forth in resolutions adopted by the Directors of the Plan.

[7](v) script supervisors, production office coordinators, assistant production office coordinators, production accountants, payroll accountants or assistant production accountants who are working under any Collective Bargaining Agreement with Motion Picture Script

---

[7]  Section AMENDED 8/24/05 (Amendment LXXXXIII), effective 8/24/05, Article II, Section 1.B.3.(v) is amended.

Exhibit 2 - Page 276

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

Supervisors and Production Office Coordinators, Local #161,
I.A.T.S.E. (unless such person is described in Article II, Section
1.B.6. for all hours worked on or after January 1, 2005.)

With respect to such Employees, the Employer shall pay into the Plan for each hour
described in Section 1.A. above (or, in the case of an Employee described in Section
1.B.3.(iv), the hours described in said Section 1.B.3.(iv)):

(1)  for the period commencing January 1, 1999, a total of three dollars, thirty-nine
and three tenths cents ($3.393);

(2)  for the period commencing August 26, 2001, a total of four dollars and twenty-
two cents ($4.22);

(3)  for the period commencing January 26, 2003, a total of four dollars, forty and
two tenths cents ($4.402);

(4)  for the period commencing January 25, 2004, a total of four dollars, seventy-
seven and eighty-five tenths cents ($4.7785);

[8](5)  for the period commencing January 23, 2005, a total of five dollars, twenty-
four and three tenths cents ($5.2403),

[9](6)  for the period commencing January 22, 2006, a total of five dollars, twenty-
eight and ninety-eight tenths cents ($5.2898), and

[10](7)  for the period commencing January 20, 2008, a total of five dollars, seventy-
four and seventy tenths cents ($5.7470),

[11](8)  for the period commencing January 25, 2009, a total of six dollars, forty-six
and seventy-seven tenths cents ($6.4677), and

[12](9)  for the period commencing January 24, 2010, a total of six dollars, two cents
($6.02) (unless increased pursuant to Article IV, below) for each hour
described in Section 1.A. above.  The rate shall be reviewed and subject to
change not more frequently than once per year.  The Plan shall give Employer
not less than ninety (90) days advance notice of a change in such rates.

Notwithstanding the foregoing, if Employer is signatory to the I.A.T.S.E. Basic
Agreement and the Employer, together with its related or affiliated entities, has made

---

[8]  Section AMENDED 10/26/05 (Amendment LXXXXIV), effective 10/26/05, Article II, Section 1.B.3.(5) is
amended.

[9]  ADDED – 10/26/05 (Amendment LXXXXIV), effective 10/26/05, Article II, Section 1.B.3.(6) is added.

[10]  ADDED – 10/25/07 (Amendment C), effective 10/25/07, Subsection (7) is added.
Section AMENDED 10/30/08 (Amendment CIII), effective 1/25/09, Subsection (7) is changed.
Section AMENDED 10/29/09 (Amendment CV), effective 1/24/10, Subsection (7) is changed.

[11]  ADDED – 10/30/08 (Amendment CIII), effective 1/25/09, Subsection (8) is added.
Section AMENDED 10/29/09 (Amendment CV), effective 1/24/10, Subsection (8) is changed.

[12]  ADDED – 10/29/09 (Amendment CV), effective 1/24/10, Subsection (9) is added.

Exhibit 2 - Page 277

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 83 of 108 Page ID #:1617

Page 8

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

Supplemental Markets payments to the Motion Picture Industry Plans in an aggregate amount of not less than fifteen million dollars ($15,000,000) during the three (3) year period beginning January 1, 1994 and ending on December 31, 1996, or in any subsequent three (3) consecutive year period, then Employer and its related and affiliated entities shall make contributions at the rate set forth in Section 1.B.2. above with respect to camerapersons and editorial and post-production sound employees described in Section 1.B.3.(i) and (ii), and employees described in Section 1.B.3.(iv). Such an Employer and its related and affiliated entities shall make contributions at the rate set forth in Section 1.B.4. below with respect to studio mechanics described in Section 1.B.3.(iii). Such an Employer and its related and affiliated entities shall make contributions at the rate set forth in Section 1.B.6. below with respect to script supervisors, production office coordinators and assistant production office coordinators described in Section 1.B.3.(v). For these purposes, the Supplemental Markets payments made by Columbia and TriStar shall be aggregated and the Supplemental Markets payments made by Amblin Entertainment Inc. and Dreamworks shall be aggregated. Such Employers are referred to as the "$15 million Contributors."

[13]4. (A) Notwithstanding Sections 1.B.1., B.2. and B.3., the following contribution rate applies with respect to studio mechanics who are working under the Memorandum of Agreement of May 16, 2002 for Feature and Television Production Contract with Motion Picture Studio Mechanics, Local #52, I.A.T.S.E., or its successor agreements, (the "Contract"), but only if working for

> (i) an Employer listed in the preamble of the Contract or an Employer related or affiliated with such listed Employer,
>
> (ii) NBC Studios, Inc. and Northern Entertainment Productions, Inc., or
>
> (iii) a $15 million Contributor (as defined in Section 1.B.3A. above). These rates apply for all hours worked on or after January 1, 2004.

(B) With respect to such Employees who are working on television, the Employer shall pay into the Plan for each hour described in Section 1.A. above,

> (i) For the period commencing January 1, 2004 to and including May 13, 2006, a total of $1.502 for each hour described in Section 1.A. above.
>
> (ii) For the period commencing May 14, 2006 and continuing, for each hour described in Section 1.A. above, the rates designated in Section 1.B.2., above.

(C) With respect to such Employees who are working on features, the Employer shall pay into the Plan for each hour described in Section 1(a) above:

> (i) For the period commencing January 1, 2004 to and including May 13, 2006, a total of $3.735 for each hour described in Section 1.A. above.
>
> (ii) For the period commencing May 14, 2006 and continuing, for each hour described in Section 1.A. above, the rates designated in Section 1.B.2., above.

---

[13] ADDED—11/20/03 (Amendment LXXVII), effective 1/1/04, Article II, Section 1.B.4. is added. Section AMENDED – 6/23/04 (Amendment LXXIX), retroactively effective 1/1/04, Article II, Section 1.B.4. Section AMENDED – 8/23/06 (Amendment LXXXVIII), retroactively effective 5/14/06.

Exhibit 2 - Page 278

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

Page 9

(D) With respect to those Employees working outside of the jurisdiction of
I.A.T.S.E., Local 52 who are referred to in the May 16, 2006 Motion Picture Studio
Mechanics, Local 52 I.A.T.S.E. Feature and Television Production Contract with
Major Producers, the Employer shall pay into the Plan, for each hour described in
Section 1(a), above, and for the period commencing on May 14, 2006, the rates
designated in Section 1.B.2., above.

[14]5. E.U.E. Screen Gems shall pay to the Active Health Fund, for each hour described in
subsection 1.A., above, for Employees working under its Collective Bargaining
Agreement with I.A.T.S.E. Local #52;

> (i) $2.18, for the period commencing January 1, 2004 through
> November 30, 2004;

> (ii) $3.09, for the period commencing December 1, 2004 through
> November 30, 2005; and

> (iii) $3.75, for the period commencing December 1, 2005 through
> November 30, 2006.

[15]6. (A) Notwithstanding Sections 1.B.1., 1.B.2. and 1.B.3., the following contribution
rates apply with respect to script supervisors, production office coordinators and
assistant production office coordinators who are working under the Motion Picture
Script Supervisors and Production Office Coordinators, Local #161, I.A.T.S.E. and
M.P.T.A.A.C. Motion Picture Theatrical and TV Series Production Contract, entered
into March 3, 2003 or its successor agreements (the "Local 161 Contract"), but only
if working for

> (i) an Employer listed in the preamble of the Local 161 Contract or an
> Employer related or affiliated with such listed Employer,

> (ii) NBC Studios, Inc. and Northern Entertainment Productions, Inc., or

> (iii) a $15 million Contributor (as defined in Section 1.B.3. above).

These rates apply for all hours worked on or after January 1, 2005. Contribution
rates for all other script supervisors, production office coordinators and assistant
production office coordinators are described in Section 1.B.3. above.

(B) With respect to such Employees who are working on television, the Employer
shall pay into the Plan for each hour described in Section 1.A. above,

> (i) For the period commencing January 1, 2005 to and including March
> 2, 2007, a total of $1.502 for each hour described in Section 1.A.
> above.

---

[14]   ADDED - Section 1.B.5. is Added (Amendment LXXIX) 6/23/04, retroactively effective 1/1/04.
Section REPLACED in its entirety 12/20/04 (Amendment LXXXV)

[15]   Subsection 6 is ADDED (Amendment LXXXIV) 12/20/04, effective 1/1/05.
Section AMENDED and ADDED – 10/25/07 (Amendment C), retroactively effective 3/3/07.  (Subsection (D)
is added)

Exhibit 2 - Page 279

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 85 of 108 Page ID
#:1619
Page 10

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

(ii) For the period commencing March 3, 2007 and continuing, for each hour described in Section 1.A. above, an amount equal to the rate set forth in Article II, Section 1.B.4.(B)(ii).

(C) With respect to such Employees who are working on theatrical motion pictures, the Employer shall pay into the Plan for each hour described in Section 1.A. above:

(i) For the period commencing January 1, 2005 to and including March 2, 2007, a total of $3,735 for each hour described in Section 1.A. above.

(ii) For the period commencing March 3, 2007 and continuing, for each hour described in Section 1.A. above, an amount equal to the rate set forth in Article II, Section 1.B.4.(C)(ii).

(D) With respect to those Employees working outside of the geographic jurisdiction of the Local 161 Contract who are referred to in the Local 161 Contract, the Employer shall pay into the Plan, for each hour described in Section 1.A. above, and for the period commencing on March 3, 2007, the rates designated in Section 1.B.2. above.

[16]C. This subsection C. applies if a Sideletter (as defined below) provides that a particular Employee will participate in, and contributions will be made to, his or her home pension and health plans with respect to employment by a specified Employer ("Applicable Employer") on one or more specified projects (or all projects) in lieu of one or more of this Plan, the Motion Picture Industry Individual Account Plan, and the Motion Picture Industry Pension Plan (the "MPI Plans"). In that case, then in accordance with and subject to the Sideletter, the Applicable Employer shall not contribute to this Plan on behalf of such Employee with respect to the Employee's employment on the project(s) specified by the Sideletter. A Sideletter is a Collective Bargaining Agreement (or addendum thereto), together with any applicable employee election forms, that (i) is among the Employer and an I.A.T.S.E. local Union or a Basic Crafts local Union (that is a Union named in paragraph (2), (4), (5), (7) or (8) of the definition of "Union" in Article I, Section 1 of this Exhibit) and (ii) meets the conditions set forth in resolutions adopted by the Directors of the MPI Plans. Such Applicable Employer shall continue to contribute on behalf of all other Employees.

### Section 2.  Nonaffiliated Employee Groups

A.  The contribution of an Employer required under Section 3. below shall apply to an Employer which designates a group of its Employees pursuant to Article I, Section 2.(a)(ii)(iii) and (iv) of the Trust Agreement as eligible Employees under this Health Plan and to Employees from such groups of Employees where such group of Employees is not covered by one of such collective bargaining agreements. In such case, the Employer's rate of contribution under the terms of the Health Plan shall be such rates as will form a consistent pattern with the obligations to make contributions of the Employers governed by Article II, Section 1B. hereof.

B.  Pursuant to Article I, Section 2.(a)(ii)(iii) and (iv) of the Trust Agreement, such nonaffiliated Employees are:

---

[16]  ADDED 4/23/03, effective 5/1/03  (Amendment LXXVI).
Section AMENDED 3/25/04 (Amendment LXXVIII), retroactively effective 9/22/03, Article II, Section 1.C.

Exhibit 2 - Page 280

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 86 of 108 Page ID
#:1620

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

Page 11

[17]1. An employee of this Health Plan or of the Motion Picture Industry Pension Plan, or the Motion Picture Industry Individual Account Plan, any Union, the Alliance of Motion Picture and Television Producers, the Motion Picture Association of America, The Entertainment Industry Foundation, the First Entertainment Credit Union, the Contract Services Administration Trust Fund, the Directors Guild of America Contract Administration, or the Directors Guild—Producer Training Plan;

2.   Eligible executive producers, producers, and associate producers as defined in and covered by a Producers Group Designation;

[18]3.   Production accountants as defined in and covered by a Production Accountants Group Designation; and

4.   Any other Employee who is not described in subparagraphs (1), (2), or (3) above and who is not included within a unit covered by a collective bargaining agreement, as set forth in a Nonaffiliate Group Agreement.

### Section 3.   Contribution Requirements - Nonaffiliated Groups

Subject to Section 4. below (regarding Controlling Employees), this Section 3 sets forth the contribution requirements for nonaffiliated Employees described in Section 2. above.

[19]A.   For all such Employees who are on the active payroll and who are classified by their Employer as exempt from the overtime provisions of the Fair Labor Standards Act, as amended, under the executive, administrative, professional or outside salesperson exemptions contributions shall be made for fifty-six (56) hours per week.

If vacation is taken in increments of less than one week, 11.2 hours may be deducted for each day of vacation. Notwithstanding the above, if the Employee's compensation is less than $250 for any week, the Employer shall only make contributions for such week for a number of hours (rounded down, if such number is not a whole number) equal to fifty-six (56) hours multiplied by a fraction, the numerator of which is the employee's compensation for the week and the denominator of which is $250 (the $250 amount set forth above shall be adjusted to reflect any changes in the salary test set forth in the regulations issued pursuant to the Fair Labor Standards Act).

1.   Contributions shall also be made for each hour described in subparagraph A. above for all nonaffiliated Employees of the Health Plan, the Motion Picture Pension Plan or Motion Picture Industry Individual Account Plan who were employed by one of such Employers on December 31, 1993, as well as for all Information Technology Department computer software employees who were employed by one of such Employers and contributed on at the fifty-six hour rate as of December 31, 2006.

---

[17]   Section AMENDED 3/25/04 (Amendment LXXVIII), retroactively effective 1/1/04, Article II, Section 2.B.1.
     Section AMENDED 8/24/05 (Amendment LXXXXIII), effective 8/24/05, Article II, Section 2.B.1. is amended.
[18]   Section AMENDED 8/26/98, retroactively effective 9/20/98 (Amendment LIX)
     Section AMENDED 12/18/02, effective 1/1/03 (Amendment LXXIV)
[19]   Section AMENDED 8/23/02 (Amendment LXXII).
     Section AMENDED 6/23/04 (Amendment LXXIX), retroactively effective 1/1/04, changes to Section 3.
     Section AMENDED 3/1/07 (Amendment LXXXXIX), retroactively effective 1/1/07.

Exhibit 2 - Page 281

Case 2:12-cv-00693-VBF-MAN   Document 60-2   Filed 04/18/14   Page 87 of 108   Page ID
#:1621

Page 12                                                                    Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

[20]2.   Effective January 1, 2003, for all such Employees described subparagraph A. above who are production accountants as defined in and covered by a Production Accountant Designation Agreement, and provided a written agreement exists between the production accountant and the Employer that provides for a six or seven day workweek, contributions shall be made as follows: (1) at the rate of sixty-three (63) hours per week for a six-day workweek or seventy-one (71) hours for a seven-day workweek, and (2) for the sixth day not worked on distant location, contributions for "on-call" employees shall be made for seven (7) hours and for the seventh day not worked on distant location, contributions for "on-call" employees shall be made for eight (8) hours.

[21]B.   For all other nonaffiliated Employees, effective July 25, 2004, contributions shall be made for the actual number of hours worked or guaranteed, whichever is greater. Notwithstanding the foregoing, the Employer shall not make contributions for an Employee for any day for a number of hours (rounded down, if such number is not a whole number) in excess of the compensation paid to the Employee for that day divided by the federal minimum wage rate.

[22]C.   Contributions by Employers on behalf of nonaffiliated Employees shall be made at the composite rate set forth in Article II, Section 1.B.2.

[23]D.   Notwithstanding paragraph C. above, for production accountants who are employed in New York or New Jersey, or hired in New York or New Jersey to perform services outside those states, but within the limits of the U.S., its territories and Canada shall be made as follows:

1.   Employers who are $15 million Contributors as that term is defined above, shall make contributions at the rates set forth in Article II, Section 1.B.6.(B) and (C) above (the "Local 161 rates");

2.   All other Employers shall make contributions at the composite rate set forth in Article II, Section 1.B.3. (the "east coast rate").

---

[20]   Section AMENDED 8/26/98, retroactively effective 9/20/98 (Amendment LIX)
       Section AMENDED 12/18/02, effective 1/1/03 (Amendment LXXIV)
[21]   Section AMENDED 6/23/04, effective 7/25/04 (Amendment LXXIX), Article II, Section 3.B.
[22]   Section AMENDED by Resolution on 5/23/03, effective 8/3/03.
[23]   Section ADDED 6/22/05, retroactively effective 1/1/05. (Amendment LXXXXII) (Subsection (D) was added.)

Exhibit 2 - Page 282

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

Page 13

[24]**Section 4.      Controlling Employees**

[25]A.  Contributions by Employers which are privately held corporations, limited liability companies ("LLC"), or other eligible business entities, on behalf of any Controlling Employee shall be made at the composite rates set forth in Article II, Section 1, Paragraph B., above, as set forth below.  A Controlling Employee of an Employer, as described in the previous sentence, shall mean any Employee (excluding any Employee described in Section 2., Paragraph B.1. above regarding named Employers), which Employee is also a shareholder of the corporation or member of the LLC, or is an officer of the Employer or the spouse of such a shareholder, member of the LLC or officer, or is similarly situated as an employee or spouse of any other eligible business entity, and is not the only Employee of the Employer who works under an applicable collective bargaining agreement.  The Employer of such Controlling Employee shall be called a Controlled Employer.  For purposes of this provision, "privately held corporations or limited liability companies" include such entities whose shares are not publicly traded on a securities exchange or over the counter market.

[26]Effective September 1, 2002, as set forth in Article I, subsection 2(c), certain directors of photography (whether or not they previously participated in the Plan) who do not, and have not, performed work for the Controlled Employer under any Collective Bargaining Agreement (other than the Television Commercials Production Contract, Northeast Corridor and Outer Region, between A.I.C.P. and I.A.T.S.E. #600) shall not be Employees, Controlling Employees or Participants in the Plan for the Controlled Employer on and after September 1, 2002.  Thus, the Controlled Employer shall not contribute on behalf of such person, but shall continue to contribute on behalf of other Employees (and such other Employees are not impacted by these rules).  If any other Collective Bargaining Agreement covering directors of photography involved in commercial production provides that contributions to the Active or Retiree Funds of the Plan are not due for Controlling Employees in a manner similar to the Contract, then the rules set forth in this paragraph and Article I, subsection 2(c) of the Trust Agreement shall also apply to such Collective Bargaining Agreement, except that such rules shall be effective as of the date contributions cease for Controlling Employees under such Collective Bargaining Agreement (instead of September 1, 2002.)

[27]1.  Contributions shall be made for such Employee for fifty-six (56) hours per week, and for not less than forty-eight (48) weeks in any calendar year, regardless of the number of weeks in which the Employee performs any work.

However, for Employees working under the following Collective Bargaining Agreements at the times specified below, contributions shall be made for such Employee for forty (40) hours per week and for not less than fifty (50) weeks in any calendar year, regardless of the number of weeks in which the Employee performs any work:

---

| | |
|---|---|
| [24] | Section AMENDED 8/23/01   (Amendment LXVI) |
| [25] | Section AMENDED 6/23/04, retroactively effective 1/1/04 (Amendment LXXIX), Section 4.A. |
| | Section AMENDED 2/5/09, (Amendment CIV), effective 2/25/09. |
| [26] | Section AMENDED by Resolution on 12/18/02, retroactively effective 8/28/02. |
| [27] | Section AMENDED by Resolution on 4/22/98, effective 9/20/98. |
| | Section AMENDED 9/8/04 (Amendment LXXX) |

Rev. 1/10

Exhibit 2 - Page 283

Case 2:12-cv-06093-VBF-MAN Document 66-2 Filed 04/18/14 Page 89 of 108 Page ID
#:1623

Page 14

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

(i)    effective July 1, 2002 until December 31, 2002, Employees working under an agreement specified in Exhibit A, Article II, Section 1.B.3 (an East Coast Local 700 agreement),

(ii)    Employees working under the Local 700 East Coast Documentary Agreement, effective at the date the Employer became signatory to such Agreement, and

(iii)    effective March 25, 2004, Employees working under Collective Bargaining Agreements described in Article II, Section 1.B.3 (East Coast agreements).

The contribution period may be reduced by the number of weeks for which the Employee establishes by documentation deemed adequate by the Plan that the Employee is receiving unemployment or disability benefits. The contribution amount for each week may be reduced by the amount of contributions made on behalf of the Employee for that week by any other Employer party to the Plan.

2. Contributions shall commence on the first day of the week in which the individual becomes a Controlling Employee and shall continue under Section 4.A. until the occurrence of one or more of the following events:

a.    The Controlled Employer ceases to have an obligation to contribute to the Plan on behalf of the Employees in such classifications under any collective bargaining agreement; or

b.    the formal dissolution of the Controlled Employer as evidenced by documentation deemed adequate by the Plan; or

c.    the Employee ceases to be a Controlling Employee, as evidenced by documentation deemed adequate by the Plan, unless the Plan has reasonable grounds to believe that the Controlling Employee continues to have control over the corporation or LLC; or

d.    retirement of the Employee under the Pension Plan or other evidence which is satisfactory (in the sole discretion of the Directors) to show that the individual is no longer working (directly or indirectly) for the Controlled Employer as a Controlling Employee and does not intend to work for the Controlled Employer as an Employee in the future; or

[28]e.    the first day the Employee is considered a Retired Employee under the Motion Picture Industry Health Plan (Retired Employees' Fund), regardless of whether the employee later becomes eligible for benefits under the Active Plan.

[29]f.    at such time as no Employee, including the Controlling Employee, has worked under the Controlled Employer's collective bargaining agreement(s) for a period of at least 12 months.

[28]    Subsection ADDED 8/23/02 (Amendment LXXII)
[29]    Subsection ADDED 2/5/09 (Amendment CIV), effective 2/25/09.

Case 2:12-cv-06693-VBF-MAN   Document 60-2   Filed 04/18/14   Page 90 of 108   Page ID
#:1624

Motion Picture Industry Health Plan                                                        Page 15
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

[30]g. at such time as no Employee(s), other than the Controlling Employee,
has worked under the Controlled Employer's collective bargaining
agreement(s) requiring contributions to the Plan for a minimum of 1,500
hours in the aggregate among all such Employees during any 12-month
period.

If the obligation ceases pursuant to an event in a. through d. above and the individual
subsequently re-qualifies as a Controlling Employee as defined in Paragraph A. above, the
obligation shall immediately recommence pursuant to this Paragraph A. and shall continue until
the occurrence of an event in a. through e., above. If the obligation ceases pursuant to an event in
a. through d., above, and the individual subsequently re-qualifies as an Employee who is not a
Controlling Employee or the obligation ceases pursuant to e. above and the individual re-qualifies
as an Employee (whether or not he is a Controlling Employee), the Employer shall make
contributions pursuant to the rules applicable for Union Employees under Exhibit A, Article II,
Section 1, but the contribution rules for Controlling Employees under this Paragraph A shall not
apply. If the obligation ceases pursuant to an event in f. or g., above, and the individual
subsequently re-qualifies as a Controlling Employee as defined in Paragraph A. above, the
Controlled Employer shall not be permitted to participate in the Plan and recommence making
contributions on behalf of such Controlling Employee and such Controlling Employee shall not
be entitled to participate in the Plan except upon application to the Board of Directors which may,
in its sole discretion, reinstate the Controlled Employer and the Controlling Employee upon such
terms and conditions as may be established by the Directors.

B.    This Section 4. shall not apply to an Employee employed by a "loanout company". The term
"loanout company" is defined as a company controlled by the loaned out Employee, who is the
only employee of the loanout company.

[31]C. **Loan-Out Companies**

1.    A Loan-Out Company is a company controlled by the loaned out employee, who is the
only employee of the loan-out company who performs work covered by a collective
bargaining agreement.

2.    Controlling Employees of a loan-out company shall not be deemed Employees unless
contributions are payable directly to the Plan by the Producer borrowing the services of the
employee from the loan-out company,. is directly employed by another Employer.

3.    If, during any 12-month period, no Employee other than a Controlling Employee has
worked under the Controlled Employer's collective bargaining agreement(s) for a minimum
of 1,500 hours in the aggregate for all such Employees, the company shall be considered a
loan-out company for purposes of this paragraph, and shall remain a loan-out company until
such time as the company advises the Plan that it meets the above 1500 hour rule and the
Board of Trustees approves a change of status.

4.    Any Employer participating in the Plan, which thereafter becomes a Controlled
Employer by virtue of having a Controlled Employee, must be approved by the Board of
Trustees, in their sole discretion, to continue participating in the Plan.

---

[30]   Paragraph ADDED 2/5/09 (Amendment CIV), effective 2/25/09.
[31]   ADDED 2/5/09 (Amendment CIV), effective 2/25/09 Subsection C is added.

Exhibit 2 - Page 285

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

## ARTICLE III - RETIRED EMPLOYEES FUND

This schedule constitutes a composite Industry pattern of the rates of contributions provided for in the respective Collective Bargaining Agreements between the Employers and the Unions and Guilds which are parties to the Retired Employees Fund (the "Retiree Fund") of the Motion Picture Industry Health Plan (the "Health Plan"). The Unions are set forth in Article I, Section 1. above.

### [32]Section 1.    Contribution Requirements - Union Groups

Contributions to the Retiree Fund of the Health Plan by Employers whose Employees work for such Employers within any job classification covered by a Collective Bargaining Agreement between such Employer and either a Union or Guild named herein shall be made as follows:

A.  1. In accordance with Article V, Section 1. and 2. of the Trust Agreement, regarding Rates and Periods of Contributions, the Employer shall, for the period commencing July 31,2006, to and including July 31, 2009, pay to the Motion Picture Industry Pension Plan as agent for the Retiree Fund the amounts set forth in Paragraph B. below, for each work hour guaranteed Employee by such Employer or each hour worked by Employee for such Employer, whichever is greater, on or after July 31, 2006, to and including July 31, 2009 under the terms of such agreement, including straight time and overtime hours on any day worked.

Where a minimum call is applicable and the Employee works less than the minimum call, then the minimum call shall constitute time worked. Employees subject to such agreement employed for full weeks under guaranteed weekly salary schedules shall be contributed for and credited with not less than the hours guaranteed the Employees under such guaranteed weekly salary schedule. In the event such Employee (other than an "on-call" or other salaried, exempt Employee) works in excess of such applicable number of hours guaranteed in such weekly schedule, then additional contributions shall be made for such excess hours worked.

For the purpose of this provision, for the sixth and seventh day not worked on distant location, contributions for Employees (other than "on-call" or other salaried, exempt Employees) shall be based on eight (8) hours for each day.

Except as provided in the next paragraph, for the purpose of this provision, studio, nearby and distant location employment under "on-call" weekly salary schedules shall be considered as a guarantee of twelve (12) hours per day during any partial workweek, fifty-six (56) hours during any five-day workweek, sixty-three (63) hours during any six-day workweek and seventy-one (71) hours during any seven-day workweek.

However, effective July 31, 2006 to and including July 31, 2009 with respect to employment under the 2003 Producer – I.A.T.S.E. and M.P.T.A.A.C. Basic Agreement, studio, nearby and distant location employment under "on-call" weekly salary schedules

---

[32]   Section AMENDED by Resolution on 5/23/03, effective 8/3/03.
Section AMENDED on 3/8/06 (Amendment LXXXXVI), retroactively effective 1/29/06, numbering was changed and a new section A.2. was added.
Section AMENDED on 6/26/08 (Amendment CI), retroactively effective 8/1/06.

Exhibit 2 - Page 286

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/16/14 Page 92 of 108 Page ID #:1626

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

Page 17

shall be considered as a guarantee of twelve (12) hours per day during any partial workweek, sixty (60) hours during any five-day workweek, sixty-seven (67) hours during any six-day workweek and seventy-five (75) hours during any seven-day workweek. Such guaranteed hours shall also apply to employment under any other Collective Bargaining Agreement (including related side letters) that provides such hours, but only during the period specified in such Collective Bargaining Agreement.

In all cases, for the sixth day not worked on distant location, contributions for "on-call" or other salaried, exempt employees shall be based on seven (7) hours. For the seventh day not worked on distant location, contributions for "on-call" or other salaried, exempt employees shall be based on eight (8) hours.

In all cases, contributions for "on-call" or other salaried, exempt Employees shall be based on such number of guaranteed hours only.

2. Notwithstanding the foregoing, and only in the case of freelance casting directors and freelance associate casting directors defined in Article I, Section 2.(b)(I) of the Trust Agreement, effective January 29, 2006, to and including September 30, 2008, in accordance with Paragraph B.2. below, contributions for such "on-call" Employees shall be based on sixty (60) hours per week; provided, however, that for such Employees employed on a weekly schedule, who work a partial workweek [i.e., less than five (5) days] contributions shall be based on twelve (12) hours, for each day worked. For such Employees employed on an hourly basis, contributions shall be made for each hour worked or guaranteed, whichever is greater.

[33]B. 1. Except as provided below, the Employer shall continue to pay the Motion Picture Industry Pension Plan as agent for the Retiree Fund for the period commencing August 1, 2000 and continuing until changed by the Directors, twenty-seven and one-tenth cents (27.1¢), for each hour described in Paragraph A, above.

[34]2. Notwithstanding Paragraph B.1., above, with respect to Covered Participants, the Employer shall pay to the Pension Plan as agent for the Retiree Fund for employment during the periods set forth below (or at such other times as set forth in the applicable Collective Bargaining Agreement), unless increased pursuant to Article IV below, for each hour described in Paragraph A, above, as follows:

(1) For the period commencing August 3, 2003 through and including July 29, 2006, thirty-two and one-tenth cents (32.1¢); and

---

[33] Section AMENDED 12/9/98, effective 1/1/99 (Amendment LX).
Section AMENDED 11/20/03, effective 1/1/04 (Amendment LXXVII) Article III, Section 1.B. was changed in its entirety.
Section AMENDED 6/23/04, retroactively effective 1/1/04 (Amendment LXXIX) Article III, Section 1.B.1.

[34] Section AMENDED 12/20/00 (Amendment LXV).
Section AMENDED 6/26/02 (Amendment LXX).
Section AMENDED 11/20/03, effective 1/1/04 (Amendment LXXVII) Article III, Section 1.B. was changed in its entirety.
Section AMENDED 2/23/05 (Amendment LXXXVIII)
Section AMENDED 6/28/06 (Amendment LXXXXVII), effective 7/30/06. Section B.2. was amended.

Case 2:12-cv-00093-VBF-MAN Document 60-2 Filed 04/18/14 Page 93 of 108 Page ID #:1627

Page 18

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

(2)    For the period commencing on July 30, 2006 through and including July 31, 2009, thirty-seven and one-tenth cents (37.1¢).

For purposes of this Paragraph B.2., a "Covered Participant" shall mean (a) a Participant who is not covered by a Collective Bargaining Agreement between the Employers and the Unions and (b) a Participant who is covered by one of the following Collective Bargaining Agreements:

(i)    the 2003 Producer—I.A.T.S.E. and M.P.T.A.A.C. Basic Agreement, or any successor agreements thereto; or

(ii)   any other Collective Bargaining Agreement (including related side letters) that provides for increases in contributions to this Plan in the same manner as set forth in this Paragraph B.2.

[35]3. Notwithstanding Paragraphs B.1 and B.2., the following contribution rate shall apply with respect to:

(i)    camerapersons who are working under the Amendment Agreement of May 1, 1997 between Producer and the I.A.T.S.E. and Local #600 thereof (known as the "Local #600 Amendment Agreement") (or under any other Local #600 Collective Bargaining Agreement that provides for contribution rates as set forth in this Section 1.B.3. for all hours after the effective date of such rates),

(ii)   editorial and post-production sound employees who are working under the January 1, 2002 Amendment Agreement to the Agreement of December 10, 1999 between Producer and I.A.T.S.E. and M.P.T.A.A.C. and Local #700 thereof ('1999 Local Post Production Agreement') for all hours worked on or after July 1, 2002 (or under any other Local #700 Collective Bargaining Agreement that provides for contribution rates as set forth in this Section 1.B.3. for all hours after the effective date of such rates),

(iii)  studio mechanics who are working under any Collective Bargaining Agreement with Motion Picture Studio Mechanics, Local #52, I.A.T.S.E. (unless such studio mechanic is described in Article II, Section 1.B.4. or 1.B.5. below) for all hours worked on or after January 1, 2004,

[36](iv)   employee(s) who are working under a Sideletter (as defined below) that provides that such employee(s) who would otherwise participate in, and have contributions made to, other pension and/or health plans (the "away plans") with respect to employment in the Industry by a specified employer pursuant to a collective bargaining agreement on one or more specified projects (or all

---

[35]   Section AMENDED 6/23/04 (Amendment LXXIX), retroactively effective 1/1/04, Article III, Section 1.B.3. & 1.B.4.
Section AMENDED 11/3/04 (Amendment LXXXI), effective 1/23/05.
Section AMENDED 12/20/04 (Amendment LXXXIII), retroactively effective 1/1/04. Art. III, Section 1.B.3. was restated in its entirety.
ADDED – 12/20/04 (Amendment LXXXIV), effective 1/1/05, Art. III, Section 1.B.3(v) was added.
Section AMENDED – 12/20/04 (Amendment LXXXIV), effective 1/1/05, the final paragraph of Art. III, Sec. 1.B.3. was amended in its entirety, removing the "3.(A)" designation and being restated.

[35]   Section AMENDED 12/21/05 (Amendment LXXXXV), effective 12/21/05.

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 94 of 108 Page ID
#:1628

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

Page 19

projects) will instead participate in one or more of this Plan, the Individual Account Plan and the Motion Picture Industry Pension Plan. [In that case, then in accordance with and subject to Section 2(b)(E) of Article I of the Plan and the Sideletter, the particular employee shall be an Employee hereunder and the specified employer and union to said Sideletter will be considered an Employer and Union, respectively, solely with respect to said specified Employee(s).] Notwithstanding Section 1.A. above, said Employer will be required to contribute only for the hours set forth in the Sideletter with respect to said Employee(s), provided that the Employer must contribute for each work hour guaranteed Employee by such Employer or each hour worked by Employee for such Employer, whichever is greater, under the terms of such Sideletter and related agreements, including straight time and overtime hours on any day worked. Except for employee(s) specified in the Sideletter, said Employer shall not contribute on behalf of any other of said Employer covered by the applicable collective bargaining agreement. A Sideletter is a collective bargaining agreement (or addendum thereto), together with any applicable employee election forms, that (i) is among the employer and an I.A.T.S.E. local union and (ii) meets the conditions set forth in resolutions adopted by the Directors of the Plan, and

[37](v)  script supervisors, production office coordinators and assistant production office coordinators, production accountants, payroll accountants or assistant production accountants who are working under any Collective Bargaining Agreement with Motion Picture Script Supervisors and Production Office Coordinators, Local #161, I.A.T.S.E. (unless such person is described in Article III, Section 1.B.6. for all hours worked on or after January 1, 2005.

With respect to such Employees, the Employer shall pay into the Plan for each hour described in Section 1.A. above (or, in the case of an Employee described in Section 1.B.3.(iv), the hours described in said Section 1.B.3.(iv)):

(1)  for the period commencing January 1, 1999, a total of seventy-nine and one tenth cents (79.1¢);

(2)  for the period commencing August 26, 2001, a total of one dollar and two cents ($1.02);

(3)  for the period commencing January 26, 2003, a total of one dollar, seven and eight tenths cents ($1.078);

(4)  for the period commencing January 25, 2004, a total of one dollar, twenty-seven and eighty-nine tenths cents ($1.2789);

---

[37]  Section AMENDED 10/26/05 (Amendment LXXXXIV), retroactively effective 1/1/05, Article III, Subsection 1.B.3.(v) is amended.

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 95 of 108 Page ID #:1629

Page 20

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

[38](5) for the period commencing January 23, 2005, a total of one dollar, thirty-eight and seventy-seven tenths cents ($1.3877);

[39](6) for the period commencing January 22, 2006, a total of one dollar, forty-four and sixty-eight tenths cents ($1.4468); and

[40](7) for the period commencing January 20, 2008, for a total of one dollar, twenty-seven and twenty-two tenths cents ($1.2722),

[41](8) for the period commencing January 25, 2009, a total of one dollar, thirty-three and forty-three tenths cents ($1.3343), and,

[42](9) for the period commencing January 24, 2010, a total of one dollar, sixteen cents ($1.16), (unless increased pursuant to Article IV, below) for each hour described in Section 1.A., above. This rate shall be reviewed and subject to change not more frequently than once per year. The Plan shall give Employer not less than ninety (90) days advance notice of a change in such rates.

Notwithstanding the foregoing, if Employer is signatory to the I.A.T.S.E. Basic Agreement and the Employer, together with its related or affiliated entities, has made Supplemental Markets payments to the Motion Picture Industry Plans in an aggregate amount of not less than fifteen million dollars ($15,000,000) during the three (3) year period beginning January 1, 1994 and ending on December 31, 1996, or in any subsequent three (3) consecutive year period, then Employer and its related and affiliated entities shall make contributions at the rate set forth in Section 1.B.2. above with respect to camerapersons and editorial and post-production sound employees described in Section 1.B.3.(i) and (ii), and employees described in Section 1.B.3.(iv). Such an Employer and its related and affiliated entities shall make contributions at the rate set forth in Section 1.B.4. below with respect to studio mechanics described in Section 1.B.3.(iii). Such an Employer and its related and affiliated entities shall make contributions at the rate set forth in Section 1.B.6. below with respect to script supervisors, production office coordinators and assistant production office coordinators described in Section 1.B.3.(v). For these purposes, the Supplemental Markets payments made by Columbia and TriStar shall be aggregated and the Supplemental Markets payments made by Amblin Entertainment Inc. and Dreamworks shall be aggregated. Such Employers are referred to as the "$15 million Contributors."

[43]4, (A) Notwithstanding Sections 1.B.1., B.2. and B.3., the following contribution rate applies with respect to studio mechanics who are working under the Memorandum of

---

[38] Section AMENDED 10/26/05 (Amendment LXXXXIV), effective 10/26/05, Article III, Section 1.B.3.(5) is amended.

[39] ADDED – 10/26/05 (Amendment LXXXXIV), effective 10/26/05, Article III, Section 1.B.3.(6) is added.
Section AMENDED 10/25/07 (Amendment C), effective 10/25/07.

[40] ADDED – 10/25/07 (Amendment C), effective 10/25/07.
Section AMENDED 10/30/08 (Amendment CIII), effective 1/25/09, Subsection (7) was changed.
Section AMENDED 10/29/09 (Amendment CV), effective 1/24/09, Subsection (7) was changed.

[41] ADDED – 10/30/08 (Amendment CIII), effective 1/25/09, Subsection (8) was added.
Section AMENDED 10/29/09 (Amendment CV), effective 1/24/10, Subsection (8) was changed.

[42] ADDED – 10/29/09 (Amendment CV), effective 1/24/10, Subsection (9) was added.

[43] ADDED – 11/20/03, effective 1/1/04 (Amendment LXXVII) Article III, Section 1.B.4. was added.
*(Footnotes continued on next page.)*

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

Agreement of May 16, 2002 for Feature and Television Production Contract with Motion Picture Studio Mechanics, Local #52, I.A.T.S.E., or its successor agreements, (the "Contract"), but only if working for

- (i) an Employer listed in the preamble of the Contract or an Employer related or affiliated with such listed Employer,

- (ii) NBC Studios, Inc. and Northern Entertainment Productions, Inc., or

- (iii) a $15 million Contributor (as defined in Section 1.B.3A. above). These rates apply for all hours worked on or after January 1, 2004.

(B) With respect to such Employees who are working on television motion pictures, the Employer shall pay into the Plan for each hour described in Section 1.A. above,

- (i) For the period commencing January 1, 2004 to and including May 13, 2006, a total of $.323 for each hour described in Section 1.A. above.

- (ii) For the period commencing May 14, 2006 and continuing, for each hour described in Section 1.A. above, the rates designated in Section 1.B.2., above.

(C) With respect to such Employees who are working on features, the Employer shall pay into the Plan for each hour described in Section 1.A. above:

- (i) For the period commencing January 1, 2004 to and including May 13, 2006, a total of $.915 for each hour described in Section 1.A. above.

- (ii) For the period commencing May 14, 2006 and continuing, for each hour described in Section 1.A. above, the rates designated in Section 1.B.2., above.

- (D) With respect to those Employees working outside of the jurisdiction of I.A.T.S.E., Local 52 who are referred to in the May 16, 2006 Motion Picture Studio Mechanics, Local 52, I.A.T.S.E. Feature and Television Production Contract with Major Producers, the Employer shall pay into the Plan, for each hour described in Section 1(a), above, and for the period commencing on May 14, 2006, the rates designated in Section 1.B.2., above.

[44]5.    E.U.E. Screen Gems shall pay to the Retiree Health Fund, for each hour described in subsection 1.A., above, for Employees working under its Collective Bargaining Agreement with I.A.T.S.E. Local #52;

- (i) $.47 for the period commencing January 1, 2004 through November 30, 2004;

---

Section AMENDED 6/23/04 (Amendment LXXIX), retroactively effective 1/1/04, Article III, Section 1.B.4.
Section AMENDED 8/23/06 (Amendment LXXXXVIII), retroactively effective 5/14/06.
[44]    ADDED 6/23/04, retroactively effective 1/1/04 (Amendment LXXIX), New Section 1.B.5.
Section REPLACED in its entirety 12/20/04 (Amendment LXXXV)

Rev. 1/10

Exhibit 2 - Page 291

Case 2:12-cv-06093-VBF-MAN  Document 60-2  Filed 04/18/14  Page 97 of 108  Page ID
#:1631

Page 22                                                          Motion Picture Industry Health Plan
                                                                  (Inclusive of Amendments I through CVI)
                                                                  Exhibit A(29), cont'd.

    (ii)   $.82, for the period commencing December 1, 2004 through
          November 30, 2005; and

    (iii)  $.99 for the period commencing December 1, 2005 through November
           30, 2006.

[45]6.  (A) Notwithstanding Sections 1.B.1., 1.B.2. and 1.B.3., the following contribution
rates apply with respect to script supervisors, production office coordinators and
assistant production office coordinators who are working under the Motion Picture
Script Supervisors and Production Office Coordinators, Local #161, I.A.T.S.E. and
M.P.T.A.A.C. Motion Picture Theatrical and TV Series Production Contract,
entered into March 3, 2003 or its successor agreements (the "Local 161 Contract"),
but only if working for

    (i)    an Employer listed in the preamble of the Local 161 Contract or an
          Employer related or affiliated with such listed Employer,

    (ii)   NBC Studios, Inc. and Northern Entertainment Productions, Inc., or

    (iii)  a $15 million Contributor (as defined in Section 1.B.3. above).

These rates apply for all hours worked on or after January 1, 2005. Contribution
rates for all other script supervisors, production office coordinators and assistant
production office coordinators are described in Section 1.B.3. above.

(B) With respect to such Employees who are working on television, the Employer
shall pay into the Plan for each hour described in Section 1.A. above,

    (i)    For the period commencing January 1, 2005 to and including March 2,
          2007, a total of $.323 for each hour described in Section 1.A. above.

    (ii)   For the period commencing March 3, 2007 and continuing, for each hour
          described in Section 1.A. above, an amount equal to the rate set forth in
          Article III, Section 1.B.4.(B)(ii).

(C) With respect to such Employees who are working on theatrical motion
pictures, the Employer shall pay into the Plan for each hour described in Section
1.A. above:

    (i)    For the period commencing January 1, 2005 to and including March 2,
          2007, a total of $.915 for each hour described in Section 1.A. above.

    (ii)   For the period commencing March 3, 2007 and continuing, for each hour
          described in Section 1.A. above, an amount equal to the rate set forth in
          Article III, Section 1.B.(4)(C)(ii).

[46](D) With respect to those Employees working outside of the geographic
jurisdiction of the Local 161 Contract who are referred to in the Local 161
Contract, the Employer shall pay into the Plan, for each hour described in Section

---

[45]   ADDED 12/20/04, effective 1/1/05 (Amendment LXXXIV), Subsection 6 was added.
     Section AMENDED 10/25/07, retroactively effective 3/3/07 (Amendment C)
[46]   Subsection (D) ADDED 10/25/07, retroactively effective 3/3/07 (Amendment C)

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

1.A. above, and for the period commencing on March 3, 2007, the rates
designated in Section 1.B.2. above.

[47]C.    This subsection C. applies if a Sideletter (as defined below) provides that a particular
Employee will participate in, and contributions will be made to, his or her home pension
and health plans with respect to employment by a specified Employer ("Applicable
Employer") on one or more specified projects (or all projects) in lieu of one or more of
this Plan, the Motion Picture Industry Individual Account Plan, and he Motion Picture
Industry Pension Plan (the "MPI Plans"). In that case, then in accordance with and
subject to the Sideletter, the applicable Employer shall not contribute to this Plan on
behalf of such Employee with respect to the Employee's employment on the project(s)
specified by the Sideletter. A Sideletter is a Collective Bargaining Agreement (or
addendum thereto), together with any applicable employee election forms, that (i) is
among the Employer and an I.A.T.S.E. local Union or a Basic Crafts local Union (that is
a Union named in paragraph (2), (4), (5), (7) or (8) of the definition of "Union" in
Article, Section 1 of this Exhibit) and (ii) meets the conditions set forth in resolutions
adopted by the Directors of the MPI Plans. Such Applicable Employer shall continue to
contribute on behalf of all other Employees.

## Section 2.    Nonaffiliated Employee Groups

A.    The contribution of an Employer required under Section 3. below shall apply to an
Employer which designates a group of its Employees pursuant to Article I, Section 2.(a)(ii)(iii)
and (iv) of the Trust Agreement as eligible Employees under this Retiree Fund and to Employees
from such groups of Employees where such group of Employees is not covered by one of such
collective bargaining agreements. In such case, the Employer's rate of contribution under the
terms of the Retiree Fund shall be such rates as will form a consistent pattern with the obligations
to make contributions of the Employers governed by Article II, Section 1 hereof.

B.    Pursuant to Article I, Section 2. (a)(ii)(iii) and (iv) of the Trust Agreement, such
nonaffiliated Employees are:

[48]1.    An employee of this Health Plan or of the Motion Picture Industry Pension Plan, or
the Motion Picture Industry Individual Account Plan, any Union, the Alliance of Motion
Picture and Television Producers, the Motion Picture Association of America, The
Entertainment Industry Foundation, the First Entertainment Credit Union, the Contract
Services Administration Trust Fund, the Directors Guild of America Contract
Administration, or the Directors Guild—Producer Training Plan;

2.    Eligible executive producers, producers, and associate producers as defined in and
covered by a Producers Group Designation:

[49]3.    Production accountants as defined in and covered by a Production Accountants
Group Designation; and

---

[47]    Subsection ADDED 4/23/03, effective 5/1/03 (Amendment LXXVI).
Section AMENDED 3/25/04 (Amendment LXXVIII), retroactively effective 9/22/03, Article III, Section 1.C.
[48]    Section AMENDED 3/25/04 (Amendment LXXVIII), retroactively effective 1/1/04, Article III, Section 2.B.1.
Section AMENDED 8/24/05 (Amendment LXXXXIII), effective 8/24/05, Article III, Section 2.B.1. is
amended.
[49]    Section AMENDED 8/26/98, retroactively effective 9/20/98 (Amendment LIX)
*(Footnotes continued on next page.)*

Exhibit 2 - Page 293

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

4.    Any other Employee who is not described in subparagraphs (1,), (2), or (3) above and who is not included within a unit covered by a collective bargaining agreement, as set forth in a Nonaffiliate Group Agreement.

## Section 3.    Contribution Requirements - Nonaffiliated Groups

Subject to Section 4. below (regarding Controlling Employees), this Section 3 sets forth the contribution requirements for nonaffiliated Employees described in Section 2. above.

[50]A.    For all such Employees who are on the active payroll and who are classified as exempt from the overtime provisions of the Fair Labor Standards Act, as amended, under the executive, administrative, professional or outside salesperson exemptions, contributions shall be made on the basis of fifty-six (56) hours per week, and for not less than forty-eight (48) weeks in any calendar year, regardless of the number of weeks in which the Employee performs any work.

If vacation is taken in increments of less than one week, 11.2 hours may be deducted for each day of vacation, provided that contributions are made on not less than forty-eight (48) weeks in any calendar year. Notwithstanding the above, if the Employee's compensation is less than $250 for any week, the Employer shall only make contributions for such week for a number of hours (rounded down, if such number is not a whole number) equal to fifty-six (56) hours multiplied by a fraction, the numerator of which is the employee's compensation for the week and the denominator of which is $250 (the $250 amount set forth above shall be adjusted to reflect any changes in the salary test set forth in the regulations issued pursuant to the Fair Labor Standards Act).

1.    Contributions shall also be made for each hour described in subparagraph A above for all nonaffiliated Employees of the Health Plan, the Motion Picture Pension Plan or the Motion Picture Industry Individual Account Plan who were employed by on of such Employers on December 31, 1993, as well as for all Information Technology Department computer software employees who were employed by one of such Employers and contributed on at the fifty-six hour rate as of December 31, 2006.

[51]2.    Effective January 1, 2003, for all such Employees described subparagraph A. above who are production accountants as defined in and covered by a Production Accountant Designation Agreement, and provided a written agreement exists between the production accountant and the Employer that provides for a six or seven day workweek, contributions shall be made as follows: (1) at the rate of sixty-three (63) hours per week for a six-day workweek or seventy-one (71) hours for a seven-day workweek, and (2) for the sixth day not worked on distant location, contributions for "on-call" employees shall be based on seven (7) hours and for the seventh day not worked on distant location, contributions for "on-call" employees shall be based on eight (8) hours.

---

[50]    Section AMENDED 12/18/02, effective 1/1/03 (Amendment LXXIV)
       Section AMENDED 10/23/02 (Amendment LXXII).
       Section AMENDED 3/1/07 (Amendment LXXXXIX), retroactively effective 1/1/07.
[51]    Section AMENDED 8/26/98, retroactively effective 9/20/98 (Amendment LIX)
       Section AMENDED 12/18/02, effective 1/1/03 (Amendment LXXIV)

Exhibit 2 - Page 294

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 100 of 108 Page ID #:1634

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

Page 25

[52]B.  For all other nonaffiliated Employees, effective July 25, 2004, contributions shall be made for the actual number of hours worked or guaranteed, whichever is greater. Notwithstanding the foregoing, the Employer shall not make contributions for an Employee for any day for a number of hours (rounded down, if such number is not a whole number) in excess of the compensation paid to the Employee for that day divided by the federal minimum wage rate.

[53]C.  Contributions by Employers on behalf of nonaffiliated Employees shall be made at the composite rate set forth in Article III, Section 1., Paragraph B.2.

[54]D.  Notwithstanding paragraph C. above, for production accountants who are employed in New York or New Jersey, or hired in New York or New Jersey to perform services outside those states, but within the limits of the U.S., its territories and Canada shall be made as follows:

    1.  Employers who are $15 million Contributors as that term is defined above, shall make contributions at the rates set forth in Article III, Section 1.B.6.(B) and (C) above (the "Local 161 rates");

    2.  All other Employers shall make contributions at the composite rate set forth in Article III, Section 1.B.3. above (the "east coast rate").

## Section 4.  Controlling Employees

[55]A.  Contributions by Employers which are privately held corporations (or, effective December 26, 1999, limited liability company ("LLC")) on behalf of any Controlling Employee shall be made at the composite rates set forth in Section 1, Paragraph B., above, as set forth below. A Controlling Employee of an Employer, as described in the previous sentence, shall mean any Employee (excluding any Employee described in Section 2., Paragraph B.1. above regarding named Employers), who is also a shareholder of the corporation, member of the LLC or an officer of the Employer or the spouse of such a controlling shareholder (or member of the LLC) or officer. The Employer of such Controlling Employee shall be called a Controlled Employer. For purposes of this provision, "privately held corporations or limited liability companies" include any such entity whose shares are not publicly traded on a securities exchange or over the counter market.

[56]Effective September 1, 2002, as set forth in Article I, subsection 2(c), certain directors of photography (whether or not they previously participated in the Plan) who do not, and have not, performed work for the Controlled Employer under any Collective Bargaining Agreement (other than the Television Commercials Production Contract, Northeast Corridor and Outer Region, between A.I.C.P. and I.A.T.S.E. #600) shall not be Employees, Controlling Employees or Participants in the Plan for the Controlled Employer on and after September 1, 2002. Thus, the Controlled Employer shall not contribute on behalf of such person, but shall continue to contribute on behalf of other Employees (and such other Employees are not impacted by these

---

[52]  Section AMENDED 6/23/04, effective 7/25/04 (Amendment LXXIX), Article III, Section 3.B.

[53]  Section AMENDED by Resolution on 5/23/03, effective 8/3/03.

[54]  ADDED 6/22/05, retroactively effective 1/1/05. (Subsection (D) is added.)

[55]  Section AMENDED 10/23/02 (Amendment LXXII).
    Section AMENDED 6/23/04 (Amendment LXXIX), retroactively effective 1/1/04, Section 4.A.

[56]  Section AMENDED by Resolution on 12/18/02, retroactively effective 8/28/02.

Exhibit 2 - Page 295

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 101 of 108 Page ID #:1635

Page 26

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

rules). If any other Collective Bargaining Agreement covering directors of photography involved in commercial production provides that contributions to the Active or Retiree Funds of the Plan are not due for Controlling Employees in a manner similar to the Contract, then the rules set forth in this paragraph and Article I, subsection 2(c) of the Trust Agreement shall also apply to such Collective Bargaining Agreement, except that such rules shall be effective as of the date contributions cease for Controlling Employees under such Collective Bargaining Agreement (instead of September 1, 2002.)

[57]1. Contributions shall be made for such Employee for fifty-six (56) hours per week, and for not less than forty-eight (48) weeks in any calendar year, regardless of the number of weeks in which the Employee performs any work.

However, for Employees working under the following Collective Bargaining Agreements at the times specified below, contributions shall be made for such Employee for forty (40) hours per week and for not less than fifty (50) weeks in any calendar year, regardless of the number of weeks in which the Employee performs any work:

(i) effective July 1, 2002 until December 31, 2002, Employees working under an agreement specified in Exhibit A, Article III, Section 1.B.3 (an East Coast Local 700 agreement),

(ii) Employees working under the Local 700 East Coast Documentary Agreement, effective at the date the Employer became signatory to such Agreement, and

(iii)       effective March 25, 2004, Employees working under Collective Bargaining Agreements described in Article III, Section 1.B.3 (East Coast agreements).

The contribution period may be reduced by the number of weeks for which the Employee establishes by documentation deemed adequate by the Plan that the Employee is receiving unemployment or disability benefits. The contribution amount for each week may be reduced by the amount of contributions made on behalf of the Employee for that week by any other Employer party to the Health Plan.

2.       Contributions shall commence on the first day of the week in which the individual becomes an Employee and shall continue under Section 4.A. until the occurrence of one or more of the following events:

   a.   Employer ceases to have an obligation to contribute to the Plan on behalf of the Employees in such classifications under any collective bargaining agreement; or

   b.   the formal dissolution of the Employer as evidenced by documentation deemed adequate by the Plan; or

   c.   the Employee ceases to be a Controlling Employee, as evidenced by documentation deemed adequate by the Plan, unless the Plan has

---

[57]   Section AMENDED by Resolution on 4/22/98, effective 9/20/98.
Section AMENDED 10/23/02 (Amendment LXXII).
Section AMENDED 9/8/04 (Amendment LXXX).

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

Page 27

reasonable grounds to believe that the Employee continues to have control over the corporation or LLC; or

d.   retirement of the Employee under the Pension Plan or other evidence which is satisfactory (in the sole discretion of the Directors) to show that the individual is no longer working (directly or indirectly) for the Employer as an Employee and does not intend to work for the Employer as an Employee in the future; or

[58]e.   the first day the Employee is considered a Retired Employee under the Motion Picture Industry Health Plan (Retired Employees' Fund), regardless of whether the employee later becomes eligible for benefits under the Active Plan

If the obligation ceases pursuant to an event in a. through d., above and the individual subsequently re-qualifies as a Controlling Employee as defined in Paragraph A. above, the obligation shall immediately recommence pursuant to this Paragraph A. and shall continue until the occurrence of an event in a. through e., above. If the obligation ceases pursuant to an event in a. through d., above, and the individual subsequently re-qualifies as an Employee who is not a Controlling Employee or the obligation ceases pursuant to e. above and the individual re-qualifies as an Employee (whether or not he is a Controlling Employee), the Employer shall make contributions pursuant to the rules applicable for Union Employees under Exhibit A, Article III, Section 1, but the contribution rules for Controlling Employees under this Paragraph A shall not apply.

B.   Effective with the pay period which includes January 1, 1991, this Section 4. shall not apply to an Employee employed by a "loanout company" if the Collective Bargaining Agreement under which said Employee works requires that the borrowing Employer make contributions directly to the Retiree Fund on behalf of the Employee for all hours worked by or guaranteed to the Employee. The term "loanout company" is defined as a company controlled by the loaned out Employee, who is the only employee of the loanout company.

## ARTICLE IV - MAINTENANCE OF BENEFITS

### [59]Section 1.   Active Employees Fund

A.   Benefits under the Active Health Plan (including the bank of hours provision and eligibility standards, dental and vision benefits and Ingenix schedules operative as of August 1, 1996) shall be maintained through July 31, 2003 at the level in effect on August 1, 1996, in the following manner:

1.   If, at any time from August 1, 2000 to and including July 31, 2003, the level of reserves drops below eight (8) months, the Directors, in conjunction with the Plan consultants, shall review the projections as to future reserve levels. If the consultants

---

[58]   ADDED 10/23/02 (Amendment LXXII).
[59]   Section AMENDED 10/23/02 (Amendment LXXII).
     Section AMENDED by Resolution on 5/23/03, effective 8/3/03.
     ADDED 6/26/08 (Amendment CI), retroactively effective 8/1/06. (Subsection C. was added.)

Exhibit 2 - Page 297

Case 2:12-cv-00693-VBF-MAN Document 60-2 Filed 04/16/14 Page 103 of 108 Page ID #:1637

Page 28

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

project, taking into account a reasonable amount of Supplemental Markets income, that the level of reserves will fall below six (6) months during August 1, 2000 to and including July 31, 2003, the following steps shall be taken:

    a. First, monies received from Post '60s payments in excess of the amount needed to fund the additional check(s) for retired employees under the Motion Picture Industry Pension Plan pursuant to Article IV, Section 2(o)(4) of the Pension Plan Trust Agreement and in excess of the amount needed to fund the twenty-three percent (23%) increase in the Industry Pension Plan benefit for Active Employees (but only to the extent that Supplemental Markets monies are insufficient to fund such twenty-three percent (23%) increase), shall be allocated to the Active Employees Fund;

    b. Thereafter, if the consultants project, taking into account a reasonable amount of Supplemental Markets income, that the level of reserves will drop below four (4) months during the period August 1, 2000 to and including July 31, 2003, employer contributions will be increased to the amount and for such time as is necessary to create a four (4) month reserve level.

B. With respect to Covered Participants, as defined in Article II, Section 1.B.2., of this Exhibit A, benefits under the Active Health Plan (including the bank of hours provision and eligibility standards, dental and vision Benefits and Ingenix schedules operative as of August 1, 2003) shall be maintained through July 31, 2006 at the level in effect on August 1, 2003, in the following manner:

    1. If, at any time from August 1, 2003 to and including July 31, 2006, the level of reserves drops below eight (8) months, the Directors, in conjunction with the Plan consultants, shall review the projections as to future reserve levels. If the consultants project, taking into account a reasonable amount of Supplemental Markets income, that the level of reserves will fall below six (6) months during August 1, 2003 to and including July 31, 2006, the following steps shall be taken:

    a. First, monies received from Post '60s payments in excess of the amount needed to fund the additional check(s) for retired employees under the Motion Picture Industry Pension Plan pursuant to Article IV, Section 2(o)(4) of the Pension Plan Trust Agreement and in excess of the amount needed to fund the twenty-three percent (23%) increase in the Industry Pension Plan benefit for Active Employees (but only to the extent that Supplemental Markets monies are insufficient to fund such twenty-three percent (23%) increase), shall be allocated to the Active Employees Fund;

    b. Thereafter, if the consultants project, taking into account a reasonable amount of Supplemental Markets income, that the level of reserves will drop below four (4) months during the period August 1, 2003 to and including July 31, 2006, employer contributions will be increased to the amount and for such time as is necessary to create a four (4) month reserve level.

C. With respect to Covered Participants, as defined in Article II, Section 1.B.2., of this Exhibit A, benefits under the Active Health Plan (including the bank of hours provision and eligibility standards, dental and vision benefits and Ingenix schedules operative as of August 1, 2006) shall

Rev. 1/10

Exhibit 2 - Page 298

Motion Picture Industry Health Plan
(Inclusive of Amendments 1 through CVI)
Exhibit A(29), cont'd.

be maintained through July 31, 2009 at the level in effect on August 1, 2006, in the following manner:

    1. If, at any time from August 1, 2006 to and including July 31, 2009, the level of reserves drops below eight (8) months, the Directors, in conjunction with the Plan consultants, shall review the projections as to future reserve levels. If the consultants project, taking into account a reasonable amount of Supplemental Markets income, that the level of reserves will fall below six (6) months during August 1, 2006 to and including July 31, 2009, the following steps shall be taken:

        a. First, monies received from Post '60s payments in excess of the amount needed to fund the additional check(s) for retired employees under the Motion Picture Industry Pension Plan pursuant to Article IV, Sections 2(o)(4) and 2(p)((1) of the Pension Plan Trust Agreement and in excess of the amount needed to fund the twenty-three percent (23%) and fifteen percent (15%) increases in the Industry Pension Plan benefit for Active Employees (but only to the extent that Supplemental Markets monies are insufficient to fund such twenty-three percent (23%) and fifteen percent (15%) increases), shall be allocated to the Active Employees Fund;

        b. Thereafter, if the consultants project, taking into account a reasonable amount of Supplemental Markets income, that the level of reserves will drop below four (4) months during the period August 1, 2006 to and including July 31, 2009, employer contributions will be increased to the amount and for such time as is necessary to create a four (4) month reserve level.

## [60]Section 2. Retired Employees Fund

A. Benefits under the Retired Employees Fund (including dental and vision benefits and Ingenix schedules operative as of August 1, 1996) shall be maintained through July 31, 2003 at the level in effect on August 1, 1996, together with the benefit improvements relative to the Retired Employees Fund effective January 1, 1997, in the following manner:

    1. If, at any time during the period August 1, 2000 to and including July 31, 2003, the level of reserves drops below eight (8) months, the Directors, in conjunction with the Plan consultants, shall review the projections as to future reserve levels. If the consultants project, taking into account a reasonable amount of Post '60s income, that the level of reserves will fall below four (4) months during the period August 1, 2000 to and including July 31, 2003, employer contributions will be increased to the amount and for such time as is necessary to create a four (4) month reserve level.

B. With respect to Covered Participants, as defined in Article III, Section 1.B.2., of this Exhibit A, benefits under the Retired Employees Fund (including dental and vision benefits and Ingenix schedules operative as of August 1, 2003) shall be maintained through July 31, 2006 at the level in effect on August 1, 2003, in the following manner:

---

[60] Section AMENDED 10/23/02 (Amendment LXXII).
Section AMENDED by Resolution on 5/23/03, effective 8/3/03.
ADDED 6/26/08 (Amendment CI), retroactively effective 8/1/06, Subsection C. was added.

Exhibit 2 - Page 299

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

1.  If, at any time during the period August 1, 2003 to and including July 31, 2006, the level of reserves drops below eight (8) months, the Directors, in conjunction with the Plan consultants, shall review the projections as to future reserve levels. If the consultants project, taking into account a reasonable amount of Post '60s income, that the level of reserves will fall below four (4) months during the period August 1, 2003 to and including July 31, 2006, employer contributions will be increased to the amount and for such time as is necessary to create a four (4) month reserve level.

C.   With respect to Covered Participants, as defined in Article III, Section 1.B.2., of this Exhibit A, benefits under the Retired Employees Fund (including dental and vision benefits and Ingenix schedules operative as of August 1, 2006) shall be maintained through July 31, 2009 at the level in effect on August 1, 2006, in the following manner:

1.  If, at any time during the period August 1, 2006 to and including July 31, 2009, the level of reserves drops below eight (8) months, the Directors, in conjunction with the Plan consultants, shall review the projections as to future reserve levels. If the consultants project, taking into account a reasonable amount of Post '60s income, that the level of reserves will fall below four (4) months during the period August 1, 2006 to and including July 31, 2009, employer contributions will be increased to the amount and for such time as is necessary to create a four (4) month reserve level.

## ARTICLE V - OTHER CONTRIBUTIONS

### Section 1.      Residuals Contributions

Under the I.A.T.S.E. Basic Agreement (and under any analogous collective bargaining agreement between any Employer party and Union party to this Health Plan), each Employer is required to make certain contributions to the Health Plan (including the Active Employees Fund and the Retired Employees Fund), the Motion Picture Industry Individual Account Plan, and the Motion Picture Industry Pension Plan (collectively, the "Motion Picture Plans") with respect to Post '60s Theatrical Motion Picture receipts and Supplemental Markets receipts. This Section sets forth the portions of said contributions which are payable to the Active Employees Fund and the Retired Employees Fund of the Motion Picture Industry Health Plan.

A.   Supplemental Markets Payments.

1.   Supplemental Markets contributions received by the Motion Picture Plans for the quarter ending September 30, 1996, and thereafter, up to and including October 21, 1997, shall not be paid to the Active Employee Fund until $5,344,000 of Supplemental Markets payments have been made to the Motion Picture Industry Individual Account Plan pursuant to Exhibit A, Article III, Section 1(a)(1) of the Individual Account Plan Trust Agreement.

2.   For the period commencing October 22, 1997, the Active Employees Fund received all Supplemental Markets payments made to the Motion Picture Plans except for payments required to be paid to the Motion Picture Industry Pension Plan (the "Pension Plan") pursuant to Exhibit A, Article III, Section 1(b) of the Pension Plan Trust Agreement and except for the amounts described in Exhibit A (20). For the period commencing in October of 2000 on the date to be specified by the Board of Directors by resolution, the Active Employees Fund shall receive all Supplemental Markets payments made to the Motion Picture Plans except for payments required

Rev. 1/10

Exhibit 2 - Page 300

Motion Picture Industry Health Plan                                                                    Page 31
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

to be paid to the Motion Picture Industry Pension Plan (the "Pension Plan") pursuant to Article III, Section 1 (b) of Exhibit A(23) of the Pension Plan Trust Agreement and except for the amounts described below. Amounts in the Active Employees Fund, measured as of September 30, 2000, in excess of that necessary to maintain benefits under the Active Employees Fund as provided herein, as well as a twelve (12) month reserve, are hereinafter referred to as "the Excess Amount." For this purpose, the reserve shall be equal to a ratio, the numerator of which is the total assets of the Active Employees Fund less miscellaneous payables and the denominator of which is the "adjusted current monthly expense." For this purpose, "adjusted current monthly expense" is the product of (a) the number of eligible participants in the Active Employees Fund for the month of September of each year, and (b) a ratio, the numerator of which is the total amount of claims paid by the Active Employees Fund plus expenses during the one (1) year period beginning October 1 of the year preceding the year in which the number of eligible participants is measured, and ending on September 30 of the year in which the number of participants is measured, and the denominator of which is the sum of the number of eligible participants for each month during the same one (1) year period. Supplemental Markets payments received on or after the October, 2000 date established by resolution of the Board of Directors, equal to eighty percent (80%) of the Excess Amount shall be allocated to the Motion Picture Industry Individual Account Plan and an amount equal to twenty percent (20%) of the Excess Amount shall be taken as a credit against future Supplemental Markets payments by certain Producers in the manner and shares set forth in the IATSE Basic Agreement of 2000, as amended. Subject to the applicable Collective Bargaining Agreements, the Directors of the Active Health Plan shall examine, on an annual basis (on or about September 30 of each year), the level of reserves in the Active Health Plan and shall reallocate, in accordance with the foregoing (with dates adjusted accordingly), any amounts in excess of a twelve (12) month reserve. The reallocation of the Excess Amount shall occur prior to final reallocation of Supplemental Markets payments to the Pension Plan. However, no such reallocation shall commence until the later of (i) the date the AMPTP signifies a different allocation is not desired, (ii) the date IATSE signifies a different allocation is not desired, (iii) the date the Basic Crafts signifies a different allocation is not desired, and (iv) the date of approval of the reallocation by the Board of Directors of the Motion Picture Industry Health Plan and the Pension Plan. The President of the AMPTP, the President of the IATSE and the Chairman of the Basic Crafts shall indicate their consent by writing to the Plans' administrator or by acknowledgment at a meeting of the Board of Directors of said Plans. Notwithstanding the foregoing, the bargaining parties shall have the authority to reallocate contributions with respect to only those Participants (and classifications) covered by their applicable Collective Bargaining Agreements; accordingly, the failure of either the IATSE or the Basic Crafts to give consent to the reallocation shall not affect the reallocation with respect to Participants covered by the Collective Bargaining Agreement of the other party.

[61]B.    Post '60s Payments

Effective July 1, 2006 through July 31, 2009, Post '60s amounts payable to the Motion Picture Plans shall be allocated in the order below as follows:

---

[61]    Section AMENDED by Resolution on 12/16/98, retroactively effective 10/22/98.
        Section AMENDED 6/23/04, effective 7/1/04 (Amendment LXXIX), Article V, Section 1.B. is amended in its entirety.
        Section AMENDED 6/28/06, effective 7/1/06 (Amendment LXXXXVII), Article V, Section 1.B. was amended.

Rev. 1/10

Exhibit 2 - Page 301

Case 2:12-cv-06693-VBF-MAN Document 60-2 Filed 04/18/14 Page 107 of 108 Page ID
#:1641

Page 32

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

1. First, to the Pension Plan, to the extent set forth in Exhibit A of the Pension Plan to fund the additional check(s) for retired employees, as provided in Article IV, Section 2 (o)(4) of the Pension Plan. In addition, if so directed by the Directors pursuant to Article III, Section 1(d) of Exhibit A of the Pension Plan and after any allocations to the Active or Retiree Employees Fund to bring each of those Funds up to a six month reserve level, any additional amounts needed to fund the increases for active employees as provided for in the Pension Plan (but only to the extent that Supplemental Markets monies are insufficient to fund such increases), shall be so allocated to the Pension Plan.

2. Additional Post '60s amounts, if any, shall be allocated as follows:

   (i)    To the Active Employees Fund, to the extent needed to maintain benefits as set forth in Article IV, Section I.A.1.a, of this Exhibit A. However, that such allocation shall not be used to create a level of reserves in such Fund of greater than eight months, subject to sub-paragraph B.2.(iii), below.

   (ii)   Then, to the Retired Employees Fund, up to that amount which the Health Plan Executive Administrative Director determines is needed to Fund sixteen months of reserves in the Retired Employees Fund. This determination shall be made by said Executive Administrative Director as of the end of the second month preceding the applicable calendar quarter.

   (iii)  Then, to the Active Employees Fund, subject to the provisions of sub-paragraph B.2.(iv), below.

   (iv)   (a)    Notwithstanding B.2(iii), in accordance with Exhibit A of the Individual Account Plan, the Directors may direct that future Post '60s contributions be made to the Individual Account Plan and taken as a credit against Employer contributions, as set forth herein. The amount that may be so directed shall equal 80% of the portion of the reserves in the Retired Employees Plan in excess of the amount needed in the Retired Employees Fund to furnish benefits to retired Participants in the Health Plan for sixteen (16) months, measured as of September 30 of each year ("Excess Amount").

   (b)    Eighty percent (80%) of the Excess Amount shall be contributed to the Individual Account Plan and twenty percent (20%) shall be designated as a credit against future Post '60s payments, to be divided up among those Companies, each of which has made Supplemental Markets payments to the Health Plan of not less than $15,000,000 (or has made Post '60s payments to the Retired Employees Fund of not less than $6,000,000) in the aggregate during the three (3) year period beginning January 1, 1994 and ending on December 31, 1996 or in any subsequent three (3) consecutive year period. For these purposes, the Supplemental Markets and Post '60s payments made by Columbia and TriStar shall be aggregated and the Supplemental Markets and Post '60s payments made by Amblin Entertainment Inc. and DreamWorks shall be aggregated.

   (c)    However, no such reallocation under this B.2(iv) shall commence until the later of (i) the date the AMPTP signifies a different allocation is not desired, (ii) the date IATSE signifies a different allocation is not desired, (iii) the date the Basic Crafts signifies a different allocation is not desired, and (iv) the date of approval of the reallocation by the Board of Directors of the Motion Picture Industry Health Plan and

Rev. 1/10

Exhibit 2 - Page 302

Motion Picture Industry Health Plan
(Inclusive of Amendments I through CVI)
Exhibit A(29), cont'd.

the Pension Plan. The President of the AMPTP, the President of the IATSE and the
Chairman of the Basic Crafts shall indicate their consent by writing to the Plans'
Executive Administrative Director or by acknowledgment at a meeting of the Board of
Directors of said Plans. Notwithstanding the foregoing, the bargaining parties shall
have the authority to reallocate contributions with respect to only those Participants
(and classifications) covered by their applicable Collective Bargaining Agreements;
accordingly, the failure of either the IATSE or the Basic Crafts to give consent to the
reallocation shall not affect the reallocation with respect to Participants covered by
the Collective Bargaining Agreement of the other party.

3. In computing the amount of reserves the following formula shall be utilized: the number of
months of reserves for any month (the "applicable month") is equal to a ratio, the numerator
of which is the total assets of the applicable Fund at the end of the applicable month less
miscellaneous payables, and the denominator of which is the "adjusted current monthly
expense." For this purpose, "adjusted current monthly expense" is the product of (a) the
number of eligible Participants for the applicable month and (b) a ratio, the numerator of
which is the total amount of claims paid by the Fund plus expenses during the one (1) year
period ending with the end of the applicable month, and the denominator of which is the total
number of eligible Participants for the same one (1) year period.

///

Exhibit 2 - Page 303