DONALD M. de CAMARA, SBN 69703
E-mail: decamlaw@sbcglobal.net
LAW OFFICES OF DONALD M. de CAMARA
1241 Carlsbad Village Drive, Ste. E
Carlsbad, CA 92008
Tel: (760) 730-7404
Fax: (760) 730-7409

DANIEL E. WILCOXEN, SBN 054805
E-mail: dwilcoxen@wilcoxenlaw.com
WILCOXEN CALLAHAM, LLP
2114 K Street
Sacramento, California 95816
Telephone: (916) 442-2777
Facsimile: (916) 442-4118

Attorneys for Plaintiffs Lenai Mull, Danielle Mull, Norman Mull and Carson Mull and Counter Defendants Lenai Mull and Norman Mull

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DANIELLE MULL, NORMAN MULL, CARSON MULL
Plaintiffs,

vs.

MOTION PICTURE INDUSTRY HEALTH PLAN; BOARD OF DIRECTORS OF MOTION PICTURE INDUSTRY HEALTH PLAN
Defendants

---

BOARD OF DIRECTORS OF MOTION PICTURE INDUSTRY HEALTH PLAN
Counterclaimants

vs.

LENAI MULL, NORMAN MULL
Counterdefendants

Case No.: CV12-6693VBF (MANx)

Assigned to:
Hon. Valerie Baker Fairbank

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Date: None set, per Court's order
Ctrm: 9

# TABLE OF CONTENTS

**INTRODUCTION** **1**

**UNDISPUTED FACTS** **1**

**ARGUMENT** **4**

I THE DEFENDANTS' MOVING PAPERS APPEAR TO REQUEST SUMMARY JUDGMENT AGAINST LENAI MULL IN VIOLATION OF THE BANKRUPTCY COURT STAY 4

II THE MPI FORMAL PLAN DOCUMENT CONTAINS NO REIMBURSEMENT PROVISION AND IS NOT THE SPD 5

III PLAINTIFFS' FIRST AMENDED COMPLAINT ("FAC") PROPERLY SEEKS TO RECOVER BENEFITS DUE UNDER THE PLAN AND TO ENJOIN ENFORCEMENT OF MPI'S SELF-HELP CREDITS IMPOSED AGAINST THE MULLS WHO DID NOT OBTAIN ANY RECOVERY FOR INJURIES 8

IV THERE IS NO AUTHORITY IN ERISA OR IN THE CASE LAW FOR ALLOWING A PLAN TO ENFORCE ITS REIMBURSEMENT PROVISION THROUGH THE EXERCISE OF SELF-HELP CREDITS AGAINST PLAN MEMBERS WHO RECOVERED NOTHING 10

V SINCE THE MOVING MULL PLAINTIFFS ARE NOT IN POSSESSION OR CONTROL OF LENAI MULL'S RECOVERY, MPI IS NOT PROCEEDING AGAINST AN IDENTIFIABLE FUND IN THIS CASE 12

VI PUBLIC POLICY WEIGHS HEAVILY AGAINST ALLOWING ERISA PLANS TO EXERCISE REIMBURSEMENT CREDIT RIGHTS AGAINST ENTIRE FAMILIES 12

VII ERISA WAS DESIGNED TO PROTECT EMPLOYEES AND THEIR FAMILIES AND NOT ERISA PLANS 13

VIII A FEDERAL COURT DOES NOT DEFER TO AN ERISA PLAN ON ISSUES OF LAW 15

IX THE RECORD IN THIS CASE CLEARLY INDICATES THAT MPI IS ATTEMPTING TO ALTER ITS STATUTORY DUTIES UNDER ERISA 17

X THE SOLICITOR GENERAL HAS JUST FILED A BRIEF IN THE SUPREME COURT INDICATING THAT *BILYEU* WAS CORRECTLY DECIDED BY THE NINTH CIRCUIT 18

**CONCLUSION** **20**

# TABLE OF AUTHORITIES

## STATUTES AND REGULATIONS


29 USC §1001 13-14

29 USC §1102 5,18

29 USC §1132(a) 8-10,17

42 USC §300gg-14 12

FRCP 12(b)(6) 1


## CASES


*Batchelor v. Oak Hill Medical Group*, 870 F.2d 1446, 1449 (9th Cir. 1989) 14

*Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1092-1093 (9th Cir. 2012); cert. denied 2013 U.S. Lexis 1094 (2013) 10,12,17-21

*CGI v. Rose*, 683 F.3d 1113 (2012) 1,17

*CIGNA v. Amara,* 131 S. Ct. 1866, 1877 (2011) 1,5,7,9,17,18,20

*Coffin v. Bowater, Inc*., 385 F.Supp.2d 38, 49 (DC Maine 2008) 15

*Coleman v. Interco Inc. Divisions' Plans*, 933 F.2d 550, 551 (7th Cir. 1999) 16

*Courson v. Bert Bell NFL Player Retirement Plan*, 214 F.3d 136 (3d. Cir. 2000) 15

*Great West Life & Annuity Ins. Co. v. Knudson*, 534 US 204 (2002) 10,12,17,18,20

*Grosz-Salomon v. Paul Revere Life Ins. Co.,* 237 F.3d 1154 (9th Cir. 2001) 7

*Ingorvaia v. Reliastart Ins. Co.* 944 F.Supp. 964, 966-967 (SD CA 2013) 5

*Imel v. Laborers Pension Trust Fund for N. Cal.*, 904 F.2d 1327, 1330 (9th Cir. 1990) 15-16

*Kaufman v. Prudential Ins. Co. of America*, 840 F.Supp.2d 495 (DC NH 2012) 6

*Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir. 1995) 16

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 113-114 (2008) 14

*Pilot Life v. Dedeaux*, 481 U.S. 41, 54 (1987) 10,16

*Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) 16

*Sereboff v. Mid-Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006) 10,12,17,18,20

*Sullivan v. Prudential Ins. Co. of America* 2013 U.S. Dist. LEXIS 42077 (ED CA 2013) 6

*Schwarz v. Prudential Ins. Co. of America*, 450 F.3d 697, 699 (7th Cir. 2006) 7

*Thurber v. Aetna Life Insurance Co.*, 712 F.3d 654 (2d Cir. 2013) 18-20

*US Airways, Inc. v. McCutchen*, 569 U.S. __, 133 S.Ct. 1537 (2013) 1,10,12,17,18,20

*Varity v. Howe*, 516 U.S. 489, 513 (1996) 9

*Wilson v. Walgreen Income Protection Plan*, 942 F.Supp.2d 1213 (MD FL 2013) 5

**TREATISES and MISCELLANEOUS**

Brief of the United States to the Supreme Court in *Thurber, supra* 18-20, Ex. 8

*Restatement Restitution*, §161 19

**INTRODUCTION**

This is an action under ERISA arising out of the Motion Picture Industry Health Plan's ("MPI") attempt to assert an extra-judicial credit provision against the entire Mull family to recoup medical expenses paid by it on behalf of 18 year old Lenai Mull. After the lawsuit was filed, MPI filed an FRCP 12(b)(6) motion to dismiss. On December 21, 2012, this Court granted the motion on the drafting issues and denied the motion on the equitable defense issues under the Ninth Circuit decision in *CGI v. Rose*. (Doc. 20). In that order, the Court granted plaintiffs leave to amend. The amended complaint was filed and answered by defendants. No compulsory counterclaim for affirmative relief was filed with defendants' answer.

On April 16, 2013, the Supreme Court overruled *CGI v. Rose* in *US Airways v. McCutchen*. Following that decision, plaintiff Lenai Mull, for herself alone, moved to dismiss her case with prejudice. Concurrently, MPI moved to file an affirmative counterclaim against Lenai Mull and Norman Mull. On February 4, 2014, the Court denied Lenai Mull's motion to dismiss and granted MPI leave to file its counterclaim. See Doc. 49. On February 21, 2014, plaintiff Lenai Mull filed for protection in federal bankruptcy court. See Doc. 51. On February 26, 2014, this Court stayed the action as to Lenai Mull and set the briefing schedule for Norman Mull's FRCP 12(b)(6) motion and the instant motions for summary judgment. Doc. 53. See also Docs. 49, 51, 53; Declaration of Plaintiff's Counsel in Support of Motion, ¶4. Norman Mull's motion to dismiss MPI's counterclaim is currently pending with the Court.

**UNDISPUTED FACTS**

The key facts in this case are essentially undisputed. Plaintiffs Danielle Mull, Norman Mull, Carson Mull and Lenai Mull are all participants in an employee welfare benefit plan known as the Motion Picture Industry Health

Plan, which is subject to the federal law of ERISA. See Plaintiffs' Statement of Uncontroverted Facts in Support of Motion for Summary Judgment ("SUF") ¶1. The MPI Health Plan is governed by Defendant Board of Directors of the MPI Health Plan as the Plan Administrator. SUF ¶2. The MPI Health Plan was established pursuant to an Agreement and Declaration of Trust. ("ADT") SUF ¶3. The MPI ADT contains no reimbursement or credit provisions and is attached as Exhibit 2. SUF ¶4. The Summary Plan Description ("SPD") for the MPI Health Plan dated 2007 is circulated to all participants and provides details of the coverage and is attached as Exhibit 1. SUF ¶5.

The Mull family is entitled to coverage under the MPI plan because Norman Mull has worked as a wrangler for the motion picture industry for the past 18 years. Wranglers and drivers are required to join the Teamsters Union in order to get this coverage. The Mulls have had the MPI coverage for the last 15 years. They pay $600 per year directly to the MPI Plan for the coverage and $1,032 in union dues. This is the only coverage available to plaintiffs Danielle, Norman and Carson Mull. SUF ¶6.

On February 3, 2010, 18 year old Lenai Mull was severely injured in a car accident, at the time she was covered under the MPI plan. She suffered many severe fractures requiring multiple surgeries and hospitalization, a collapsed lung and closed head injury with altered mental state, and other injuries. SUF ¶7. The MPI Plan paid about $148,000 of Lenai Mull's total medical bills of approximately $190,000 in connection with treatment for her accident related injuries. SUF ¶8.

The driver of the car responsible for Lenai Mull's above accident had only a $100,000 liability policy and she settled with the insurance company for that amount without the need to retain counsel. The proceeds of this settlement were paid directly to Lenai Mull, as an adult, and placed in her bank account. SUF ¶9. Lenai Mull's date of birth is April 2, 1991 so she was

an adult on the date of her injury and later settlement of her claim. See Danielle Mull declaration, ¶4; SUF ¶7.

The Mulls were unaware of the reimbursement provision in the MPI SPD until after Lenai's accident. Said reimbursement provision purports to provide that all family members covered by the MPI Plan are personally responsible for reimbursing MPI whether or not they received any personal injury settlement and allows MPI to credit any future covered medical care of the entire family against the alleged overpayment. SUF ¶10. Norman, Danielle and Carson Mull have no legal interest in or right to control Lenai Mull's personal injury settlement that Lenai received as an adult. SUF ¶11. MPI has recently and truthfully alleged that Lenai Mull is in possession of the unexpended portion of her personal injury recovery and the Court expressly relied upon this fact in denying Lenai Mull's motion to dismiss. SUF ¶11.

When the Mull family now receives medical care, the MPI Health Plan normally declines to pay its covered share and instead sends the Mulls an Explanation of Benefit ("EOB") indicating that MPI's share of covered expenses has been applied to the Mulls' alleged obligation to reimburse the plan for Lenai's medical expenses, which is described as their "overpayment." To date, the MPI Plan has credited $1,362 of Norman's and Danielle's covered medical expenses to this overpayment. An accurate summary sheet of these credits is attached hereto as Exhibit 5 with copies of the EOB's from MPI showing the covered amount of medical expense being applied to the overpayment. For those EOB's that show the balance of the alleged overpayment to Lenai Mull, the balance is listed between $107,000--$145,000, even though Lenai only recovered $100,000. SUF ¶12.

Because MPI is even refusing to pay for preventive care like physicals, pap smears, etc., the Mulls have foregone some of these screenings that they would normally get, which has caused them great concern. They are

also very concerned that their entire family is effectively without health insurance coverage unless this issue is resolved in their favor. Their financial well being and their peace of mind that comes from having actual health insurance coverage has been severely compromised through MPI's application of its contractual credit rights against the entire family. SUF ¶13.

Because Mr. and Mrs. Mull have no right to Lenai Mull's settlement funds and do not have somewhere between $107,000--$145,000 to repay the MPI Health Plan that MPI alleges is their payment responsibility, the Mulls have no way to restore their health insurance coverage except through the instant action. SUF ¶15.

There do not appear to be any genuine issues of fact presented that would prevent this case from being resolved on the parties' instant cross-motions for summary judgment. Although MPI alleges that it can treat its SPD as its formal plan document despite the existence of the ADT (which ADT has no reimbursement or credit provisions), which plaintiffs dispute, this would appear to actually be an issue of law.

## ARGUMENT

### I
### THE DEFENDANTS' MOVING PAPERS APPEAR TO REQUEST SUMMARY JUDGMENT AGAINST LENAI MULL IN VIOLATION OF THE BANKRUPTCY COURT STAY

The defendants' instant motion appears to be requesting summary judgment against Lenai Mull. See Notice of Motion, p. 1, l. 8. If that is the request, then said motion would seem to be in violation of the automatic stay from Lenai Mull's Bankruptcy Court and the stay issued by this Court (See Docs. 50, 53, p. 3) and should therefore be disregarded.

## II
## THE MPI FORMAL PLAN DOCUMENT CONTAINS NO REIMBURSEMENT PROVISION AND IS NOT THE SPD

MPI repeatedly refers to its SPD as "the Plan" even though its formal plan document is the ADT  See e.g., MPI SUF ¶¶ 23, 24.  Notably, the ADT has no reimbursement or credit provisions in it that would allow the actions taken by MPI against the Mull family.  In *CIGNA v. Amara*, 131 S. Ct. 1866, 1877 (2011), the Court held that the "summary documents…do not themselves constitute the terms of the plan…"  The Court also there held that the summary plan documents could not be enforced as the terms of the plan itself.  Id at 1877.

The MPI ADT simply does not address the issue of reimbursement or credit and therefore, under the authority of *CIGNA v. Amara*, MPI has no reimbursement or credit rights. The fact that the SPD contains one reference on page 124 to the SPD being both the Plan document and the SPD cannot change this.  The MPI SPD has only one of the four requisite features of the formal plan document required by 29 USC §1102 (§1102 (b)(2) setting forth responsibility for operation and administration of plan) and therefore the SPD cannot legally serve as the formal plan document. See more detailed discussion of §1102 requirements in Point XI (p. 19) of plaintiffs' concurrent MSJ P&A.  In *Wilson v. Walgreen Income Protection Plan*, 942 F.Supp.2d 1213 (MD FL 2013), the court noted the four statutory requirements that "must be included in every benefit plan" pursuant to 29 USC §1102 and then held that, "…a review of the SPD reveals that it does not conform to all the requirements of §1102(b).  Accordingly, the SPD cannot be the 'the plan instrument'…" (id at 1249)

In *Ingorvaia v. Reliastart Ins. Co.* 944 F.Supp. 964, 966-967 (SD CA 2013), the court, in following *Amara, supra*, held that:

> While it is possible for an ERISA plan to incorporate an SPD and its terms, **where the SPD is not incorporated, or the plan is not otherwise amended to include the SPD's terms, the SPD's terms are not binding**. The only evidence that the SPD is a part of Defendants' ERISA plan is the plan administrator's say so. This is insufficient in the absence of a clear statement in the plan documents. (emphasis supplied; citations omitted)

In *Sullivan v. Prudential Ins. Co. of America* 2013 U.S. Dist. LEXIS 42077 (ED CA 2013), the court following *Amara* held the failure to put the plan's grant of discretion anywhere other than the SPD was fatal to the plan's claim that it had discretion. Id at *6. In *Kaufman v. Prudential Ins. Co. of America*, 840 F.Supp.2d 495 (DC NH 2012), Prudential claimed that its appeal procedures contained only in the SPD constituted part of the plan. The court rejected this under the holding of *Amara* as follows:

> By including the appeal procedures only in the SPD, the Plan administrator here effectively sought to amend the written instrument constituting the Plan without following the Plan's procedure for making amendments. It had no authority to do so. *See id.* at 1877. As Justice Breyer remarked in *Amara,* **ERISA does not give plan administrators "the power to set plan terms indirectly by including them in the summary plan descriptions**." *Id.* **Only the plan sponsor can set the terms of the plan and it must do so in the written instrument establishing the plan. *Id*.** … The SPD, which the Plan administrator is responsible for distributing to participants, therefore, cannot graft onto the Plan procedures that must be in the written instrument constituting the Plan. Here, the SPD

purports to add terms establishing administrative appeal procedures. **Because the written instrument constituting the Plan does not require that administrative appeals be pursued before a lawsuit is filed, those SPD provisions are ineffective**. (id at 498, emphasis supplied)

The same rule was applied even before the Supreme Court's decision in *Amara*. In *Grosz-Salomon v. Paul Revere Life Ins. Co.,* 237 F.3d 1154 (9th Cir. 2001), the Ninth Circuit held that a plan could not unilaterally amend a plan summary without complying with the underlying contract's provision for changes.

But to say that an employee may hold an employer to its own representations is a far cry from saying that an insurer may unilaterally amend a plan summary with an insured in a manner that does not comport with the underlying contract's provision for changes and then, when the insured fails to detect the change, exploit the oversight to the detriment of the insured's employees. We hold this contention to be devoid of merit. Id at 1162.

In *Schwarz v. Prudential Ins. Co. of America*, 450 F.3d 697, 699 (7th Cir. 2006), the court held that an SPD providing rights which the plan itself did not confer rendered the SPD ineffective.

The situation is otherwise, however, when the SPD, as here, says the administrator has rights, which the plan itself does not confer. As we said in *Health Cost Controls of Illinois, Inc. v. Washington*, 187 F.3d 703, 711 (7th Cir. 1999): "When, however, the plan and the summary plan description conflict, the former governs, being more complete, the original, as it were…"

This is precisely the situation in the instant case. MPI has attempted to make the SPD the formal plan document with one sentence in the SPD (p.

124) but has never properly amended the formal plan document to include any right of reimbursement, credit or to incorporate those terms of the SPD by express reference. Consequently, MPI has no legal right of reimbursement against the Mulls. See further discussion in Point XI of the Mull's moving papers.

**III**

**PLAINTIFFS' FIRST AMENDED COMPLAINT ("FAC") PROPERLY SEEKS TO RECOVER BENEFITS DUE UNDER THE PLAN AND TO ENJOIN ENFORCEMENT OF MPI'S SELF-HELP CREDITS IMPOSED AGAINST THE MULLS WHO DID NOT OBTAIN ANY RECOVERY FOR INJURIES**

MPI argues at length that plaintiffs are misusing 29 USC 1132(a) because they simply disagree with the terms of the plan. This is incorrect. In FAC ¶10, plaintiffs allege that since the formal plan document, the ADT, does not contain any reimbursement provision and the Supreme Court established in *Amara, supra*, that the formal plan document controls, plaintiffs are entitled to receive their health care without any reimbursement claim. Had MPI wanted to enforce reimbursement, it would have been a simple matter to amend the ADT at any time since its adoption in 1952 to so reflect. Since MPI has not done so, the Mulls' health benefits can and should be enforced without any claim of any reimbursement. Pursuant to the Supreme Court's decision in *Amara, supra*, this would constitute proper enforcement of the plan pursuant to 29 USC §1132(a)(1)(B).

In ¶11 of the FAC, plaintiffs allege that MPI's assertion of their credit scheme against all Mull family members is an attempt to impose contractual liability that is not available under ERISA, pursuant to controlling Supreme Court precedent. This is especially true as to the moving Mull parties who were not injured in Lenai's accident and therefore recovered nothing in her personal injury claim. Since the moving Mull plaintiffs do not own, possess or control Lenai's recovery, there is no basis for any equitable lien or

constructive trust against them. Consequently, the Mulls are properly attempting to enforce the provisions of ERISA, as interpreted by the Supreme Court, in order to reestablish the family's health coverage. These assertions of the Mulls properly fall within the purview of 29 USC §1132(a)(3) to "enjoin any act or practice which violates any provision of this subchapter…"

There are two notable differences between the relief available under (a)(1)(B) and (a)(3) of the above code section. (a)(1)(B) only references the plan as opposed to ERISA and (a)(3) allows an action to enforce the provisions of ERISA through either an injunction or "other appropriate equitable relief."

MPI appears to be arguing that since (a)(1)(B) relief and (a)(3) relief could be somewhat duplicative, neither should be cognizable. This is not what *Varity v. Howe*, 516 U.S. 489 (1996) stands for. Rather, the Court there held that the underlying purposes of ERISA "favor a reading of the ((a)(3)) subsection that provides the plaintiff with a remedy." Id at 513. Moreover, in *CIGNA v. Amara*, 131 S. Ct. 1866, 1877 (2011), the Court found that the legal relief sought by plan members was not available under (a)(1) but opined that equitable remedies of reformation and surcharge under (a)(3) would be available to protect plan participants. Thus, the Supreme Court has demonstrated a flexible approach designed to fully protect the rights of ERISA participants.

It is not significant to the Mull plaintiffs under which of the above sections relief is obtained and they do not seek any form of double recovery. However, what is critically important to them is that their family's health insurance benefits be restored.

## IV
## THERE IS NO AUTHORITY IN ERISA OR IN THE CASE LAW FOR ALLOWING A PLAN TO ENFORCE ITS REIMBURSEMENT PROVISION THROUGH THE EXERCISE OF SELF-HELP CREDITS AGAINST PLAN MEMBERS WHO RECOVERED NOTHING

MPI argues (at p. 14) that there is nothing in ERISA prohibiting self-help credits. While this is true, it is very misleading. There is nothing whatsoever in ERISA allowing reimbursement or subrogation by ERISA plans. Since reimbursement was not contemplated by the drafters, they certainly would not be addressing self-help credits to enforce such a right. However, ERISA does contain a detailed civil enforcement scheme that the Court has held to be **exclusive**. See *Pilot Life v. Dedeaux*, 481 U.S. 41, 54 (1987) and more detailed discussion in Point II (p. 6) of plaintiffs' concurrent motion for summary judgment. Notably, there is nothing in the exclusive civil remedies pertaining to self-help or any extra-judicial remedies. Therefore, it is logical to conclude that any such remedies would be limited to the "appropriate equitable relief" constraints of 29 USC §1132(a)(3). The Supreme Court has repeatedly held that such relief to enforce reimbursement rights by plans is limited to actions for constructive trust or equitable lien. See *Great West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002), *Sereboff v. Mid-Atlantic Medical Svcs., Inc.*, 133 S.Ct. 1537 (2013), *U.S. Airways v. McCutchen,* 133 S.Ct. 1537 (2013), *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012), cert. denied 2013 U.S. Lexis 1094, and Points III—VI of plaintiffs' moving papers. Moreover, all of these cases apply the same requirement that the action for constructive trust or equitable lien seek return of the identifiable fund of the personal injury recovery from the person owning or controlling same. The above cases are also in agreement that the reimbursement claim cannot seek to impose personal liability on the plan participants. It is beyond dispute that Lenai Mull was the owner of the

personal injury claim and her recovery thereon. Even MPI argued truthfully and successfully that Lenai Mull was the owner and holder of the unexpended funds from her personal injury claim in a recent filing. See Doc. 31, p. 3, ll. 16-17; Doc. 32, p. 2 at ¶6. The Court then adopted this factual assertion in its ruling on the motion then pending. Doc 49, pp. 10-11. It is also undisputed that Lenai Mull was an adult on the date of her injury and her later recovery.

MPI cites seven cases allowing the assertion of a credit against plan members in its motion. See MPI P&A, pp. 16—18. However, each of these cases involves plans crediting their right of reimbursement against the plan member **actually receiving the recovery**. Most of these cases involve credits to disability policies for retroactive Social Security awards to the plan members where the plan document provided for such a credit against the recipient. It is not a great stretch to determine that the law of equity could accommodate such a theory since the equitable credits were being applied against the person owning and controlling the recovery. However, MPI has not located a single case where a credit provision of an ERISA plan has been upheld against other family members of the participant gaining the recovery, without regard to ownership or control of the funds. Likewise, plaintiffs' research has located no such cases. In other words, MPI wants this Court to be the **first court in the country to extend credit rights of ERISA plans to an entire family**, despite the family's non-receipt of any recovery or identifiable fund.

Not only would such a rule fly in the face of the controlling Supreme Court and Ninth Circuit decisions, it would allow imposition of contractual liability on entire families despite the impossibility of performance. Since Lenai Mull was an adult when she was injured and recovered the paltry $100,000 policy limits available for her severe injuries, she is the only one

entitled to determine whether those funds will be paid to MPI. Her family has no rights in her recovery and cannot legally reimburse the plan from the property of their adult daughter. Most families, including the Mulls, do not have an extra $100,000 to answer for the alleged debt of another. Allowing credits to be applied in this manner would severely compromise the equitable underpinnings of ERISA.

## V
## SINCE THE MOVING MULL PLAINTIFFS ARE NOT IN POSSESSION OR CONTROL OF LENAI MULL'S RECOVERY, MPI IS NOT PROCEEDING AGAINST AN IDENTIFIABLE FUND IN THIS CASE

The Supreme Court decisions in *Knudson, Sereboff*, and *US Airways* and the Ninth Circuit decision in *Bilyeu, supra*, make it perfectly clear that plans are limited to proceeding in equity against the identifiable fund of the plan member's recovery. As MPI has admitted in pleadings and its attorney's declaration, Lenai Mull is the owner of the recovery and possesses the unexpended portion thereof. As a result of Lenai's bankruptcy filing, all actions by and against her have been stayed. Consequently, when MPI applies its contractual credit rights against the remaining Mull family members' health coverage, it is **not** proceeding against an identifiable fund. As such, MPI's extra-judicial credit actions against the remaining Mulls are not authorized under ERISA and should be prohibited.

## VI
## PUBLIC POLICY WEIGHS HEAVILY AGAINST ALLOWING ERISA PLANS TO EXERCISE REIMBURSEMENT CREDIT RIGHTS AGAINST ENTIRE FAMILIES

Since MPI is asking this Court to be the first court in the entire country to extend credit rights to entire families regardless of non-receipt of any recovery, the Court should examine the public policy ramifications of such a

ruling. Most self-funded ERISA plans are employer based rather than union based (like MPI). Since employers have control over their employees' paychecks, the next logical extension of MPI's argument is that employers could withhold their employees' entire paychecks to satisfy the employers' alleged right of reimbursement. Where employers drafted their reimbursement provisions like MPI, they would have the right to withhold an employee's entire paycheck until the reimbursement claim was paid in full, even where the employee himself had recovered nothing. Thus, an employee with no personal injury claim or recovery could have his paychecks transferred to the self-funded employer plan to satisfy the plan's claim against an adult family member who was not an employee. Since the Affordable Care Act mandates availability of coverage for adult children to age 26 (42 USC §300gg-14), this could become a frequent occurrence. Thus, the logical extension of MPI's argument could be to impose widespread involuntary servitude on employees to pay the reimbursement claims against adult family members covered by the employer's benefit plan. This is certainly not what the drafters of ERISA had in mind when they enacted the statute.

## VII
## ERISA WAS DESIGNED TO PROTECT EMPLOYEES AND THEIR FAMILIES AND NOT ERISA PLANS

When ERISA was passed, Congress devoted an entire section to Congressional findings and declaration of policy. See 29 USC §1001. Therein, Congress noted that "employees and their beneficiaries have been deprived of anticipated benefits..." Therefore, Congress dictated in §1001:

> ...that it is therefore **desirable in the interests of employees and their beneficiaries** ... that minimum standards be provided **assuring the equitable character of such plans** and their

financial soundness." (emphasis supplied) 29 USC §1001(a)

The same section also provides that "the continued well-being and security of millions of employees and their dependents are directly affected by these plans." This section further provides that, "it is desirable in the interests of employees and their beneficiaries... that disclosure be made and safeguards be provided with respect to the establishment, operation and administration of such plans." Finally, 29 USC §1001(b) provides that:

> It is hereby declared to be the policy of this Act **to protect...the interests of participants in employee benefit plans and their beneficiaries**, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans**, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts**. (emphasis supplied)

The Supreme Court has repeatedly held that "Congress' desire to offer employees enhanced protection for their benefits" outweighed other ERISA considerations. See *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 113-114 (2008). The Ninth Circuit has consistently interpreted ERISA plan provisions in light of this legislative intent. In *Batchelor v. Oak Hill Medical Group*, 870 F.2d 1446, 1449 (9th Cir. 1989), the court held:

> Congress in enacting ERISA "recognize[d] the absolute need that safeguards for plan participants be sufficiently adequate and effective to prevent the numerous inequities to workers under plans which have resulted in tragic hardship to so many." ERISA is remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans. (citations omitted)

## VIII
## A FEDERAL COURT DOES NOT DEFER TO AN ERISA PLAN ON ISSUES OF LAW

The vast majority of MPI's motion appears to be designed to obtain an abuse of discretion review as opposed to a de novo review. However, it clearly appears that resolution of this case hinges on the pure issues of law addressed above. As this Court correctly ruled on the 12(b)(6) motion, "...the Court is called upon...to decide pure matters of law, and under no circumstances does a court defer to a plan administrator's position on a matter of law." Additionally, the Court ruled that, "...the court does not defer to the plan's reading of the law on key legal issues presented by this case..." See Court's Order on Motion to Dismiss, Doc. 20, p. 14. Among other authorities, the Court cited *Courson v. Bert Bell NFL Player Retirement Plan*, 214 F.3d 136 (3d. Cir. 2000) and *Coffin v. Bowater, Inc*., 385 F.Supp.2d 38, 49 (DC Maine 2008) for this proposition.

The issue in this case is whether the law of ERISA and its exclusive civil enforcement scheme will countenance a plan's self-help credit being applied to the entire family of a participant without regard to those family members who have not received any "recovery" and are not holding any "identifiable fund." This is clearly an issue of law that the Court reviews de novo. The Ninth Circuit held in *Imel v. Laborers Pension Trust Fund for N. Cal.*, 904 F.2d 1327, 1330 (9th Cir. 1990):

> The interpretation of a statute is a question of law which we review de novo. Findings of fact are reviewed under the clearly erroneous standard. (citations omitted)
>
> The Fund contends that the district court should have deferred to

> the trustee's interpretation of the Plan. *See Malhiot v. Southern Cal. Retail Clerks Union,* 735 F.2d 1133, 1135 (9th Cir.1984) (eligibility decisions by trustees not reversed unless "arbitrary, capricious, made in bad faith, not supported by substantial evidence ..."). As the district court stated, however, the question is not whether the trustees properly interpreted the Plan, but whether the Fund is required to provide seniority benefits to Imel under the Act. **Private parties may not agree to alter statutory duties**. *See Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946). **The court makes its own determination regarding requirements of the Act and will reverse a trustee's decision if it is "erroneous on a question of law."** *Malhiot,* 735 F.2d at 1135. (emphasis supplied)

See also *Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir. 1995) ("a fiduciary may only follow plan terms to the extent that the terms are consistent with ERISA"); *Coleman v. Interco Inc. Divisions' Plans*, 933 F.2d 550, 551 (7th Cir. 1999)(noting that when ERISA and the plan language diverge, "ERISA…trumps.")

MPI's extensive efforts in its instant motion to get an abuse of discretion review disregards the clear law that issues of law are decided de novo by the district court. Since there are no genuine issues of material fact in this case, the Court's decisions will necessarily be decided de novo.

Clearly, the issue of whether the MPI Plan can circumvent ERISA's **exclusive** civil enforcement scheme through extra-judicial measures, thereby avoiding the clear case law limiting plans' reimbursement rights to equitable claims against a specifically identified fund in the possession and control of the plan members against whom the claim is asserted, is purely an issue of

law. Plaintiffs submit that the Supreme Court rulings in *Pilot Life, Russell* (473 U.S. 134 (1985))*, Knudson, Sereboff* and *U.S. Airways, supra*, and the Ninth Circuit decision in *Bilyeu, supra*, are controlling *stare decisis* on this dispositive issue. Likewise, the issue of whether MPI can enforce its SPD's reimbursement and credit rights despite the fact that its formal plan document, the ADT, has no such rights is an issue of law under *CIGNA v. Amara, supra*.

**IX**
**THE RECORD IN THIS CASE CLEARLY INDICATES THAT MPI IS ATTEMPTING TO ALTER ITS STATUTORY DUTIES UNDER ERISA**

MPI does not have any reimbursement provision in its formal plan document, the ADT. (Plaintiffs' Ex. 2). Despite the fact that the Supreme Court clearly held in 2011 in *CIGNA v. Amara* that the formal plan document controls over the SPD, MPI has not bothered to amend its ADT to add any right of reimbursement. Instead, they continue to rely solely on the SPD's provisions. Even though the Supreme Court has held for nearly 30 years that ERISA's statutory civil enforcement scheme is exclusive, MPI designed credit and recoupment provisions in its SPD to circumvent the "appropriate equitable relief" limitation in 29 USC §1132(a)(3). Despite the fact that the Supreme Court and Ninth Circuit have repeatedly held that a plan cannot seek to impose personal liability on a participant and must only seek recovery of the identifiable fund of the personal injury recovery, the MPI plan seeks to hold an entire family personally liable for the recovery of one family member by eliminating the entire family's health coverage. MPI has also filed a counterclaim against Norman Mull seeking to impose personal liability on a plan member whom they have previously argued does not have Lenai Mull's recovery. When the Ninth Circuit held in *CGI v. Rose, supra*, that all equitable

defenses could be raised by a plan member against an ERISA plan's claim for reimbursement, MPI refused to follow that binding precedent, even after the Court ruled against them on their 12(b)(6) motion. All of these actions reflect an attitude on MPI's part that it is not bound by ERISA where it has purported to contract around ERISA's equitable protections. This is simply not permissible under federal law.

## X
## THE SOLICITOR GENERAL HAS JUST FILED A BRIEF IN THE SUPREME COURT INDICATING THAT *BILYEU* WAS CORRECTLY DECIDED BY THE NINTH CIRCUIT

Eight months ago, MPI cited to the Court *Thurber v. Aetna Life Insurance Co.*, 712 F.3d 654 (2d Cir. 2013) as rejecting the Ninth Circuit position in *Bilyeu, supra*, and argued that the Supreme Court would likely grant certiorari since it had just requested a brief from the Solicitor General. See Doc. 46-1, p. 8, Doc. 48, pp. 10-11. MPI's argument implied that certiorari would be granted due to the split in the circuits and that the majority view would prevail over the Ninth Circuit position in *Bilyeu*. The Solicitor General has just filed its brief in *Thurber*, recommending against the grant of certiorari, and indicating strongly that the Ninth Circuit's position in *Bilyeu* is correct and the view of *Thurber* and the majority incorrect. A full copy of the brief is filed herewith as Exhibit 8.

The Court will recall that in *Bilyeu*, the Ninth Circuit emphasized the requirement of an "identifiable fund" against which the ERISA plan must proceed and that this specifically identified fund be within Bilyeu's "possession and control." 683 F.3d 1083 at 1094. See further discussion in plaintiff's motion for summary judgment, P&A, pp. 8-9, 12-14 (Doc. 56) and Point V above. The *Bilyeu* court expressly followed the Supreme Court's interpretation of the equitable limitations on ERISA plans' recovery efforts set

forth in *Knudson* and *Sereboff, supra*.

The Solicitor General's brief expressly indicates that the Second Circuit "erred in holding that respondent (Aetna) could recover here." Ex. 8, p. 5. After discussing the views of the First, Second, Third, Sixth and Seventh Circuits as allowing plans to enforce equitable liens against plan participants despite dissipation of the funds against which the lien was asserted, the brief adopted the reasoning of the Ninth Circuit in *Bilyeu*:

> In the government's view, the court of appeals in this case **erred in concluding that a plan fiduciary can enforce an equitable lien regardless of whether the funds at issue have been dissipated. Accord Bilyeu**, 683 F.3d at 1094-1095. (emphasis supplied) Ex. 8, p. 9.

The brief also indicates that an equitable lien can be established and enforced only where there is property subject to the lien. (id at p. 12) Where the "property subject to the lien can no longer be traced, the equitable lien cannot be enforced." Id at p. 12, quoting from *Restatement Restitution*, §161. Because any enforceable trust is constructive rather than express, personal liability may not be imposed. Id p. 13. Nothing in the statutory scheme of ERISA imposes fiduciary obligations on plan participants or beneficiaries. Id at 13. Because the underlying facts in *Thurber* made for a poor vehicle for resolving the split in the circuits, the view of the United States is that the petition for certiorari should be denied.

Unless the Supreme Court flatly rejects the opinion and input of the United States that it had recently requested, the impact of this brief is that the petition is likely to be denied and *Bilyeu* stands, with the support of the United States behind it. Since *Bilyeu* would not allow an equitable lien to be asserted against the person who gained the recovery and dissipated it, it is absolutely clear that the Ninth Circuit will not tolerate the assertion of a

contractual credit against future covered medical expenses of plan members who recovered nothing.

**CONCLUSION**

Plaintiffs agree that there are no genuine issues of material fact precluding disposition of this case on the parties' cross-motions for summary judgment. However, there are many contentions of law that MPI sets forth as undisputed issues of fact. The key example is MPI's assertion that its SPD is its formal plan document. The SPD cannot be the formal plan document because it lacks three of the four requisite elements of a formal plan under 29 USC §1102. Even after the Supreme Court held in *CIGNA v. Amara* that only the formal plan document is enforceable, MPI failed to add any reimbursement provision to its formal plan, the ADT. Consequently, under *Amara*, it has no enforceable reimbursement rights.

MPI has disregarded decades old Supreme Court precedent holding ERISA's civil enforcement scheme to be **exclusive**. It has also disregarded recent Supreme Court precedent in the *Knudson, Sereboff* and *US Airways* cases that a plan can only seek equitable relief from the holder of the recovery and cannot seek to impose personal liability against plan participants. MPI ignores the Supreme Court and Ninth Circuit requirement that it must seek its recovery from an identifiable fund and not from the nebulous notion of the Mull family's possible need for future medical care covered by the plan. The Ninth Circuit decision in *Bilyeu* appears to be controlling on this issue. The United States has just filed a brief in *Thurber* at the request of the Supreme Court adopting the rationale of the Ninth Circuit in *Bilyeu* and rejecting the view of other circuits that a plan can pursue reimbursement against the holder of a recovery who has dissipated it.

Consequently, *Bilyeu* stands and the Ninth Circuit is unlikely to tolerate credit actions against ERISA participants who recovered nothing when it has already struck down an action against a holder of a recovery who has spent it.

MPI has not cited a single case in which any judge in the country has expanded an ERISA plan's credit rights to anyone other than the recipient of the recovery—and certainly not to an entire family. Such an expansion of the application of credit rights would have a very detrimental impact on plan participants and would likely lead to employer plans seizing employees' paychecks to recoup benefits paid to family members.

This case should be resolved on the law in the moving plaintiffs' favor. The MPI plan should not be allowed to impose personal liability or suspend the health benefits of Mull family members who recovered nothing for Lenai Mull's injury. As a matter of law, MPI's motion should be denied and the Mull's motion for summary judgment should be granted.

Respectfully submitted,

Dated: May 16, 2014

/s/Donald M. de Camara
Donald M. de Camara
Daniel E. Wilcoxen
Attorneys for Plaintiffs