1  Kathryn J. Halford, Esq. [SBN 68141]
   E-mail: *kjhalford@wkpyc.com*
2  Elizabeth Rosenfeld, Esq. [SBN 106571]
   E-mail: *rosenfeld@wkpyc.com*
3  WOHLNER KAPLON PHILLIPS
   YOUNG & CUTLER
4  16501 Ventura Boulevard, Suite 304
   Encino, California 91436
5  Telephone: (818) 501-8030
   Facsimile: (818) 501-5306
6
   Attorneys for Defendants Motion Picture Industry Health Plan,
7  Defendants and Counterclaimant Board of Directors of the
   Motion Picture Industry Health Plan
8
                UNITED STATES DISTRICT COURT
9
        CENTRAL DISTRICT OF CALIFORNIA (WESTERN DIVISION)
10

11  LENAI MULL, DANIELLE MULL,        )  Case No.: CV12-6693VBF (MANx)
    NORMAN MULL                        )
12                                      )  Assigned to:
                                        )  Hon. Valerie Baker Fairbank
13          Plaintiffs,                 )
                                        )
14      vs.                             )  **REPLY MEMORANDUM OF POINTS
                                        )  AND AUTHORITIES IN SUPPORT OF
15  MOTION PICTURE INDUSTRY            )  DEFENDANTS' MOTION FOR
    HEALTH PLAN; BOARD OF              )  SUMMARY JUDGMENT OR IN THE
16  DIRECTORS OF MOTION PICTURE        )  ALTERANTIVE SUMMARY
    INDUSTRY HEALTH PLAN               )  ADJUDICATION**
17                                      )
                                        )  No Hearing Date by Order of Court
18          Defendants.                 )
                                        )  [Dkt. 53]
19                                      )
    _____)  Action Filed: August 3, 2012
20                                      )
    BOARD OF DIRECTORS OF THE          )  Trial Date: Not Set
21  MOTION PICTURE INDUSTRY            )
    HEALTH PLAN,                       )
22                                      )
            Counterclaimant,            )
23                                      )
        vs.                             )
24                                      )
    LENAI MULL, an individual; NORMAN )
25  MULL, an individual,               )
                                        )
26          Counterdefendants.          )
    _____)
27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................. 1

II.  ARGUMENT..................................................................................... 2

     A. The Third Party Liability and Overpayment Provisions Are Plan Terms .... 2

     B. The Plan's Summaries of Material Modifications Are Admissible As
        Business Records........................................................................ 5

     C. MPI's Disclosure of the Administrative Record Is Admissible .................. 6

     D. ERISA Was Designed to Protect the contractual Rights of All
        Participants .............................................................................. 7

     E. Plaintiffs Are Not Entitled to the Relief Requested Under ERISA
        §§502(A)(1)(b) OR 502(A)(3) .................................................... 9

     F. The Decisions in *Bilyue* and the Grant or Denial of Certiorari in
        Thruber Do Not Affect the Contractual Rights of the Plan ......................... 9

     G. There is Noting in the Record Which Supports the Claim of
        Plaintiffs' that the Plan is "Attempting to Alter its Statutory duties
        Under ERISA."........................................................................... 10

III. CONCLUSION ............................................................................... 11

# TABLE OF AUTHORITIES

Page

## Case Law

Anderson v. Suburban Teamsters of Northern Illinois Pension
Fund Board of Trustees,
    588 F.3d 641, 648 (9th Cir. 2009) ........................................................................ 8

Bilyeu v. Morgan Stanley Long Term Disability Plan, 683 F.3d 1083 (2012) ............ 10

CIGNA v. Amara, 131 S. Ct. 1866 (2011), 179 L.Ed.2d 843 ...................................... 3

Bidwell v. University Med. Center, 685 F.3d 613, 620 (6th Cir. 2012) ....................... 3

Estate of Bratton v. National Union Fire Ins. Co. of Pittsburgh,
    215 F.3d 516, 521 (5th Cir. 2000) ...................................................................... 7

Eugene v. Horizon Blue Cross Blue Shield of New Jersey,
    663 F.3d 1124, 1131-32 (10th Cir. 2011)...............................................................4

Firestone Tire and Rubber Co. v. Burch, 489 U.S. 101 (1989) ................................... 7

Gonzales v. Unum Life Insurance Company of America,
    861 F.Supp.2d 1099, 1108-09 (S.D. Cal. 2012)................................................. 4

Ingorvaia v. Reliastar Life Ins. Co., 944 F.Supp.2d 964 (SD CA 2013) .................... 4

L&W Associates Welfare Ben. Plan v. Estate of Wines ex re. Wines,
    2014 WL 117349 ............................................................................................. 3

Langlois v. Metropolitan Life Ins. Co., 833 F.Supp.2d 1182, 1186 (2011) ................ 3,4

Metro Life Co. Ins. v Glenn,
    554 U.S. 105, 113-114, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)..................... 8

Schwartz v. Prudential Ins. Co. of America, 450 F.3d 697, 699 (7th Cir. 2006) .......... 4

U.S. Airways, Inc. v. McCutcheon,
    569 U.S. __, 133 S.Ct. 1537, 185 L.Ed. 2d 654 (2013) ..................................... 8, 10

Uniforma/Shelby Business Forms, Inc. v. NLRB,
    111 F.3d 1284, 1293-04 (6th Cir. 1997 ............................................................. 6

1

2 **Federal Statutes**

3                                                                              Page

4 Employee Retirement Income Security Act

5     §2(2), 29 U.S.C. §1001(2), 29 U.S.C. § 2001, *et seq.* ........................................ 7

6     § 402(b), 29 U.S.C. §1102(b) ........................................................................ 2

7     § 404(a)(1)(A), 29 U.S.C. § 1104(a)(i)(A) ...................................................... 9

8     § 404(a)(1) (B) , 29 U.S.C. § 1104(a)(i)(B) ..................................................... 9

9     § 404(a)(1) (D), 29 U.S.C. § 1104(a)(1)D ....................................................... 9

10     §502, 29 U.S.C. §1132 ................................................................................10

11     § 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) ................................................. 1, 8,9

12     § 502(a)(1)(3), 29 U.S.C. §1132(a)(3) .............................................................. 1

13     § 502(a)(3) ..........................................................................................9, 10

14

15 Federal Rules of Evidence

16     Rule 408.......................................................................................... 6

17     Rule 803....................................................................................... 5, 6

18

19 Federal Regulations

20     CFR § 2520.104(b)(3) ........................................................................ 5

21

22

23

24

25

26

27

28

1 | I.      **INTRODUCTION**

2 |         The issue before this Court on the parties' cross-motions for summary judgment

3 | is simply whether Plaintiffs are entitled to the relief requested under ERISA

4 | §502(a)(1)(B),29 U.S.C. §§1132(a)(1)(B)and ERISA§502(a)(3), 29 U.S.C.§ 1132(a)(3)

5 | as alleged in Plaintiffs' First Amended Complaint ("FAC").   The undisputed evidence

6 | establishes that  Defendants, the Motion Picture Industry Health Plan ("Plan") and the

7 | Board of Directors of the Motion Picture Industry Health Plan ("Board") (collectively,

8 | "Defendants") are entitled to Summary Judgment on each of Plaintiffs' claims because

9 | Plaintiffs have received anticipated benefits in accordance with the terms of the Plan

10 | and the Plan's Benefits/Appeals Committee ("BAC") did not abuse its discretion in

11 | upholding the Plan's use of its overpayment provisions to recoup the amounts owed to

12 | the Plan.   Plaintiffs' claim for injunctive relief under ERISA §502(a)(3), 29 U.S.C.

13 | §1132(a)(3), as a matter of law, is not "appropriate" because it does not seek to enjoin

14 | any "act or practice" which violates any provision of ERISA, or to redress such

15 | violation or to enforce any provision of ERISA.  Moreover, because ERISA

16 | §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) affords Plaintiffs adequate relief in their claim

17 | for benefits, relief is not available under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3).

18 | The issues with respect to the Plan's right to enforce its equitable lien by agreement on

19 | the proceeds of the third party recovery are not at issue.[1]

20 |         The issue is simply whether Plaintiffs are entitled to benefits demanded which are

21 | subject to recoupment under the Plan's contractual overpayment procedures.   There is

22 | simply nothing in the Plan or ERISA which supports their claims.

23 | / / /

24 |

25 |

26 | [1] Defendants' Amended Answer and Counterclaim seeks to impose a constructive trust or equitable lien by agreement to the extent that Normal Mull is in possession of any portion of the third party Recovery.  Discovery has not yet begun and the

26 | parties are awaiting ruling on the pending Motion to Dismiss. This action  is stayed as to Lenai Mull by her filing of the

27 | Chapter 7 Petition in Bankruptcy, docketed as U.S.B.C. – Eastern District, Case No. 14-0770-B-7 ("Bankruptcy Case").  On

27 | May 21, 2014, Defendants filed an Adversary Complaint in the Bankruptcy Case Objecting to Dischargeability of the Debt

28 | which is docketed as Adversary Case No. 14-01055-B.

1   **II.    ARGUMENT**

2   **A. The Third Party Liability and Overpayment Provisions Are Plan Terms**

3   Plaintiffs fail to recognize the distinction between documents governing the

4   operation of the Plan and the Plan Document.  The Agreement and Declaration of Trust

5   does not provide any description of the benefits under the MPI Health Plan.  Rather, the

6   Declaration of Trust governs the operation of the Plan and vests in the Directors the

7   authority to establish a Plan of Benefits, including full authority to determine all

8   questions of nature, amount and duration of benefits to be provided.  [Sep. Stmt. ¶ 8.]

9   The Declaration of Trust further provides that it is the responsibility of the Directors to

10  specify the detailed basis on which benefits are provided and to furnish the writing to

11  appropriate parties including plan participants, thereby incorporating the resulting

12  document into the express terms of the Plan. [Sep. Stmt. ¶ 10.]

13  Pursuant to this authority, the Directors established a Plan of Benefits and the

14  SPD was furnished to the Plan participants as their written Plan of Benefits.  [Sep. Stmt.

15  ¶ 19.]   The document which Plaintiffs characterizes as simply the SPD is the Plan of

16  Benefits.  The SPD expressly states that the document serves as both the SPD and the

17  Plan Document.  [Sep. Stmt. ¶¶ 12, 104, 108.]  Given the nature of the Declaration of

18  Trust, which merely serves as the springboard by which Directors have the discretion to

19  determine the Plan of Benefits, the SPD is incorporated into the terms of the

20  Declaration of Trust.

21  Moreover, the SPD satisfies all of the requirements for a valid Plan Document as set

22  forth in ERISA §402(b), 29 U.S.C. §1102(b) which provides:

23  "Every employee benefit plan shall -- 1) provide a procedure for

24  establishing and carrying out a funding policy and method consistent

25  with the objectives of the Plan and the requirements of this title;

26  2) describe any procedure under the plan for the allocation of

27  responsibilities for the operation and administration of the plan...

28  3) provide a procedure for amending such plan, and for identifying

1  the persons who have authority to amend the plan; and 4) specify the

2  basis on which payments are made to and from the plan." [Sep. Stmt.

3  ¶¶ 14, 17, 18, 107.]

4  Because the SPD satisfies each of the four (4) requirements as outlined above, the SPD

5  is a valid Plan Document, and its terms, constitute the terms of the Plan and must be

6  enforced as written.

7  The decisions in *CIGNA v. Amara*, 131 S. Ct. 1866, 179 L. Ed. 2d 843(2011)

8  and subsequent cases do not preclude the Plan's enforcement of its third party liability

9  and overpayment provisions. The decision in *Amara is distinguishable*. Amara held

10  that the terms of a plan will not be changed to conform to conflicting language in an

11  SPD, and therefore the terms of the SPD were not enforceable and did not constitute the

12  terms of the plan. *Amara*, 131 S. Ct. 1866 at 1877-78. Cases subsequent to *Amara*

13  have clarified the limited applicability and scope of the Court's decision to situations

14  where there is a conflict in language of the SPD and the controlling plan document. *See*

15  *Bidwell v. University Med. Center*, 685 F.3d 613, 620 (6th Cir. 2012); *Langlois v.*

16  *Metropolitan Life Ins. Co.*, 833 F.Supp.2d 1182, 1186 (2011). Here, there is no

17  inconsistency in terms between a Plan Document and SPD, because the documents are

18  one in the same. In a recent decision in *L&W Associates Welfare Ben. Plan v. Estate of*

19  *Wines ex re. Wines*, 2014 WL 117349 (unpublished), the Court failed to apply *Amara*

20  when it held that a SPD constitutes the plan document if there is no other Plan

21  Document. *Wines*, 2014 WL 117349 at 8. As is the case for MPI Health Plan, the Plan

22  in *Wines* had no document other than the SPD that described the plan of benefits to

23  participants, therefore the SPD was determined to be the Plan Document and the terms

24  of the SPD were enforced as the terms of the Plan. *Id.* at 7-9. Based upon this

25  precedent as well as the incorporation of the SPD into the plan pursuant to the

26  provisions of the Declaration of Trust, the SPD is the Plan Document. The terms of the

27  SPD constitute terms of the Plan and must be enforced as written.

28

1    Plaintiffs have not argued that the Third Party Liability and Overpayment
2  provisions in the SPD are inconsistent with the terms of the Agreement and Declaration
3  of Trust.    Instead, Plaintiffs argue that because these terms are not in the Agreement
4  and Declaration of Trust, the terms cannot be enforced.    Because there is no conflict
5  between the SPD and the Agreement and Declaration of Trust, the terms of the SPD are
6  legally enforceable. *Langlois*,  833 F.Supp.2d at 1186-87; *See also Eugene v. Horizon*
7  *Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1131-32 (10th Cir. 2011).
8    Plaintiffs' further allege that MPI never properly amended the formal plan
9  document to include the right of reimbursement, credit or incorporate the terms of the
10  SPD.  Plaintiffs cite multiple cases including *Ingorvaia v. Reliastar Life Ins. Co.,* 944
11  F.Supp.2d 964 (SD CA 2013) as support for their argument that the terms of the SPD
12  are not binding.  Unlike the Plan in *Ingorvaia*, the Agreement and Declaration of Trust
13  expressly incorporates the terms of the SPD in two places: 1) in its establishment of the
14  plan of benefits which requires the directors to specify in writing the detailed basis on
15  which benefits are to be provided, and 2) where it confers the power to construe and
16  interpret the of plan of benefits, including any summary plan description or other
17  writing disseminated to Employees.  [Sep. Stmt. ¶ 10, 105.];   *See also Gonzales v.*
18  *Unum Life Insurance Company of America*, 861 F.Supp.2d 1099, 1108-09 (S.D. Cal.
19  2012).  Plaintiff's reference to *Schwartz v. Prudential Ins. Co. of America*, 450 F.3d
20  697, 699 (7th Cir. 2006), is irrelevant, because unlike the plan in *Schwartz*, the SPD's
21  Overpayment and Third Party Liability provisions do not provide rights which the plan
22  itself did not confer.  The Directors drafted the SPD and included provisions such as the
23  Overpayment and Third Party Liability provisions under this express delegation of
24  powers to establish and provide in writing the detailed basis of benefits under the Plan.
25  The Agreement and Declaration of Trust confers upon the Directors the authority to
26  specify the terms upon which payments of Benefits are to be made under the Plan and
27  these provisions serve this exact purpose.  For these reasons the Third Party Liability
28

4

1  and Overpayment provisions constitute terms of the Plan and should be enforced as
2  written.

## B. The Plan's Summaries Of Material Modifications Are Admissible As Business Records of the Plan

The "For Your Benefit Newsletter" ("Newsletter") properly serves as the Plan's summary of material modifications providing notice to plan participants of Plan benefit changes. [Sep. Stmt. ¶¶ 99, 100.] ERISA imposes multiple reporting and disclosure requirements, including the distribution of Summaries of Material Modification ("SMM"). 29 C.F.R. §2520.104(b)(3). The SMM is a plain language document that describes a plan amendment or change to a plan's SPD. The only information required to be included in the SMM is a summary, written in a manner calculated to be understood by the average participant, of any modification to the plan or change in the information required to be included in the summary plan description. *Id.*

The Plan is subject to the reporting and disclosure requirements of ERISA. [Sep. Stmt. ¶ 6.] It complies with its statutory obligation through the distribution of the Newsletter. [Sep. Stmt. ¶ 115.]

The Newsletter qualifies as a business record of the Plan and is admissible under the business record exception to the hearsay rule. Fed. Rule of Evid., Rule 803 provides that a record of an act, condition, opinion, or diagnosis is not excluded by the rule against hearsay if:

> A) The record was made at or near the time by, or from information transmitted by someone with knowledge; B) the record was kept in the course of regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; C) making the record was a regular practice of that activity; D) all of these conditions are shown by testimony of the custodian or other qualified witness, or by a certification...; and E) neither the source of information nor the

5

1    method or circumstances of preparation indicate a lack of
2    trustworthiness.

3       The Newsletter is created and mailed to participants and beneficiaries each
4  quarter. [Sep. Stmt. ¶¶99, 115.]   The Newsletter is kept in the regular course of the
5  Plan's administration.. Furthermore, the creation of the Newsletter is a regular business
6  practice, as it serves as a routine form of Plan information disclosed to its participants,
7  each quarter, to inform participants of their rights and benefits under the Plan as
8  required under ERISA. [Sep. Stmt. ¶ 115.] Distribution of and access to the Newsletter
9  can be verified by the Plan's retention of such records in mailing the Newsletters to
10 participants and beneficiaries, as well as the availability of Newsletters on the Plan's
11 website. [Sep. Stmt. ¶¶99, 100.] The Newsletter therefore qualifies as a business record
12 under FRE 803, and is admissible.

13      **C. MPI's Disclosure of the Administrative Record  Is Admissible**

14      The disclosure of the Administrative record presented to the BAC on appeal does
15 not violate Fed. Rule of Evid., Rule 408 which provides that evidence of compromise
16 offers and negotiations are not admissible. Fed R. of Evid. 408.  The evidence that
17 Plaintiff argues is inadmissible includes information on the settlement received by
18 Plaintiffs from a third party and claims and appeals documentation. [Sep. Stmt. ¶ 66.]

19      The information confirming Plaintiffs' receipt of a $100,000 third party
20 settlement is evidence of a settlement offer and acceptance of a claim separate from the
21 claim in dispute.  Courts have held that FRE 408 does not bar the introduction of
22 settlement agreements with third parties because the rule only bars the use of
23 compromise evidence to provide the validity or invalidity of the claim that was the
24 subject of the compromise not some other claim. (*Uniforma/Shelby Business Forms,*
25 *Inc. v. NLRB,* 111 F.3d 1284, 1293-04 (6th Cir. 1997).)  When the $100,000 settlement
26 was entered into between Plaintiffs and the third party, there was no dispute between
27 Plaintiffs and the Plan. At the time the settlement was entered into, Plaintiffs Norman

28

1   Mull and Lenai Mull had signed the Plan's lien and agreed to reimburse the Plan from
2   the settlement. [Sep. Stmt. ¶¶ 47, 53, 56.]

3       The Administrative Record, includes the letter dated July 12, 2011 from
4   Plaintiffs' counsel to the Plan. The Administrative Record consists of all of the
5   information that was provided to Defendants prior to making the benefits determination
6   on the initial claim and presented on appeal to the BAC. [Sep. Stmt. ¶¶ 63-67.]   In
7   assessing a plan administrator's benefit determinations under ERISA, the reviewing
8   court must review the record developed before the plan administrator to determine
9   whether the plan administrator acted in accordance with ERISA. *Firestone Tire and*
10  *Rubber Co. v. Burch*, 489 U.S. 101 (1989). The courts have held that the administrative
11  record consists of relevant information made available to the administrator prior to the
12  complainant's filing of a lawsuit and in a manner that gives the administrator a fair
13  opportunity to consider it. *Estate of Bratton v. National Union Fire Ins. Co. of*
14  *Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000).  All of the evidence presented by
15  Defendants falls under this definition of administrative record and therefore is
16  admissible.

17      **D. ERISA Was Designed to Protect the Contractual Rights of All**
18         **Participants**

19      The Plan's third-party liability provisions and its overpayment procedures neither
20  violate ERISA nor are in conflict with the Congressional findings and declaration of
21  policy cited by Plaintiffs [Opposition, at pps. 13:19-28 – 14:1-18.]  The Congressional
22  Findings and Declaration of Policy expresses concern that "employees and their
23  beneficiaries have been deprived of 'anticipated benefits.'" [ERISA §2(2), 29 U.S.C.
24  §1001(2)]

25      Plaintiffs are unable to cite any section of ERISA which has been violated by the
26  Defendants' contractual enforcement of the Plan's overpayment procedures. Defendants
27  have fully complied with their disclosure obligations under ERISA. [Sep. Stmt.¶¶ 11-
28  13, 19-24, 98-99, 106.]  The fact that the Mulls were "not aware" of the obligation only

1   evidences their failure to read the disclosure material or their conscience decision to

2   ignore provisions perhaps based upon flawed legal advice. [Pls. SUF #10; Sep. Stmt.

3   19, 98-100.] It does not support a claim that they have failed or will fail to receive

4   anticipated" benefits. As reinforced by the Court in *U.S. Airways, Inc. v. McCutcheon,*

5   569 U.S. __, 133 S.Ct. 1537, 185 L.Ed. 2d 654 (2013), equitable principles cannot

6   override written plan terms. The Plan's overpayment procedures are designed to

7   preserve plan assets for the benefit of *all* participants in the Plan. [Sep. Stmt. ¶114.]

8   The Mulls simply seek benefits to which they are not entitled to under the terms of the

9   Plan to the detriment of *all* other Plan participants.

10       Although Plaintiffs do not directly address the proper standard of review of the

11   BAC's decision on appeal, they do reference the Supreme Court opinion in *Metro Life*

12   *Ins. Co. v Glenn,* 554 U.S. 105, 113-114, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

13   [Opposition, at p. 14:15-18] in support of the general statement of "Congress' desire to

14   offer employees enhanced protection for their benefits outweighs other ERISA

15   considerations. [Opposition, at p. 14: 15-18]. The decision in *Glenn* does not support,

16   as demanded by Plaintiffs, the Court's rewriting of the Plan or disregarding written Plan

17   terms. The Court in *Glenn* does not address the merits of the claim but rather the

18   appropriate standard of review in a benefit denial action under ERISA §502(a)(1)(b)

19   when the decision maker may be operating under a conflict of interest. Where a plan

20   grants discretionary authority, a deferential standard of review is appropriate and if the

21   fiduciary is operating under a conflict of interest, that conflict must be weighed as a

22   "factor" in determining whether there is an abuse of discretion. *Id.* at 105. It does not

23   warrant a change in the standard of review only a heightened standard of review for an

24   abuse of discretion. *Id.* at 105.

25       Plaintiffs do not allege that the BAC operated under a structural conflict of

26   interest. As a matter of law, a Taft-Hartley multiemployer Plan's Trustees do not

27   operate under a conflict of interest. See *Anderson v. Suburban Teamsters of Northern*

28   *Illinois Pension Fund Board of Trustees,* 588 F.3d 641, 648 (9th Cir. 2009) [See, Sep.

1  Stmt. ¶¶ 1-7.] The BAC's decision interpreting the Plan and denying Plaintiffs' appeal
2  is reviewed by this Court for abuse of discretion.

3      Plaintiffs' "public policy" argument [Opposition, p. 12:23-28, 13:1-18] is without
4  legal or evidentiary support and contravenes the primary policy underlying the adoption
5  of ERISA which is to ensure that the participants receive "anticipated" benefits. ERISA
6  imposes duties and establishes safeguards to ensure that this occurs. ERISA imposes
7  fiduciary duties upon Directors to act for the sole and exclusive benefit of *all*
8  participants and in accordance with Plan Documents. ERISA §§404(a)(1)(A) (B) (D),
9  29 U.S.C. § 1104(a)(1)(A)(B)(D). The recoupment of overpaid benefits is consistent
10 with the Defendant's fiduciary duties and does not violate "public policy".

11      **E. Plaintiffs Are Not Entitled to the Relief Requested Under ERISA**
12          **§§502(a)(1)(B) or 502(a)(3).**

13      Defendants do not dispute that the claim for benefits is properly brought under
14 §502(a)(1)(B) and can be fully addressed by this Court under this section. The remedies
15 available to Defendants under §502(a)(1)(B) are clearly adequate and therefore the
16 claim for injunctive relief is not "appropriate" and fails as a matter of law. Moreover,
17 Plaintiffs' claim for injunctive relief under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3)
18 is not "appropriate" because the Plaintiffs seek benefits or clarification of rights to
19 future benefits in violation of the express Plan terms.

20      **F. The Decisions in *Bilyue* and the Grant or Denial of Certiorari in**
21          **Thruber Do Not Affect the Contractual Rights of the Plan.**

22      As framed, the question presented in the Petition for Writ of Certiorari *Thurber*
23 *v. Aetna Life Ins. Co.*, (2013) No.13-130, 2013 WL 3934032 at *1 relates to the scope
24 of affirmative remedial relief available under ERISA §502(3). Specifically, "whether
25 an ERISA Plan may enforce an *equitable lien by agreement* under §502(a)(3) where it
26 has not identified a particular fund that is in the defendant's possession and control at
27 the time the Plan asserts its equitable lien." The Petition notes the split in the Circuits
28 between the First, Second, Third, Sixth and Seventh Circuits which have held the Plan

1    may do so, and the Eighth and Ninth Circuits which have held that it may not. [*See*

2    *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (2012).]

3        To the extent that the Court denies the Petition for Certiorari in Thurber or grants

4    the Petition and upholds the Ninth Circuit decision in *Bilyue,* Defendants will be

5    entitled to a constructive trust only upon the proceeds of the Recovery that remain in the

6    possession and control of Norman and Lenai Mull.[2] To the extent the court grants the

7    Petition for Certiorari and overrules the decision in *Bilyue*, Defendants will be entitled

8    to judgment regardless of whether the third party Recovery remains in their possession

9    or control. *This is not the issue before this Court on the cross motions for summary*

10    *judgment.* Plaintiffs are not defending the imposition of a *constructive trust.* Rather,

11    Plaintiffs by their FAC are seeking to enjoin the Plan's enforcement of *contractual*

12    terms of the Plan which were clearly communicated to them in accordance with

13    provisions of ERISA. The enforceability of these contractual self-help provisions was

14    put to rest by the Court's decision in *McCutchen* which reaffirmed the primacy of the

15    written plan terms.

16        **G. There is Nothing in the Record Which Supports the Claim of Plaintiffs'**

17             **that the Plan is "Attempting to Alter its Statutory Duties Under**

18             **ERISA."**

19        ERISA §502, 29 U.S.C. § 1132 does not impose statutory duties upon the

20    Defendants. Rather, §502 is simply the civil enforcement scheme to address violations

21    of ERISA and to enforce the terms of a plan. Defendants do not dispute Plaintiffs'

22    statement that the Court and the Ninth Circuit have held that there is no claim for

23    imposition of a constructive trust as "appropriate equitable relief" under §502(a)(3)

24    unless there is an identifiable fund over which a participant has possession or control.

25    Nothing in these decisions, however, addresses the enforceability *contractual* self-help

26    remedies adopted as part of the written Plan design. Plaintiffs are simply unable to

27    point to any violation of a statutory duty imposed upon Defendants by ERISA which

28

---

[2] Defendants' action as to Lenai Mull is currently stayed and is being litigated as an adversary proceeding in the Lenai Mull's Bankruptcy Case No. CV 14-10770-B-7.

1  has been violated.  The Defendants do not seek to hold, as suggested "an entire family
2  personally liable for the recovery of one family member by eliminating the entire
3  family's health coverage." [Opposition, p. 17:23-25}.  Plaintiffs' health coverage has
4  not been eliminated as contended.  Plaintiffs continue to be eligible for benefits. [Sep.
5  Stmt. ¶¶ 92-97.]  In accordance with the terms of the Plan, the Defendants are recouping
6  amounts owed to the Plan (trust assets) from future benefits payable on behalf of
7  participant Norman Mull and his Dependents as a result of the violation of the express
8  terms of the Plan.

9  **III.    CONCLUSION.**

10         For the foregoing reasons, the Plans respectfully request that the Plaintiffs'
11  motion for summary judgment be denied and that the Court grant Defendants' motion
12  for summary judgment and enter judgment in favor of Defendants and against Plaintiffs
13  Norman Mull, Danielle Mull and Carson Mull on each of their Causes of Action and
14  claims in Plaintiffs' First Amended Complaint.

16  Dated:  May 30, 2014                    Respectfully submitted,

17                                          Kathryn J. Halford
                                            Elizabeth Rosenfeld
18                                          WOHLNER KAPLON PHILLIPS
                                            YOUNG & CUTLER

20                                          By:  _____
21                                               Kathryn J. Halford
                                                 Elizabeth Rosenfeld
22                                               Attorneys for Defendants
                                                 Motion Picture Industry Health Plan;
23                                               Board of Directors of the Motion
                                                 Picture Industry Health Plan

11