UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES -- GENERAL

Case No.   **LA CV 12-06693-VBF**                    Dated:        September 30, 2014

Title:   ***Lenai Mull, Norman Mull, Danielle Mull, & Carson Mull, Plaintiffs v. Motion Picture Industry Health Plan & Board of Directors of Motion Picture Industry Health Plan, Defendants***

***Motion Picture Industry Health Plan and Board of Directors of Motion Picture Industry Health Plan, Counterclaimants v. Lenai Mull, Counterclaim-Defendant*** [1]

---

PRESENT:   HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

N/A                                    N/A
Courtroom Deputy                        Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

N/A                                    N/A

**Proceedings (in chambers):   Opinion & Order**   **(1)   Granting the Motion for Summary Judgment of Plaintiffs Norman, Danielle, & Carson Mull on the First Amended Complaint ("FAC");**

**(2)   Denying the Defendants' Motion for Summary Judgment or in the Alternative Summary Adjudication on the FAC;**

---

[1]      Defendant Plan did not assert any counterclaim against plaintiffs Danielle Mull and Carson Mull.  The Plan did assert a counterclaim against plaintiff Norman Mull ("Norman"), but the undersigned granted Norman's Fed. R. Civ. P. 12(b)(6) motion to dismiss that counterclaim for failure to state a claim on which relief could be granted.  *See Mull v. Motion Picture Industry Health Plan et al.*, No. LA CV 13-00205-VBF Doc. 68 (C.D. Cal.. May 30, 2014).  Thus, the Plan's counterclaim remains pending only against plaintiff Lenai Mull ("Lenai"), but these proceedings are suspended until further notice as to Lenai due to an automatic bankruptcy stay.

MINUTES FORM 90                          Initials of Deputy Clerk   ____jmb____
CIVIL - GEN

> **(3)  Directing the Moving Plaintiffs to File an Amended Proposed Order No Later than Monday, October 13, 2014**

This is an action under the Employee Retirement Income and Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, as amended ("ERISA").  The defendants are the Motion Picture Industry ("MPI") Health Plan and the Board of Trustees of the Motion Picture Industry Health Plan (together "the plan").  Plaintiffs Norman Mull, Danielle Mull, and Carson Mull have moved for summary judgment on the FAC, and the defendants have moved for summary judgment on the FAC as well.  As to plaintiffs' motion, the Court has considered the plaintiffs' opening brief (Document ("Doc") 56 and the accompanying declarations of plaintiff Danielle Mull and plaintiffs' counsel (Docs 57-58), plaintiffs's Statement of Uncontroverted Facts and Conclusions of Law (Doc 59), plaintiffs' exhibits (Docs 60-1 through 60-7), the defendants' opposition brief (Doc 65), and plaintiffs' reply brief (Doc 66).  As to the defendants' motion, the Court has considered their opening brief (Doc 63-1) and accompanying Statement of Uncontroverted Facts and Conclusions of Law (Doc 63-2), plaintiffs' opposition brief (Doc 64) and Supplemental Statement of Genuine Issues of Fact (Doc 64-2), and defendants' reply brief (Doc 67).

**As explained in greater detail below, the Court will grant these three plaintiffs' motion for summary judgment on the ground that the reimbursement / recoupment provision which the Plan has enforced, is contained only in the Summary Plan Description ("SPD") and not in any document which constitutes "the plan."  The determination that the provision is not legally enforceable also necessarily defeats the defendants' motion for summary judgment.**  That will leave only one plaintiff / counterdefendant, Lenai Mull, who is subject to a bankruptcy stay.

Defendants concede that this Court has subject-matter jurisdiction under 29 U.S.C. § 1132(a)(1)(B) and that venue is proper because the ERISA plan in question is administered in Studio City, California.  *See* Amended Answer to First Amended Complaint ("Am Ans") (Doc 46-4) ¶¶ 1-2; *see also Couvrette v. Couvrette*, 2013 WL 2898531, *1 (S.D. Cal. June 13, 2013) ("Pursuant to the ERISA venue provision, an action may be filed 'in the district where the plan is administered, where the breach took place, or where a Defendant resides or may be found.'") (quoting 29 U.S.C. § 1132(e)(2)).  Defendants also concede that Lenai exhausted her administrative remedies before filing this action. *See* Am Ans ¶ 12.  It is undisputed that defendant Plan qualifies

MINUTES FORM 90                                    Initials of Deputy Clerk   ___jmb___
CIVIL - GEN

as an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1002(1).  *See* Am Ans ¶ 1.  It is also undisputed that all four plaintiffs are "participants" in the plan or "beneficiaries" as defined by ERISA, 29 U.S.C. §§ 1002(7) and (8).  *See* Am Ans ¶ 4.  The Mulls filed a two-count complaint against the Plan, seeking recovery of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and injunctive relief pursuant to § 1132(a)(3).  The Plan asserted a counterclaim against plaintiffs Lenai and Norman pursuant to 29 U.S.C. § 1132(a)(3)(B), and Norman successfully moved to dismiss the counterclaim.  That left the counterclaim pending against plaintiff Lenai alone.

"Persons Empowered to Bring a Civil Action" provides that a civil action may be brought, *inter alia*,

(1)    *by a participant or beneficiary –*

   (A)    for the relief provided for in subsection (cc ) of this section; or
   (B)    *to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan*;

(2)    by the Secretary, or by a participant, beneficiary, or fiduciary for appropriate relief under section 1109 of this title [personal liability for breach of fiduciary duty];

(3)    *by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter [I. Protection of Employee Benefit Rights] or the terms of the plan or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan*;

(4)    by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of section 1025 [subsection] c of this title [Reporting of Participant's Benefit Rights - Individual Statement By Administrator Furnished to Participants . . . ];

29 U.S.C. § 1132(a)(1) through (4) (emphasis added).

<u>BACKGROUND</u>

Plaintiffs allege that while Lenai was entitled to comprehensive medical benefits under the Plan as a dependent of her father, she sustained severe injuries in an auto accident in February 2010, *see* First Amended Complaint filed Feb. 28, 2013 (Doc 25) ("Am Comp") ¶ 6 & Am Ans ¶ 6.  Lenai underwent multiple surgeries,

MINUTES FORM 90                                      Initials of Deputy Clerk   ___jmb___
CIVIL - GEN

missed substantial time from college, and endured physical and mental pain and suffering, *see* Am Comp ¶ 6. Lenai's total accident-related medical expenses were about $190,000 as of February 2013, and the parties agree that the Plan has paid about $148,000 of those expenses on her behalf, *see* Am Comp ¶ 6 and Am Ans ¶ 6.

The parties agree that the other driver settled Lenai's claims against him for his liability insurance policy limit of $100,000, *see* Am Comp ¶ 7 & Am Ans ¶ 7.  The Plan has demanded that Lenai turn that $100,000 over to the Plan pursuant to a subrogation and reimbursement provision in the Summary Plan Description ("SPD") entitled Claims Involving Third-Party Liability.  *See id.*(citing SPD[2] at 49-50).  Plaintiffs concede that (1) "[b]y its terms," this SPD provision "requires participants and beneficiaries to reimburse the Plan for medical expenses paid by the plan from any personal injury recovery"; (2) the SPD provision "purports to waive all equitable defenses to enforcement, including the make-whole doctrine, the common fund doctrine, and equitable apportionment"; and (3) this SPD provision states that acceptance of benefits from the Plan "'shall act as a waiver of any defense to full reimbursement of the Plan from the Recovery.'"  *Id.* ¶¶ 8-9 (quoting SPD at 50).

By contrast, plaintiffs allege, the cost of Lenai's injuries is at least $2 million, so the settlement did not make her whole.  They reason that since Lenai recovered only about 5% of total damages in her settlement, "she also recovered title to only about 5% of all her damages, including medical expenses . . ."  Am Comp ¶¶ 7 & 9.

Disagreeing, the Plan has refused to pay additional medical bills for Lenai until Lenai turns over the third-party recovery plus interest.  *See* Am Comp ¶ 11; *see also* Am Ans ¶ 15 ("Defendants allege that after the refusal of Plaintiff, Lenai Mull, to reimburse the Plan from the proceeds of her $100,000 Recovery in violation of the unambiguous terms of the Plan, the Plan began recouping the unreimbursed amount from future benefits provided by the Plan as provided at pages 44 and 49 of the Plan and . . . SPD . . ..") and *id.* ¶ 18 ("Defendants

---

[2]

Section 1022(b) of ERISA, codified as 29 U.S.C. § 1022(b), defines the elements of an SPD.  *See Pollok v. Northrop Grumman Health Plan*, 2011 WL 1399793, *5 (C.D. Cal. Apr. 12, 2011), *aff'd*, 537 F. App'x 689 (9th Cir. 2013); *see also* 29 C.F.R. § 2520.102.  An SPD must contain twelve items, including a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; and the procedures to be followed in presenting claims for benefits under the plan.  *See Pollok*, 2011 WL 1399793 at *5 (citing *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1329 (9th Cir. 1996)).

MINUTES FORM 90                                        Initials of Deputy Clerk ___jmb___
CIVIL - GEN

admit that they have enforced the terms of the Plan providing for recoupment of the overpayment which arose from the failure of plaintiff [Lenai] Mull to reimburse the Plan from her $100,000 third[-]party recovery."). The Plan has also refused to pay medical bills for the other plaintiffs, who were not parties to the third-party settlement, citing the same reimbursement / recoupment provision from the Summary Plan Description.

PROCEDURAL HISTORY AND PRIOR RULINGS

Plaintiffs asserted one legal claim and one equitable claim in their original complaint.  Defendants filed a FED. R. CIV. P. 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted.  In December 2012, this Court partially granted and partially denied the motion to dismiss.  As to plaintiffs' legal claim, the Court held that plaintiffs "failed to state a claim that the reimbursement provision violated the clarity requirements of the statute and regulations."  *Mull v. MPI Health Plan et al.*, 937 F. Supp.2d 1161, 1174-77 (C.D. Cal. 2012) (Fairbank, J.) (discussing 29 U.S.C. § 1022(a) and 29 C.F.R. §§ 2520.102-2 and 2520.102-3).

**This Court allowed plaintiffs' equitable claim to survive, however, writing as follows:**

[T]hese arguments by the Plan are not conclusive at the 12(b)(6) stage; they beg the question, which appears at least arguable, whether Ninth Circuit law permits a plan participant/beneficiary to assert equitable defenses to eliminate, restrict, or offset the unjustly harsh effects of a plan's application of a plan provision.

Defendants assert that the Court may not consider equitable defenses and principles in deciding whether, and how, and to what extent a plan administrator may implement a plan provision, until and unless the Plan affirmatively asks for judicial relief.  Yet the defendants have not shown that Ninth Circuit precedent compels that conclusion.  On the contrary, the defendants cite only a Seventh Circuit decision for their proposition that a federal court may not consider the equities of allowing a plan administrator to enforce a plan provision without limitation "where a plan has not filed a civil action nor sought judicial relief to recover" overpayments. * * * Consequently, defendants have not shown that the equitable-defense theory is not based on a cognizable legal theory under federal common law as it exists in this circuit.

In sum, these arguments by the Plan go to the ultimate success or failure of the equitable-defense claim, not the adequacy of those claims for purposes of the *Twombley* / Rule 12(b)(6) / Rule 8 pleading standard.  It is simply not clear as a matter of law, as the plan would have it, that "nothing in . . . any common law developed by the Courts under ERISA . . . authorizes the

intrusion into the contractual relationship between the Plan and Plaintiffs [which is] demanded by the Plaintiffs."  MTD at 9.

The Court finds that the Mulls' allegations and contentions raise their right to relief on their equitable-defense claim above the speculative level. * * *  Plaintiffs have provided a reasonably clear and plain statement of their claim that such a waiver of participants' equitable defenses is unenforceable under *CGI Solutions* . . . 683 F.3d 1113 (9th Cir. 2012) . . . and they have supplied sufficient allegations and contentions to show that this claim is legally cognizable and facially plausible.  * * *  Specifically, the majority in *CGI* stated as follows:

> The Supreme Court . . . has not yet squarely addressed whether the statutory term "*appropriate* equitable relief" requires consideration of traditional equitable defenses. * * *
>
> * * *
>
> * * *  Traditionally at equity, it was within the province of the court to consider concerns of unjust enrichment when fashioning equitable remedies such as an equitable lien or a constructive trust, *even where contract terms attempted to limit their application.*
>
> * * *
>
> *We agree with the Third Circuit that under § 502(a)(3), the district court, in granting "appropriate equitable relief," may consider traditional equitable defenses notwithstanding express terms disclaiming their application.*  * * *
>
> * * *

* * *  The *CGI* panel then remanded, instructing the district court to fashion "appropriate equitable relief" pursuant to § 502(a)(3):

> "Appropriate" relief would presumably include applying the equitable make-whole doctrine, or fashioning other fair relief by reducing the Plan's recovery to . . . the proportion of the beneficiary's actual damages that she recovered. Traditional equitable remedies would also appear to support requiring the Plan to contribute to the firm's fees under the common fund doctrine.  Such traditional equitable principles should apply to the facts presented in this case.

*Mull*, 937 F. Supp.3d at 1177 (quoting *CGI*, 683 F.3d at 1125-26).

The Court granted plaintiffs leave to amend their complaint in specified respects, and stated that the parties could file dispositive motions directed at the forthcoming amended complaint.  *See Mull*, 2012 WL 6913787 at *1182.  The Court advised the parties not to file such motions, however, until after the Supreme

Court decided *US Airways, Inc. v. McCutchen*, *see id.* at 1182 n.10, because McCutchen and his employer had a similar dispute over the availability of equitable defenses against reimbursement pursuant to an ERISA plan.

**As the Supreme Court explains the background of *McCutchen*,**

* * * The plan paid $66,866 in medical expenses arising from the accident on McCutchen's behalf.

McCutchen retained attorneys, in exchange for a 40% contingency fee, to seek recovery of all his accident-related damages, estimated to exceed $1 million.   The attorneys sued the driver responsible for the crash, but settled for only $10,000 . . . .  Counsel also secured a payment from McCutchen's own automobile insurer of $100,000 . . . .  McCutchen then received $110,000 – and after deducting $44,000 for the lawyer's fee, $66,000.

On learning of McCutchen's recovery, U.S. Airways demanded reimbursement of the $66,866 it had paid in medical expenses. [It] relied on . . . its summary plan description:  * * *

*US Airways, Inc. v. McCutchen*, 569 U.S. –, 133 S. Ct. 1537, 1543 (2013) (J. Kagan for the Court, joined by JJ. Kennedy, Ginsburg, Breyer, and Sotomayor).  **Like our Mull plaintiffs, McCutchen participated in**

a health benefits plan that his employer . . . established under . . . ERISA . . . .  That plan obliged U.S. Airways to pay any medical expenses McCutchen incurred as a result of a third party's actions – for example, another person's negligent driving.  The plan in turn entitled U.S. Airways to reimbursement if McCutchen later recovered money from the third party.

*McCutchen*, 569 U.S. at –, 133 S. Ct. at 1542.  **In our case, the Mulls filed an amended complaint in February 2013; defendants answered in March 2013, asserting affirmative defenses but no counterclaim. In April 2013 the Supreme Court decided *McCutchen*, holding as follows:**

This Court has held that a health-plan administrator like U.S. Airways may enforce such a reimbursement provision by filing suit under . . . 29 U.S.C. § 1132(a)(3).  *See Sereboff* . . . , 547 U.S. 356, 126 S. Ct. 1869 . . . (2006).  That section authorizes a civil action "to obtain . . . appropriate equitable relief . . . to enforce . . . the terms of the plan."

We here consider whether in that kind of suit, a plan participant like McCutchen may raise certain equitable defenses deriving from principles of unjust enrichment.  In particular, *we address one equitable doctrine limiting reimbursement to the amount of an insured's "double recovery" and*

*another requiring the party seeking reimbursement to pay a share of the attorney's fees incurred in securing funds from the third party.*

*We hold that neither of those equitable rules can override the clear terms of a plan.*  But we explain that the latter [equitable doctrine], usually called the common-fund doctrine, plays a role in interpreting U.S. Airways' plan because the plan is silent about allocating the costs of recovery.

*McCutchen*, 133 S. Ct. at 1542-43 (¶ breaks & italics added).  A sister court aptly summarized *McCutchen*:

In *US Airways*, the Court held that a company could not rely on unjust enrichment or other equitable principles to defeat its contractual obligations to pay on a benefits plan when the recipient had already received compensation from a third party.  The Court explained the situation as "the modern-day equivalent of an 'equitable lien by agreement,' the enforcement of which 'means declining to apply rules – even when they would be equitable in a contract's absence – at odds with the parties' expressed commitments.

*Marsh Supermarkets, Inc. v. Marsh*, 2013 WL 5603931, *8 (S.D. Ind. Oct. 11, 2013) (citing *McCutchen*, 133 S. Ct. at 1547-48 and 1546), *recon. in part*, 2013 WL 5719006 (S.D. Ind. Oct. 18, 2013); *see also Vanderkam v. PBGC*, 943 F. Supp.2d 130, 152 n.15 (D.D.C. 2013) (*McCutchen* held that "equitable defenses cannot override the terms of an ERISA plan but . . . where a plan is 'silent on the allocation of attorney's fees . . . the common-fund doctrine provides the appropriate default'") (quoting *McCutchen*, 133 S. Ct. at 1548-49).   Under *McCutchen*, then, "'[t]he plan, in short, is at the center of ERISA.'"  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, – U.S. –, 134 S. Ct. 604, 612 (2013) (quoting *McCutchen*, 133 S. Ct. at 1548); *see also McCutchen*, 133 S. Ct. at 1548 (ERISA's "statutory scheme . . . 'is built around reliance on the face of written plan documents.'") (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83, 115 S. Ct. 1223, 1230 (1995)).

In *McCutchen*, Justice Scalia wrote an opinion denominated as a dissent, joined by Chief Justice Roberts and Justices Thomas and Alito.  The dissenters, however, agreed with the majority on a fundamental principle relevant to our case:  "[We] agree with Parts I and II of the Court's opinion, which conclude that equity cannot

override the plain terms of the [ERISA plan] contract." *McCutchen*, 569 U.S. at –, 133 S. Ct. at 1551 (J. Scalia, concurring in pertinent part and otherwise dissenting, joined by three JJ.).[3]

### PROCEEDINGS WITH REGARD TO PLAINTIFF / COUNTERCLAIM-DEFENDANT LENAI MULL

This Court has denied two separate motions by Lenai seeking to voluntarily dismiss her own claims.  *See Mull v. MPI Health Plan*, CV 12-06693 Doc 29 (C.D. Cal. July 29, 2013) (Fairbank, J.) and *Mull v. MPI Health Plan*, CV 12-06693 Doc 49, 2014 WL 1514812, *4-*9 (C.D. Cal. Feb. 4, 2014) (Fairbank, J.).  In early 2014, Lenai notified this Court that she had filed a petition for bankruptcy pursuant to 11 U.S.C. § 301.  This Court responded by issuing an order implementing the automatic bankruptcy stay as to Lenai required by 11 U.S.C. § 362(a).  *See Mull v. MPI Health Plan*, 2014 WL 1514665 (C.D. Cal. Feb. 25, 2014) (Fairbank, J.).  Lenai's claims thus remain pending against both defendants, and the defendants' counterclaim remains pending against Lenai.  Both Lenai's claims and the counterclaim against Lenai will be adjudicated by the undersigned once the U.S. Bankruptcy Court has lifted or modified the stay to permit proceedings by and against Lenai to go forward.

### DEFENDANTS' AMENDED ANSWER.

In their amended answer to the first amended complaint, the Plan defendants assert seven affirmative defenses, including failure to state a claim on which relief can be granted, estoppel by conduct, waiver by conduct, unjust enrichment, unclean hands, and failure to exhaust administrative remedies "with respect to claims regarding the application of the Plan's overpayment procedures."  Am Ans (Doc 46-4) at 4-5 Affirmative Defenses 1-6.  Defendants further contend that "plaintiffs are not entitled to the equitable relief requested by

---

[3]

The *McCutchen* dissent disagreed with the majority only on the application of the law to the particular ERISA plan that was before the Court there, stating as follows:

> The court goes on in Parts III and IV, however, to hold that the terms are *not* plain and to apply the "common-fund" doctrine to fill that "contractual gap," . . . .  The problem with this is that we granted certiorari on a question that presumed the contract's terms were unambiguous – namely, "where the plan's terms give it an absolute right to full reimbursement."

*McCutchen*, 569 U.S. at –, 133 S. Ct. at 1551 (J. Scalia, dissenting, joined by three JJ.).

reason of the doctrine '*acquits [sic] sequitur legem*[,]'" Am Ans (Doc 46-4) at 5, by which they presumably mean the doctrine *equitas sequitur legem*, "equity follows the law."  *See Hedges v. Dixon Cty.*, 150 U.S. 182, 192, 14 S. Ct. 71 (1893) (citing *Magniac v. Thomson*, 56 U.S. (15 How.) 281, 299 (Dec. Term 1853)); *see also Seguros Banvenez SA v. S/S Oliver Drescher*, 761 F.2d 855, 863 (2d Cir. 1985) ("'A court of equity cannot . . . create a remedy in violation of law, or even without the authority of law.'") (quoting *Rees v. Watertown*, 86 U.S. (19 Wall.) 107, 122 (Oct. Term 1873)).

<u>LEGAL STANDARD:  SUMMARY JUDGMENT</u>

On summary judgment pursuant to Federal Rule of Civil Procedure 56, "'[v]iewing the evidence in the light most favorable to the non-moving party, the moving party has the 'burden to show that there are no genuine issues of material fact,' and that it is entitled to judgment as a matter of law." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 265 (9th Cir. 1991)); *see also* Fed. R. Civ. P. 56(a).  The moving party always bears the initial responsibility of informing the court of the basis for its motion, and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Material facts are those which may affect the outcome of the case, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).  A genuine issue of material fact exists "if there is evidence from which a jury could reasonably render a verdict in favor of" the non-movant, *US Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1014 (9th Cir. 2012) (citing *Anderson*, 477 U.S. at 252), and "[i]n determining whether a jury could so find, we draw all reasonable inferences in favor of" the non-movant, *US Auto Parts Network*, 692 F.3d at 1014 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004)).

<u>ANALYSIS:   These Three Plaintiffs Are Entitled to Judgment Because No Plan Document Contains a</u>
<u>Third-Party Recovery Reimbursement Provision, Only the Summary Plan Description ("SPD") Does</u>

Plaintiffs persuasively contend that the defendants may not enforce the third-party recovery reimbursement provision because that provision is stated only in the Summary Plan Description, not in any

MINUTES FORM 90                                        Initials of Deputy Clerk   <u>   jmb   </u>
CIVIL - GEN

-10-

actual, formal Plan document.  *See* Plaintiffs' Opening Brief in Support of Motion for Summary Judgment ("Plaintiffs' MSJ") (Doc 56) at 27-29.  Plaintiffs properly rely on the Supreme Court's decision in *CIGNA v. Amara*, – U.S. –, 131 S. Ct. 1866, 1877 (2011) as authority for the proposition that "it is the formal plan document itself rather than the SPD that controls the terms of an employee benefit plan."  Doc 56 at 27. Plaintiffs relies especially on the Supreme Court's statements that

> [e]ven if the District Court had viewed the summaries as plan "terms" (which it did not, see supra . . .), however, we cannot agree that the terms of statutorily required plan summaries (or summaries of plan modifications) necessarily may be enforced (under § 502(a)(1)(B)) as the terms of the plan itself.

The *Amara* Court further held:

> For these reasons taken together we conclude that the summary documents, important as they are, provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B). [*Amara*,] 131 S. Ct. [at] 1878 (emphasis added).

This changed the law in the Ninth Circuit and many other circuits.  In the instant case, the MPI SPD [Summary Plan Description] contains a reimbursement provision purporting to waive all equitable defenses.  See Ex. 1, SPD, p. 58.  However, the MPI formal plan document, entitled "Agreement and Declaration of Trust" clearly does not.  This complete document is attached as Exhibit 2.

Attached as Exhibit 3 is a letter from plaintiff's [sic] counsel to defense counsel dated March 28, 2012 requesting the formal plan document.

MINUTES FORM 90                                           Initials of Deputy Clerk ____jmb____
CIVIL - GEN

Attached as Exhibit 4 is the April 17, 2012 letter from defense counsel enclosing the Agreement and Declaration of Trust ("ADT").

Plaintiffs' MSJ at 27-28.  In *Amara* (2011), the Supreme Court further explained that

> we find it difficult to reconcile the . . . [view that the terms of the Summary Plan Description are terms of the Plan itself] with the basic summary plan objective:  clear, simple communication. To make the language of a plan summary legally binding could well lead plan administrators to sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers.

*Amara*, – U.S. at –, 131 S. Ct. at 1877-78.  Two years after *Amara*, the Supreme Court reaffirmed this central principle, stating, "We have made clear that the statements in a summary plan description '[c]ommunicate with beneficiaries *about* the plan, but . . . do not themselves constitute the *terms* of the plan.'" *McCutchen*, – U.S. at –, 133 S. Ct. at 1543 (quoting *Amara*, 563 U.S. at –, 131 S. Ct. at 1878) (emphasis in *McCutchen*).[4]  In other words, only "*the plan documents contain the enforceable terms of the benefit plan*", not the Summary Plan Description.  *See Holmes v. Colorado Coalition for Homeless Long-Term Disability Plan*, No. 13-1175, – F.3d –, –, 2014 WL 33906853, *3 (10th Cir. Aug. 12, 2014).

---

[4]

In *McCutchen*, the United States Supreme Court noted that

> [n]onetheless, the parties litigated this case, and both lower courts [the district court and the circuit court] decided it, based solely on the language [in the summary plan description] quoted above.  Only in this Court, in response to a request from the Solicitor General, did the plan itself come to light.  That is too late to affect what happens here: Because everyone in this case has treated the language from the summary description as though it came from the plan, we do so as well.

*McCutchen*, – U.S. at – n.1, 133 S. Ct. at 1543 n.1 (internal citation omitted).  Here, by contrast, the plaintiffs *have* actively argued, at the district-court level, that they are entitled to judgment because the provision which the defendants seek to enforce is found only in the summary plan description and not in a plan document itself.

MINUTES FORM 90                                                    Initials of Deputy Clerk   ___jmb___
CIVIL - GEN

-12-

Our Circuit had occasion to apply *Amara*'s distinction between an ERISA plan and the corresponding Summary Plan Description ("SPD") in *Oldoerp v. Wells Fargo & Co. Long-Term Disability Plan*, 500 F. App'x 575 (9th Cir. 2012) (Fernandez, Berzon, D.R.I. D.J. Wm. Smith). There, the administrator of the Wells Fargo long-term disability ("LTD") plan, Metropolitan Life Insurance Company ("MetLife"), denied Oldoerp's application for LTD benefits, and Oldoerp appealed to the United States District Court. *See Oldoerp*, 500 F. App'x at 576. The district court had to decide whether to apply *de novo* review or merely abuse-of-discretion review to MetLife's decision; de novo review was required unless the plan conferred discretion upon the administrator, in which case the administrator's decision was be subject only to abuse-of-discretion review. *See id.* (citing, *inter alia*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989)). The district court accorded the plan administrator's decision the benefit of abuse-of-discretion review, finding it sufficient that the SPD and another document conferred discretionary authority on the administrator, even though the Plan itself did not. The Circuit reversed, holding that the district court erred in giving effect to a provision that was not contained in the documents constituting the plan itself. The panel wrote as follows:

> On the record before us, the Plan, by its terms, was made up of the group policy, the Certificate of Insurance, and amendments or endorsements to the group policy. [Footnote 2: The Certificate declares that those documents are the entire contract.] There is no indication that any one of those documents confers discretion upon [plan administrator] MetLife. The Summary Plan Description ("SPD") and a document referred to as additional information did indicate that MetLife has discretionary authority.

> However, the Supreme Court has made it clear that extraneous documents, like SPDs, "are not themselves part of the plan." *Amara*, – U.S. at –, 131 S. Ct. at 1877. As the Court pointed out, summary documents make statements "*about* the plan, but . . . their statements do not themselves constitute the terms of the plan." *Id.* at –, 131 S. Ct. at 1878; *see also Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1165 (9th Cir. 2012) (recognizing that "SPD language is not an enforceable part of the retirement plan"). Thus, we reject [plan administrator] MetLife's

argument that because of the SPD and the ERISA information document, the Plan confers
discretion upon it.  The district court erred, and must now review MetLife's "denial of benefits
de novo."  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc).

*Oldoerp*, 500 F. App'x at 576-77 (¶ break added, alterations and brackets omitted) (nn. 3 and 4 omitted); *see also
Brown v. Life Ins. Co. of North America*, 2014 WL 1092084, *7 (D. Nev. Mar. 18, 2014) ("The policy lacks any
other language indicating that [the plan administrator] has discretion in deciding claims.  The language that is
used in the plan does not unambiguously confer discretion on LINA to decide claims.  The terms of a plan cannot
be modified by a summary plan description.") (citing *Amara*, 131 S. Ct. at 1877-78).  *Accord Cosey v. Prudential
Life Ins. Co. of Am.*, 735 F.3d 161, 168 n.4 (4th Cir. 2013) ("We are not persuaded by Prudential's citation to
the summary plan description for the LTD plan, which provides, in relevant part, that the administrator has 'sole
discretion to interpret the terms of the Group Contract, . . . .'  We think this argument is foreclosed by . . . *Amara*,
. . . ."); *Helton v. AT&T, Inc.*, 709 F.3d 343, 358 (4th Cir. 2013) ("The 1998 SPD states that pension benefits are
'payable on a forward-going basis only.'  While this language might be read as precluding the award of
retroactive benefits, an SPD does not constitute the terms of a plan for purposes of determining whether a plan
participant is entitled to a particular form of relief.") (citations omitted); *Sullivan v. Prudential Ins. Co. of Am.*,
2012 WL 3893604, *3-*4 (S.D.N.Y. Aug. 28, 2012).

      **In *Tuttle v. Varian Med. Systems, Inc.*, 2013 WL 5327858, *3 (D. Ariz. Sept. 24, 2013) (Snow, J.),
the plaintiff contended that a certain insurance policy was *not* part of the ERISA employee welfare benefit
plan itself, while the defendant ERISA plan sponsor argued that the insurance policy was part of the Plan.**
In determining that the insurance policy *was* indeed part of the Plan, Judge Snow cogently reasoned as follows:

      Ms. Tuttle argues that the Policy is not a Plan document because the Policy refers to other Plan
documents that may be obtained from the Plan administrator.  For example, the Policy states that
a Plan participant may contact the administrator for "assistance in obtaining documents" or "to
obtain, . . . copies of the latest annual report . . . and update[d] Summary Plan Description."
Those statements do not show that the Policy is not the operative Plan Document in this matter

MINUTES FORM 90                                         Initials of Deputy Clerk      jmb   
CIVIL - GEN

but demonstrate that there are other documents related to the Plan described in the Policy. "An employee benefit plan under ERISA can be comprised of more than one document." *Gonzales*, 861 F. Supp.2d at 1107.

Ms. Tuttle also suggests that the Policy is not a Plan document because the Plan existed before the Policy became effective in 2009 and the terms of the Plan were defined before [plan administrator and Plan insurer] UHIC became the insurer that year. Ms. Tuttle incurred the medical expenses at issue in 2009. The Plan covers any claims for expenses incurred on [or] after January 1, 2009.

Further, the Policy states that it "replaces and overrules any previous agreements relating to Benefits for Covered Health Services between Varian and UHIC." The fact that UHIC became the insurer of the Plan in 2009, does not indicate that the Policy is not a Plan document for purposes of reviewing the denial of Ms. Tuttle's benefits. The Plan is subject to change in any given year and benefits determinations are governed by the terms and conditions in effect during the applicable time period. Based on the administrative record before it, the Court determines that the various sections of the Policy described above are the controlling Plan documents.

*Tuttle*, 2013 WL 5327858 at *3-*4 (internal record citations omitted) (internal brackets and alterations omitted) (last paragraph break added). Conversely, Judge Snow determined that the Summary was *not* part of "the Plan" and that any purported terms which appeared only in the Summary could not be enforced. He wrote as follows:

The Policy also includes a section entitled "ERISA Statement" with a subheading of "Summary Plan Description." Plan administrators are required to provide Plan participants with summary plan descriptions and with summaries of material modifications "written in a manner calculated to be understood by the average plan participant" that are "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and

obligations under the plan." . . . *Amara*, . . . 131 S. Ct. 1866, 1874-75 . . . .  The Supreme Court has held that "the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but their statements do not themselves constitute the *terms* of the plan . . . ." *[Amara]*, 131 S. Ct. at 1878 (emphasis in original).

Defendants argue that the statement is not the summary document they are required to furnish to Plan participants under 29 C.F.R. § 1022(a).  Instead, they characterize the statement as a "Rider" to the Policy and as belonging to the set of Plan documents.  But the Statement's language and the Policy's terminology indicate otherwise.  The Statement is contained within a section of the Policy entitled "Amendments, Riders and Notices (As Applicable)."  Only some of the subsection's titles therein include the terms "amendment", "rider", or "notice."  The Statement is not one of them; it is not designated as a Rider anywhere in the Policy.  Further, the Statement's subheading is "Summary Plan Description" and includes much, but not all, of the information listed in 29 C.F.R. § 1022(b) as required in the mandated summary plan description. *The Court finds that the statement is a summary plan description and is therefore not a Plan document.*

*Tuttle*, 2013 WL 5327858 at *4 (emphasis added).

**Following *Amara* and Ninth Circuit cases applying it, the Court agrees with the plaintiffs that the Summary Plan Description here does not constitute part of the ERISA Plan itself.**  To begin with, the Court recognizes that an ERISA plan "may incorporate other formal or informal documents, such as a collective bargaining agreement or a certificate of insurance." *Gonzales v. Unum Life Ins. Co. of America*, 861 F. Supp.2d 1099, 1107-08 (S.D. Cal. 2012) (Anthony Battaglia, J.) (citing *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 983 (9th Cir. 1997)).  Moreover, in our circuit "there is no requirement that documents claimed to collectively form the employee benefit plan be formally labeled as such." *Horn v. Berndon, Inc. Defined Benefit Pension Plan*, 938 F.2d 126, 127 (9th Cir. 1991).

MINUTES FORM 90                                          Initials of Deputy Clerk ___jmb___
CIVIL - GEN

Here, however, plaintiffs' counsel represents, without contradiction, that when plaintiffs asked defendants to provide "the formal health plan document in force on the date of the accident", *see* Doc 60-3 (Attorney DeCamara's March 28, 2012 Letter to Attorney Halford), defense counsel responded by sending only one document, the MPI Health Plan Agreement and Declaration of Trust Updated January 2010 ("ADT"). Moreover, defendants have not alleged that the Agreement and Declaration of Trust ("ADT") or any alleged formal Plan document purported to incorporate the Summary Plan Description as part of the Plan itself (if that could even be a coherent and legally valid incorporation). *See Ingorvaia v. Reliastar Life Ins. Co.*, 944 F. Supp.2d 964, 967 (S.D. Cal. 2013) ("[W]here the SPD is not incorporated [by a Plan document], or the plan is not otherwise amended to include the SPD's terms, the SPD's terms are not binding.") (citing pre-*Amara* authority of *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1161-62 (9th Cir. 2001) and 7th Circuit).

Defendants now take a position that seems inconsistent with their earlier position that the only formal Plan document was the ADT.  Defendants now argue that the SPD is part of the formal plan document because there is a single entry at page 124 of the SPD indicating that, "[T]his book constitutes both the Plan document and the Summary Plan Description for the Motion Picture Industry Health Plan."  Doc 56 (P's MSJ) at 28 (citing Ex 1, page 132); *see also* Doc 65 (Defs' Opp) at 5 ("As evidence of the intent of the Directors to establish the SPD as the Plan Document, the SPD expressly provides that the document serves as both the SPD and the Plan Document.").  **The Court agrees with plaintiffs that "this self-serving statement cannot overcome the controlling provisions of ERISA" and that the SPD here cannot constitute a formal plan document because it lacks three of the four features which 29 U.S.C. § 1102(b) requires of such documents.**  *See* Doc 56 at 28.  Namely, section 1102(b), Establishment of Plan - Requisite Features of Plan, provides in its entirety:

Every employee benefit plan shall –

(1)    provide a procedure for carrying out a funding policy and method consistent with the objectives of the plan and the requirements of this subchapter,

(2)     describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan (including any procedure described in section 1105( c )(1) of this title;

(3)     provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan, and

(4)     specify the basis on which payments are made to and from the plan.

As plaintiffs point out (Doc 56 at 29), the Agreement and Declaration of Trust appears to contain the four features which the statute requires for an employee benefit Plan Document, which means that it can constitute and be considered a formal plan document.  By contrast, plaintiffs accurately note (Doc 26 at 29 and Doc 66 at 2) that the Summary, notwithstanding its conclusory assertion that it constitutes both the SPD and the Plan document, appears not to contain the features required by 29 U.S.C. § 1102(b)(1) ("a procedure for carrying out a funding policy and method"), 1102(b)(3) ("a procedure for amending such plan, and for identifying the persons" authorized to amend it), and 1102(b)(4) (specify the basis on which payments are made to and from Plan).  *Cf. Creno v. Metropolitan Life Ins. Co.*, 2014 WL 4053410, * 9 n.6 (D. Ariz. Aug. 15, 2014) ("The Court notes that the omission of exclusions from the Summary Plan Description of AD&D benefits violates ERISA's statutory and regulatory accuracy requirements.") (citing 29 U.S.C. § 1022 and 29 C.F.R. §§ 2520-102.2).

**In their opposition brief, Defendants merely assert, without further explanation or citation to authority,** that "Plaintiffs simply choose to ignore the fact that the Summary is the 'Plan Document' for those participants like the Mulls who participate in the MPI Health Plan."  Doc 65 at 3; *see also* Doc 65 at 5. **Defendants do not show that the Summary contains the features which a Plan document must have under 29 U.S.C. section 1102(b)(1), (3), and (4).**  Defendants assert that "the SPD is the only document that includes the basis upon which payments are to be made to and from the MPI Health Plan", as required by section 1102(b)(4), but they do not cite any particular provision or page of the SPD to support that assertion.  Nor do

MINUTES FORM 90
CIVIL - GEN

Initials of Deputy Clerk ____jmb____

-18-

defendants cite any precedential authority for the notion that a document may constitute a formal plan document (whose terms are the terms of the plan and thus enforceable)) without satisfying those statutory requirements.

**Thus, the Court determines that the Agreement and Declaration of Trust is the only formal plan document – just as defense counsel indicated by sending only that document in response to plaintiffs' March 2012 request for the formal plan documents. Conversely, the Summary Plan Description here is *not* a Plan document. Consequently, following the Supreme Court's decision in *Amara*, any provision which appears in this SPD but not in the ADT is not enforceable.** *See Sethi v. Seagate U.S. LLC Group Disability Income Plan*, 2012 WL 3834948, *4 (N.D. Cal. Sept. 4, 2012) (William Alsup, J.) ("The summary plan description, which is provided to employees as a summary of the Plan's policy, is irrelevant to the issues on summary judgment because its terms do not alter the Plan's terms.") (citing *Amara*, 131 S. Ct. at 1878). *Contrast Corbett v. Providence Health Plans*, 2013 WL 5675339, *4-*5 (W.D. Wash. Oct. 17, 2013) (Bryan, J.), *appeal dismissed*, No. 13-36041 (9th Cir. Mar. 12, 2014).

Defendants may not claim additional rights for themselves on the basis of a term which appears in the SPD but not in the Plan documents, any more than a plan participant could claim additional benefits and impose additional obligations on a plan based on a term appearing only in the SPD. *See, e.g., Krieger v. Nationwide Mut. Ins. Co.*, 2012 WL 1029526, *5 (D. Ariz. Mar. 27, 2012) (David Campbell, J.) ("Clearly, Plaintiff cannot obtain additional benefits on the basis of allegedly deficient terms in the SPD. In *Amara*, the Supreme Court made it clear that 'summary documents . . . do not themselves constitute the terms of the plan . . . .'"), *recon. denied*, 2012 WL 1605648 (D. Ariz. May 8, 2012); *Nalbandian v. Lockheed Martin Corp.*, 2011 WL 3881473, *10 (N.D. Cal. Sept. 1, 2011) ("Plaintiffs' references to alleged inconsistencies in the Summary Plan Description ('SPD') are unavailing. Under . . . *Amara*, the SPD is not part of the Plan.") (citing *Amara*, 131 S. Ct. at 1877-78), *aff'd*, 526 F. App'x 781 (9th Cir. 2013) (McKeown, Watford, W.D. Wash. D.J. Thomas Zilly). *Accord Canada v. American Airlines, Inc. Pilot Retirement Benefit Program*, No. 10-6131, – F. App'x –, 2014 WL 3320892, *4 (6th Cir. July 9, 2014) ("[W]hen a plan beneficiary brings suit under 29 U.S.C. § 1132(a)(1)(B) to clarify his rights to future benefits 'under the plan,' as Canada did here, he may not rely on the contents of SPDs to

MINUTES FORM 90                                                              Initials of Deputy Clerk ____jmb____
CIVIL - GEN

circumscribe or nullify the plain terms of the plan itself.") (citing *Amara*, 131 S. Ct. at 1877-78, and *Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611, 620 (6th Cir. 2013), *cert. denied*, – U.S. –, 134 S. Ct. 1024 (2014)).

**The Court discerns a second, independent basis for determining that the SPD's reimbursement provision is not enforceable as a term of the Plan.**   As plaintiffs note (Doc 56 at 29), the unnumbered fifth page of the Summary Plan Description (Ps' MSJ Ex 1) states in pertinent part as follows,

The Plan is operated under the provisions of an Agreement and Declaration of Trust, and all benefits provided are subject to the terms of the Trust, this Plan of Benefits and the Group Master Contracts issued by: the Union Labor Life Insurance Company covering life insurance; Blue Shield of California; Health Net; Kaiser Permanente; Oxford Health Plans; Delta Dental PPO Plan; DeltaCare USA; Medco (prescription drugs); and Vision Service Plan.   The contracts have been issued to the Executive Administrator on behalf of the Directors.   *The terms of these documents will prevail in the interpretation of questions concerning any subject matter covered in this SPD.*

Emphasis added.

Defendants argue that this case is "easily distinguished" from *Amara* and that "[c]ases subsequent to *Amara* have limited the applicability of the Court's decision to situations where there is a conflict in language of the SPD and the [language of] the controlling plan document."   Defendants' Brief in Opposition to Summary Judgment ("Defs' Opp") (Doc 65) at 5.   Defendants' argument on this score is untenable.   For one thing, defendants cite no *Ninth Circuit* authority purporting to limit the applicability of the Supreme Court's *Amara* decision, relying on a Sixth Circuit decision and a district-court decision, and they provide no reasoned argument as to why *Amara* should be read in such a limited fashion.   *Cf., e.g., Garrett v. Principal Life Ins. Co.*, 555 F. App'x 809, 812 (10th Cir. 2014) (taking *Amara* to stand for the narrower proposition that the terms of a Summary Plan Description are not enforceable where they conflict with the terms set forth in governing plan documents) (citing *Eugene S. v. Horizon Blue Cross Blue Shield of NJ*, 663 F.3d 1124, 1131 (10th Cir. 2011)).

MINUTES FORM 90                                          Initials of Deputy Clerk   ___jmb___
CIVIL - GEN

The district-court decision cited by defendants, *Langlois v. Metropolitan Life Ins. Co.*, 833 F. Supp.2d 1182, 1185 (N.D. Cal. 2011) (record citations omitted), confronted an SPD which stated as follows: "The Company intends that the terms of the Plan described in this material, including those relating to coverage and benefits, are legally enforceable, and that the Plan is maintained for the exclusive benefit of participants, as defined by law. The SPD in *Langlois* further stated that "official plan documents . . . will govern in every respect and instance." *See Langlois*, 833 F. Supp.2d at 1185 (record citation omitted). The district court in *Langlois* reasoned that "[i]n the wake of [the Supreme Court's decision in *Amara*], the most reasonable construction of this language is that the terms of the SPD are legally enforceable elements of the Plan to the extent that they do not conflict with the terms of the Plan itself." *Langlois*, 833 F. Supp.2d at 1185-86.

To support that line of reasoning, however, the *Langlois* district court relied solely on a Ninth Circuit decision which pre-dated *Amara* and is flatly inconsistent with *Amara*. The *Langlois* court cited *Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1143 (9th Cir. 2002), for the proposition that "*[t]he SPD is a Plan document* and should be considered when interpreting and ERISA plan." *See Langlois*, 833 F. Supp.2d at 1186. The Court cannot follow that statement in *Bergt*, because it was effectively overruled by *Amara*'s holding that while "the statements in a summary plan description '[c]ommunicate with beneficiaries *about* the plan,'" the SPD's statements "'do not themselves constitute the *terms* of the plan.'" *McCutchen*, – U.S. at –, 133 S. Ct. at 1543 (quoting *Amara*, 131 S. Ct. at 1878).

**In any event, as plaintiffs note in their reply (Doc 66 at 2), the document which defense counsel themselves considered to be the "formal plan, the ADT, does not contain any reimbursement rights whatsoever, while the SPD does."** Therefore, it cannot be said that the formal plan document and the SPD are consistent with one another regarding reimbursement, because "if the ADT formal plan document is enforced, there would be no reimbursement, whereas the SPD provides for full reimbursement." Doc 66 (Plaintiffs' Reply) at 2; *cf. Heady v. Dawn Food Prods., Inc.*, 2003 WL 22859994, *2 (W.D. Ky. Nov. 25, 2003) ("Under the SPD, as long as the employee has shown continuous disability through the elimination period and was unable to perform the duties of his or her job at the time the employee became disabled, then he or she is entitled to long-term disability benefits until age sixty-five or until the employee recovers or dies. Under the Plan, however, the

employee can only receive long-term disability benefits under the same terms as the SPD during the elimination period and the first two years of the employee's disability, not until age sixty-five, recovery, or death.  Thus, . . . each document would yield a different result.  * * *  The Court therefore concludes that the different results arise . . . from a direct conflict between the SPD and the Plan.").  Accordingly, even if *Amara* were limited to situations where enforcement of the SPD's "terms" yields a different outcome than enforcement of the formal Plan documents' terms, *Amara* would still apply here to defeat defendants' attempt to enforce the SPD's reimbursement term as an actual "term" *of the Plan*.

This disposition obviates the need to consider other arguments advanced by either side as grounds for summary judgment.  Because the reimbursement / recoupment provision in the SPD is not enforceable as a matter of law, one never reaches issues such as whether plan participants / beneficiaries may interpose *equitable defenses* to prevent or limit enforcement of such a plan provision.

### ORDER

The motion for summary judgment of plaintiffs Norman Mull, Danielle Mull, & Carson Mull on the First Amended Complaint ("FAC") **[Doc # 56] is GRANTED.**

The defendants' motion for summary judgment on the FAC **[Doc # 63] is DENIED.**

Norman Mull is **TERMINATED** as a party.
Danielle Mull is **TERMINATED** as a party.
Carson Mull is **TERMINATED** as a party.

**No later than Monday, October 13, 2014, plaintiffs SHALL FILE an amended proposed order** in which the monetary amount which defendants must pay to plaintiffs has been adjusted to reflect any applicable interest through and including Wednesday, November 12, 2014.  Plaintiffs shall specify the source(s) of authority for any entitlement to interest and shall explain the method of calculating interest.

<u>Said proposed order SHALL NOT summarize the controversy, the applicable law, this ruling, or past rulings.  Nor shall the proposed order contain language relating to any other issue or argument not discussed herein which was raised in the parties' pleadings or motions.</u>  Rather, the proposed order shall contain only the

MINUTES FORM 90                                        Initials of Deputy Clerk ___jmb___
CIVIL - GEN

language necessary to provide declaratory, monetary, and injunctive relief to these three plaintiffs *based only on the Court's stated basis for today's decision.*[5]

       **No later than Monday, October 27, 2014, defendants MAY FILE** a response to the proposed order.

       **No later than Tuesday, November 11, 2014, plaintiffs MAY FILE** a reply thereto.

       Only plaintiff Lenai Mull's claims in the first amended complaint remain pending against the defendants. The defendants' counterclaim remains pending against plaintiff Lenai Mull only.

       IT IS SO ORDERED.

       This is not a final order because it does not dispose of all claims and counterclaims as to all parties. When this Order becomes appealable (upon the entry of final judgment), the Court of Appeals will review the grant of summary judgment to these three plaintiffs *de novo*. *See Chemehuevi Indian Tribe v. Jewell*, No. 12-56836, – F.3d –, 2014 WL 4627994, *2 (9th Cir. Sept. 17, 2014) (citation omitted).

---

[5]Plaintiffs' inappropriately named "Proposed Judgment" (Doc 62) is not suitable for this purpose.

MINUTES FORM 90                                       Initials of Deputy Clerk    jmb   
CIVIL - GEN